**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 25-51190 |
| **LELAND HOUSE LIMITED PARTNERSHIP COMPANY,** | Chapter 11 |
| | Hon. Maria L. Oxholm |
| Debtor. | |
| _____/ | |

## DECLARATION OF LUIS RAMIREZ
### IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS

I, Luis Ramirez, state as follows:

1. I am the President of Leland House Limited Partnership Company ("Debtor") and have been appointed as the authorized representative of Debtor in this bankruptcy case. I am familiar with the facts and circumstances set forth in this Declaration, and I am in all respects competent to make this Declaration in Support of the Debtor's first day motions for use of cash collateral and for authority to pay pre-petition wage obligations (the "First Day Motions").[1]

2. I am familiar with the day-to-day operations, financial affairs, and books and records of Debtor. I am familiar with the First Day Motions and the facts set forth therein. Except as otherwise stated, this Declaration is based upon personal knowledge.

3. To the best of my knowledge, information and belief, the facts set forth in the First Day Motions are true and correct.

---

[1] Except as otherwise stated, all capitalized terms not defined in this Declaration have the meaning ascribed to them in the First Day Motions.

1

### *Background*

4.      Debtor owns and operates the Leland House, a 20-story Beaux-Arts Detroit landmark built in 1927 (the "Leland House"). Debtor generates income from rents from leasing 40 units to residential tenants, commercial rent from the Leland City Club, and parking fees.

5.      Debtor employs four salaried employees, including myself, and 14 contract employees. Debtor relies on its employees for all its operations. Debtor is also required to make payments to operate and maintain the Leland House and to provide tenant services. Debtor cannot continue operations if it is not authorized to use cash collateral and pay employee wages.

### *Reasons for Filing*

6.      Debtor has been operating at a loss. Given the age and condition of the Leland House, continued maintenance and repairs has been challenging. Due to code violations and litigation with the City, Debtor has not been able to obtain new tenants for at least the last three years. Debtor has been working to obtain financing for a full renovation of the Leland House, but Debtor cannot obtain the necessary financing without reorganizing through bankruptcy. More immediately, Debtor's electricity was in danger of being shut off for non-payment and the protection of the automatic stay was required to ensure electricity would not be shut off, which would have required all tenants to vacate their apartments on an emergency basis.

### *Pre-petition Indebtedness, Value and Planned Renovations*

7.      Debtor has accumulated a number of debts throughout the years secured by mortgages and/or liens on the Leland House property. Debtor estimates that

creditors will assert mortgage or other liens against the Leland House property in the approximate amount of $20,045,000. The vast majority of Debtor's creditors are likely to assert secured status, and Debtor has not made an attempt to determine which creditors have priority.

8. Based on an appraisal from 2020, the Leland House property is worth approximately $19.4 million as-is, and $44 million after anticipated renovations and as-stabilized. Because the appraisal was conducted five years ago, the valuation has limited usefulness in today's building market, but provides a rough indication of the property's value.

9. Debtor's operations are not currently profitable. However, Debtor is working quickly towards either a financing or sale event (in either case, pending authorization from the Bankruptcy Court) that will permit the Leland House to be fully renovated, resulting in an attractive landmark building with mixed-income residence options.

10. Accordingly, Debtor commenced this Chapter 11 bankruptcy case as the only available avenue to continue operations for the benefit of all creditors and to enable Debtor to continue working towards a full renovation.

### *Cash Collateral Motion*

11. The cash flow projections attached to the First Day Motion requesting authorization to use cash collateral represents the Debtor's estimates of its financial requirements during the months of November, December and January.

12. The cash flow projections were prepared under my direction. I believe that the cash flow projections accurately estimate Debtor's cash flow needs for November,

December and January. The cash flow projections include a projected debtor-in-possession loan that Debtor expects to obtain in the next couple of weeks, which will enable Debtor to continue operations while in bankruptcy.

13. Debtor will not be operationally profitable until Debtor has completed substantial renovations. However, if Debtor were to shut its doors immediately on an emergency basis, Debtor will not only lose all current residents and employees, but the Leland House will fall into disrepair and the value of the Leland House property will be severely depressed. It is in the best interests of Debtor and all creditors to maximize the value of the Leland House property and, based on my experience, the value will be maximized by continuing operations during a refinancing or sale process.

14. According to the cash flow projections, Debtor will use approximately $83,000 in cash collateral during the month of November and will generate $60,000 in cash. Additionally, Debtor will be required to post a deposit as adequate assurance for the payment of future utilities in an amount to be determined. As stated, Debtor intends to bridge the gap through debtor-in-possession financing, and will seek appropriate authorization from this Court.

15. Debtor requires the use of cash collateral for payroll obligations, maintenance, repairs, insurance, and other ordinary course expenses. Debtor will also require use of cash collateral for expenses relating to this Chapter 11 bankruptcy case, such as payment of United States Trustee fees.

16. If Debtor is not able to use cash collateral by November 7, 2025, Debtor will be unable to timely make payroll. This will negatively impact morale of Debtor's

4

25-51190-mlo    Doc 8    Filed 11/04/25    Entered 11/04/25 16:50:49    Page 4 of 6

employees, create a serious risk that employees will not continue working, and will, therefore, jeopardize Debtor's ability to continue operations.

17. To continue operations, Debtor is also required to make other payments as set forth in Debtor's budget. If Debtor is not able to use cash collateral by on or shortly after November 7, 2023, Debtor will not have any ability to make these payments which are required to operate Debtor's business and maintain the Leland House property. In such a scenario, Debtor's residential tenants and commercial tenant would vacate the property on an emergency basis and would likely assert substantial claims against Debtor. This uncontrolled and sudden shut down of operations is expected to result in large damages claims by Debtor's tenants. Accordingly, not only will Debtor's operations be terminated, but Debtor immediate shut down would also increase Debtor's liabilities.

18. Therefore, if Debtor is unable to obtain authorization to use cash collateral on an interim basis by November 7, 2019, Debtor will suffer immediate and irreparable harm.

***Payroll Motion***

19. Before the Petition Date, Debtor paid its employees for services provided through October 24, 2025. The payroll that Debtor intends to make on November 7, 2025 will pay for all salaries and wages incurred from October 25, 2025 through October 1, 2025. Debtor intends to pay for salaries and wages incurred for November 1-3 (as well as ordinary post-petition payroll obligations) in its weekly payroll on November 14, 2025.

5

20. The details regarding Debtor's employees, payroll, and benefits set forth in the Payroll Motion are true and accurate to the best of my knowledge, information and belief.

21. No individual is owed more than $15,150 in pre-petition wages or salary.

22. If Debtor's payroll obligations are not met, the Debtor will suffer irreparable harm through the loss of key employees. Debtor will not be able to retain and train replacement employees without substantial disruption to Debtor's operations.

23. Further, failure to make timely payroll will have immediate and severe consequences on Debtor's employees, many or all of whom require timely payment to purchase necessary goods and services and to make payments to their own creditors.

24. I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 4, 2025

_____
Luis Ramirez

Executed in Detroit, Michigan

6

25-51190-mlo    Doc 8    Filed 11/04/25    Entered 11/04/25 16:50:49    Page 6 of 6