# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION - DETROIT

In re:

LELAND HOUSE LIMITED
PARTNERSHIP COMPANY,

    Debtor.
_____/

Chapter 11

Case No. 25-51190-mlo

Hon. Maria L. Oxholm

## KRAEMER DESIGN GROUP, LLC'S SUPPLEMENTAL OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF FINAL ORDER AUTHORIZING POST-PETITION SECURED FINANCING [ECF NO. 73]

Kraemer Design Group, LLC ("Kraemer") through counsel, for its supplemental objection to *Debtor's Motion for Entry of Final Order Authorizing Post-Petition Secured Financing, Granting Priority Administrative Expense and Priming Liens on Debtor's Property Pursuant to Sections 364(c)(1) and 364(d)(1), and Authorizing Adequate Protection* ("Motion"), states as follows:

### INTRODUCTION

On December 5, 2025, the Court entered the Interim Order Authorizing Post-Petition Secured Financing, Granting Priority Administrative Expense and Priming Liens on Debtor's Property Pursuant to Sections 364(c)(1), 364(c)(3), 364(d)(1), Authorizing Adequate Protection and Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 ("Interim Order"). [ECF No. 104]. The Interim Order states that Debtor is

authorized to borrow up to $423,000 from Next Bridge Funding, LLC ("Lender") to make a deposit payment to DTE Energy ("DTE"), to place casualty insurance, to expend amounts in furtherance of compliance with a Consent Order[1] with the City of Detroit to make certain improvements to the Debtor's residential real property for the health and safety of Debtor's residents, and to fund its ordinary course business costs and expenses while Debtor was pursuing a sale of its property.

On December 11, 2025, the Court and interested parties learned that, instead of making a loan to the Debtor, Lender funded a loan to the owners of the parking lot adjacent to the Debtor's property, which is not property of the Debtor's estate, to pay DTE to prevent an electrical shut-off. After a purported flood damaged the Debtor's property, however, an electrical failure occurred, requiring the City to relocate all tenants from Debtor's property located at 400 Bagley Street, Detroit, MI 48226 ("Property").

The rationale that may have existed at the time of the interim hearing no longer exists now because what the Court sought to prevent – loss of tenants and loss of electricity at the Property – still occurred despite the interim financing. Debtor has no electricity, no tenants, no income, and has

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

not filed any motion seeking to sell its Property. This case is the proverbial road to nowhere and the ones being harmed are secured creditors such as Kraemer. The Motion should be denied.

## BACKGROUND

1. As set forth in Kraemer's previous objection which is incorporated by reference [*see* ECF No. 86], Debtor's debt to Kraemer arises from a contract under which Kraemer provided Debtor with architectural and design services for a construction project for Debtor's Property.

2. Debtor failed to make payments to Kraemer pursuant to the parties' settlement agreement, so Kraemer recorded a lien against the Property with the Wayne County Register of Deeds on August 21, 2024 in the amount of $387,502 ("Lien").

3. Debtor filed its bankruptcy case on November 3, 2025 after Kraemer had filed a Complaint for foreclosure of its Lien against, *inter alia*, Debtor in the Circuit Court for the County of Wayne (Case No. 2025-013037-CB).

## OBJECTION

4. While the Court granted Debtor relief necessary to avoid immediate and irreparable harm to the estate, the estate was nevertheless

irreparably harmed due to the loss of electricity and loss of tenants following the interim hearing. Indeed, the thing that the Court sought to avoid at the interim hearing still occurred.

5. The record is presently unclear whether the Lender funded the interim financing. Lender's reluctance to extend credit to the Debtor under these circumstances provides additional support as to why the Court should sustain Kraemer's objection and deny Debtor's Motion.

6. Now Debtor seeks approval for an additional $777,000 in financing from Lender, bringing its total request to $1,200,000.

7. Debtor still has not made any attempt to provide Kraemer with adequate protection as required by the Bankruptcy Code.

8. Section 364(d)(1) states that the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien **only if**—

> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1) (emphasis added).

9. The Debtor bears the burden to prove adequate protection by a preponderance of the evidence. See 11 U.S.C. § 364(d)(2); *In re Packard Square LLC*, 574 B.R. 107, 116 (Bankr. E.D. Mich. 2017).

10. "In determining whether the Debtor has satisfied this burden, the Court is mindful of the fact that 'granting post-petition financing on a priming basis **is extraordinary and is allowed only as a last resort**.'" *Id.* at 116 (citing *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010)) (emphasis added).

11. While the Bankruptcy Code does not define adequate protection, Section 361 enumerates ways of providing such. That Section states, in pertinent part, that:

> When adequate protection is required under section . . . 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that . . . any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such . . . grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as

> will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

12. In its Motion, Debtor does not propose any cash payments or additional or replacement liens to Kraemer; therefore, the Debtor must provide, as adequate protection, the "indubitable equivalent" of Kraemer's interest in the Debtor's Property securing its claims. *See id.*; *Packard Square*, 574 B.R. at 117-18.

13. "Indubitable equivalence requires such relief as will result in the realization of value by the secured creditor." *Packard Square*, 574 B.R. at 118 (citation and brackets omitted).

14. Additionally, the proposed adequate protection must compensate Kraemer for the present value of its interest and insure the safety of its interest. *Id.* (citing *In re Pac. Lifestyle Homes, Inc.*, No. 08-45328, 2009 Bankr. LEXIS 711, 2009 WL 688908, at *9 (Bankr. W.D. Wash. Mar. 16, 2009) (relying on *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir.1935), and *In re Am. Mariner Indus., Inc.*, 734 F.2d 426, 431 (9th Cir. 1984)), effectively overruled on other grounds by *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988)).

15. Here, Debtor cannot demonstrate that it can provide any adequate protection that compensates Kraemer for the present value of its Lien. The Debtor's proposed use of loan proceeds to "place insurance, make utility deposits, make Building repairs, and make ordinary course expenses" [see Motion, at ¶ 28], does not constitute adequate protection of Kraemer's interest, nor does it result in "the realization of value" by Kraemer, see *Packard Square*, 574 B.R. at 118, nor are any of these justifications realistic given the material adverse changes at Debtor's Property.

16. When the Court granted the Interim Order on December 4, 2025, it observed during the hearing that maintaining the Property would adequately assure parties in interest that the values of their liens would be maintained.

17. However, that has not happened because there is no electricity, no tenants, and it is currently unknown to Kraemer whether the Property is properly insured. The value of Kraemer's Lien has not been maintained.

18. Further, there is no income associated with the Property and Debtor has made no effort to file a sale motion. This case is a dead-end road.

19. Instead of providing any party in interest with any level of protection, Debtor sole asset of value is being dramatically diminished under Debtor's stewardship as a debtor-in-possession and Debtor is now seeking to further erode secured creditor's positions by additional financing via a priming lien.

20. The real question is – to what end?

21. The following facts appear to be undisputed based on Debtor's Motion and representations made on the record during the proceedings in this case: (i) there is no equity in the Property [Motion, ¶¶ 18, & 20], establishing the lack of an equity cushion from which to establish adequate protection to secured claimholders such as Kraemer; (ii) Debtor is not generating any positive income post-petition [*id.* ¶ 12], and is likely no longer generating any income whatsoever now that tenants have been relocated from the premises; (iii) to Kraemer's knowledge, Debtor has no insurance on the Property (*id.* ¶ 14); (iv) Debtor is unlikely to be able to raise funds to rehabilitate its case after recent events; and (v) there is no electricity and no tenants at the Property.

22. Despite these circumstances, Debtor wants to give Lender an even larger priming lien than that provided under the Interim Order for additional financing that might allow Debtor to sell the Property. Debtor

cannot do so without providing adequate protection, which it both has not done after the entry of the Interim Order and cannot afford to do upon entry of a final order on Debtor's Motion.

23. Debtor's prediction with respect to the sale of its Property is even more speculative at this stage than it was before the Court entered the Interim Order due to the electrical failure and the relocation of Debtor's tenants.

24. Kraemer should not be forced to subsidize the Debtor's case by allowing the value of its lien to be eroded through the loss of its priority status to a priming lien of Debtor's proposed Lender where this magnitude of speculation exists. *Cf. Suntrust Bank v. Den-Mark Constr,. Inc. (In re Den-Mark Constr., Inc.)*, 406 B.R. 683, 702 (E.D.N.C. 2009) ("Congress did not contemplate that a secured creditor could find its position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects.") (citation omitted).

25. "In general, courts have denied financing that included a priming lien where adequate protection relied on increased value in highly speculative circumstances, where time periods for value increase were tight, or where a debtor faced red tape or other hurdles." *Packard Square*,

574 B.R. at 118 (quoting *In re Vander Vegt*, 499 B.R. 631, 638 (Bankr. N.D. Iowa 2013), *aff'd sub nom. First Sec. Bank & Tr. Co. v. Vegt*, 511 B.R. 567 (N.D. Iowa 2014).

26. Debtor does not even make the argument that adequate protection will arise from the passage of time associated with a sale. And the Court should find that no adequate protection is likely to arise from future events considering: (1) the substandard condition of the Property, to which Debtor has admitted; (2) the unknown timeframe in which the Debtor contemplates a sale of its Property to close; (3) red tape or other hurdles associated with operation of the Property that have been highlighted by filings submitted by the City of Detroit and utility providers; (4) the negative media coverage surrounding the Debtor; (5) the absence of any proof of what a projected sale might yield and whether there are parties willing to pay the same; (6) the loss of electricity and income associated with the existence of tenants to the Property; and (7) additional costs associated with repairs to make the Property ready for sale.

27. The Debtor has failed to meet its burden under Section 364(d)(2) because it cannot show by a preponderance of the evidence that it has given Kraemer any adequate protection for its Lien. The Motion should be denied.

28. Additionally, Debtor has provided no evidence that Lender would not fund absent a priming lien. See 11 U.S.C. § 364(d)(1)(A) (allowing courts to authorize debtors to obtain credit secured by a senior lien if otherwise unable to obtain such credit).

29. Furthermore, Lender's reluctance or refusal to lend to Debtor following the entry of the Interim Order due to the changes in circumstances makes the Debtor's request for more financing from the same Lender even more far-fetched than it already had been when the Motion was filed. No additional financing should be authorized by the Court.

WHEREFORE, for the reasons set forth above, Kraemer respectfully requests that its Objection be sustained and the Motion denied.

Respectfully submitted,

WOLFSON BOLTON KOCHIS PLLC

Dated: January 5, 2026

By: /s/ Anthony J. Kochis
Anthony J. Kochis (P72020)
880 W. Long Lake Rd, Suite 420
Troy, MI 48098
(248) 247-7105
akochis@wolfsonbolton.com