**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT**

In re:

LELAND HOUSE LIMITED
PARTNERSHIP COMPANY,

    Debtor.
_____/

Chapter 11

Case No. 25-51190-mlo

Hon. Maria L. Oxholm

**KRAEMER DESIGN GROUP, LLC'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDER (A) ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF DEBTOR'S BUILDING AND ADJACENT PARKING LOT, (B) APPROVING THE FORM OF NOTICE, (C) SCHEDULING AN AUCTION; AND (D) SCHEDULING A SALE HEARING [ECF NO. 129]**

Kraemer Design Group, LLC ("Kraemer") through counsel, for its objection to *Debtor's Motion for Entry of Order (A) Establishing Bidding Procedures in Connection with the Sale of Debtor's Building and Adjacent Parking Lot, (B) Approving the Form of Notice, (C) Scheduling an Auction; and (D) Scheduling a Sale Hearing* [ECF No. 129] ("Motion"), states as follows:

### INTRODUCTION AND SUMMARY

In its Motion, Debtor seeks authorization to conduct a Sale[1] of the Leland House, which is owned by Debtor's estate, and the Parking Lot,

---

[1] Unless otherwise defined, capitalized terms are given the meanings ascribed to them in the Motion.

1

25-51190-mlo   Doc 150   Filed 01/27/26   Entered 01/27/26 09:58:24   Page 1 of 13
4902-1684-8522, v. 6

which is not property of the estate and is instead owned by non-debtor, Schlussel Reilly, Inc. ("SRI").  The Bankruptcy Code does not provide that the Court may approve the sale of property not of Debtor's estate free and clear.  Kraemer objects to the inclusion of the Parking Lot in the Sale because there is no statutory basis to do so.

Additionally, Debtor proposes to "equitably divide" Sale proceeds as between the Leland House and the Parking Lot.  The Bankruptcy Code does not anticipate that the Court would determine how to apportion sale proceeds concerning property not of a debtor's estate.  The Court should exclude the equitable division provision from the Bidding Procedures, and, if the Sale is to include the Parking Lot, it should order that Debtor may allow SRI to file an unsecured claim for any proceeds to which it claims entitlement to accommodate such Sale.

Kraemer additionally objects for several reasons relating to the Debtor's lack of business judgment, the exercise of which the Court should find to be unreasonable with respect to both the proposed Bidding Procedures and the Stalking Horse Agreement.  First, Kraemer agrees with the arguments made by the United States Trustee in its Objection [ECF No. 141] that the break-up fee and other protections and provisions set forth under the Stalking Horse Agreement are not reasonable.  Second, the

terms of the Auction, which proposes that Debtor subsidize SRI's Auction costs,[2] constitutes a waste of estate assets. The Stalking Horse Bid is unreasonably low considering Debtor's own statements in its pleadings regarding the value of Leland House. And, the proposed Auction Platform is unsuitable to accommodate the Sale, which involves a particularly unique, historic building of significant size. Here, there is no Committee of Unsecured Creditors to monitor and provide oversight to Debtor's Sale process. The Court should find that Debtor's business judgment is unreasonable with respect to the Bidding Procedures and deny the Motion.

Kraemer also objects to the Stalking Horse Bidder. Debtor has shared no information about the identity of the Stalking Horse Bidder, whether it is a disinterested party, or whether it has any connections with Debtor, its insiders or affiliates. The potential for an insider to set an artificially low minimum price for the Auction with its Stalking Horse Bid, as it appears to be the attempt here, could have a deleterious effect on the ultimate result of the Auction.

Finally, Kraemer objects to any provision allowing Debtor to seek *ex parte* relief for modifications of the Bidding Procedures, which could

---

[2] Debtor does not allege in its Motion that it will share any Auction costs with SRI.

prevent full and fair consideration of Debtor's Motion by interested parties and creditors to Debtor's bankruptcy case.

For the reasons set forth herein, the Court should sustain Kraemer's objection. Accordingly, and for the reasons articulated by the United States Trustee in its Objection, the Court should either deny the Motion or exclude the provisions from the Bidding Procedures to which Kraemer and the United States Trustee object.

## **OBJECTION**

*i.  Debtor Cannot Sell the Parking Lot Free and Clear in the Proposed Auction.*

1. Debtor proposes to sell both the Leland House and the Parking Lot "free and clear of all liens, claims and encumbrances under § 363(f), and with all such liens, claim[*sic*] and encumbrances attaching to the proceeds of the Sale[.]" [Motion, ECF No. 129, at ¶ 12(a)].

2. With respect to real property, Debtor has only listed its interest in 400 Bagley Street (Leland House) on its Schedule A. [*See* ECF No. 39, at 4]. Debtor has not scheduled any license or other interest in the Parking Lot.

3. Accordingly, the Parking Lot is not property of Debtor's estate. *See* 11 U.S.C. § 541(a) (limiting property of estate to "all legal or equitable interests of the debtor in property as of the commencement of the case"); *In*

*re Cudaback*, 22 B.R. 914, 918 (Bankr. Neb. 1982) (". . . the test of what is property of the estate lies solely in § 541 and the test of whether a trustee or a debtor in an appropriate debtor-relief proceeding may . . . sell . . . the property lies in § 363").

4. Subsection (f) to Section 363 of the Bankruptcy Code only allows Debtor to sell property of its estate—not the property of others in which Debtor has no interest. *See* 11 U.S.C. § 363(b)(1) & (f) (limiting sale of property under Section 363 to "property of the estate"). Therefore, Debtor cannot sell the Parking Lot under that provision.

5. While SRI may have agreed to allow the Parking Lot to be included in Debtor's Auction, Debtor has not alleged that those who may have interests in the Parking Lot other than SRI consent to a sale. It is unknown what the encumbrances of the Parking Lot are such that the Court may evaluate whether the sale of it may be authorized in the Debtor's proceeding through consent under Section 363(f), and the Court lacks jurisdiction to determine encumbrances over property not of Debtor's estate. *See e.g.*, *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992) (bankruptcy court had no jurisdiction to determine rights to property where such property is not of debtor's estate and where determination of rights to such property would not affect any dispute by creditors over property of

bankruptcy estate) (citing *In re Kubly*, 818 F.2d 643 (7th Cir. 1987); *In re Xonics*, 813 F.2d 127, 131-32 (7th Cir. 1987); *In re Chicago, Rock Island & Pac. R.R.*, 794 F.2d 1182, 1186-87 (7th Cir. 1986)).

6. As a practical concern, allowing Debtor to include the Parking Lot in the auction could abrogate the rights of parties with interests in the Parking Lot who may not be properly before the Court as parties to the Debtor's case.[3] The Court should not permit such abrogation of rights.

7. For Debtor to be granted authorization to sell the Parking Lot at its proposed Auction, Debtor must first acquire rights to it. Debtor does not allege that SRI would grant Debtor any property rights to the Parking Lot.

8. Thus, the Court should hold that Debtor may not sell the Parking Lot "free and clear" because it is not property of Debtor's estate.

    ii. *The Court Should Deny Debtor's Proposal Regarding The Allocation of Proceeds.*

9. Kraemer objects to the extent that Debtor does not propose any allocation of the proceeds of its proposed Sale of the Parking Lot, other

---

[3] Debtor's Certificate of Service reflects that the address Debtor used for SRI is the same address as Leland House. [*See* ECF No. 143, at 6]. Given that Debtor neither scheduled any related interest nor affiliate or other relationship between it and SRI, it is unclear whether service of the Motion to Debtor's own address even constitutes appropriate notice to SRI of the Motion. It is also unclear whether notice was provided to all parties with interests in the Parking Lot; Debtor has made no allegation that it provided such notice.

than that proceeds will be "equitably divided" between Debtor and SRI. [Motion, at ¶ 15].

10. No provision of the Code anticipates that the Court would, upon notice and a hearing, determine how to apportion sale proceeds concerning a party who is not a party to the Debtor's bankruptcy case. *See generally* 11 U.S.C. § 363 (concerning, among other things, sale of estate property).

11. If the Court somehow finds that it has jurisdiction to allow the Parking Lot to be sold "free and clear" of whatever interests it may have, its Order should be consistent with that of Leland House in that all proceeds from the Sale ought to be subject to the Court's jurisdiction for distribution to creditors rather than subjecting such proceeds to an "equitable division" that is bound to result in additional litigation. It should then grant leave for SRI to file an unsecured claim in Debtor's case for however much it believes it is entitled from such Sale.

12. Alternatively, Kraemer proposes that the Parking Lot should be sold, if such sale is desired by SRI, outside the Auction for Leland House. If the properties are to be marketed together, Debtor should offer some backstop to ensure a fair process so that the price of the Parking Lot will not yield proceeds from its sale which are comparatively unreasonable to the results of the Auction of Leland House. Otherwise, to ensure a fair

25-51190-mlo    Doc 150    Filed 01/27/26    Entered 01/27/26 09:58:24    Page 7 of 13
4902-1684-8522, v. 6

process, Debtor and Ten-X should be prevented from marketing the Parking Lot for inclusion in or alongside the Auction.

### iii. *Debtor's Business Judgment is Unreasonable.*

13. In approving a sale under 11 U.S.C. § 363(b), the Sixth Circuit Court of Appeals has held that there must be "some articulated business justification" supporting the decision to sell assets, and that a court should consider "all salient factors" pertaining to the proposed sale. *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986). In furthering the diverse interests of Debtor and creditors, the Court looks to factors such as:

> . . . the proportionate value of the asset to the estate as whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

*Id.* (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983).

14. "When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Kaspar*, No. 22-10382, 2024 Bankr. LEXIS 2770, at *15 (Bankr. S.D.N.Y. Nov. 14, 2024) (quoting *In re Integrated Res.,*

*Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992)).

15. For the reasons set forth in the United States Trustee's Objection [ECF No. 141],[4] Debtor can show no business justification for proposing the Sale of Leland House for a mere $3,500,000 (or $3,800,000, which appears to be the amount Debtor seeks as a Reserve Price for the Auction [*see* ECF No. 134, Ex. 6.D, at ¶ I(e)]).

16. Indeed, Debtor scheduled the value of the Leland House as $19,400,000 pursuant to a 2020 appraisal and Debtor has repeatedly insisted that the property "still retains substantial value" [ECF Nos. 40 & 73, at ¶ 18]. The Stalking Horse's underpriced bid appears untethered to reality and is significantly below the market value of the Leland House and far lower than the value Debtor argued to protect when it sought post-petition financing. This value is likely to disincentivize potential purchasers from making any market-appropriate offers. The Sale of Leland House for such an amount and the impact of such a low Stalking Horse Bid does not benefit the estate and is unreasonable. The Court should hold that Debtor has not appropriately exercised its business judgment with respect to the Stalking Horse Bid and deny the Motion.

---

[4] Kraemer hereby joins in the Objection filed by the United States Trustee.

17. Not only that, but the Bid Protection set forth by Debtor would provide the Stalking Horse with $200,000 in superpriority status if it is outbid, which amount the Bidding Procedures provide the Stalking Horse may credit bid.

18. First, Section 363(k) only applies to holders of liens securing allowed claims, and not to break-up fees of potential purchasers of assets under Section 363(b). *See* 11 U.S.C. § 363(k). The Court should exclude the credit bid provision.

19. Second, there is no justification—in business or by statute—for providing Bid Protections to the Stalking Horse that are awarded superpriority over Debtor's creditors. That provision should also be excluded.

20. Third, the windfall that would result in favor of the Stalking Horse if its unusually low bid is outbid would constitute a waste of estate assets for which Debtor cannot provide any reasonable business justification. This is especially true considering the representation made by the Wayne County Treasurer during the final hearing on Debtor's motion for post-petition financing on January 12, 2026, that there is particular interest in the sale of Leland House. It is unreasonable to give the Stalking Horse

an all-but-certain windfall of $200,000 at the expense of Debtor's creditors where there is interest in a Sale.

21. The Bidding Procedures also do not set forth any amount which SRI would provide for the costs associated with the Auction. Kraemer objects to the extent that Debtor proposes to use estate assets to subsidize the sale of property not of its estate. The Court should find that such subsidization is unreasonable, especially as the Parking Lot is not an estate asset.

22. Finally, while an Auction platform may be appropriate in certain circumstances, it is inappropriate for this asset. Given the complexities surrounding the issues with Leland House and its preservation, it is reasonable for such Auction to occur in person rather than online to maximize the value of the asset. Alternatively, the Court could order an in-person auction with an option to appear online for distant parties interested in Leland House, which would more reasonably protect the best interests of the estate and its creditors than an online auction. The Court should find that the Debtor's business judgment with respect to holding the Auction online to be unreasonable under the circumstances and order the Auction to be held in person.

### iv. The Bidding Procedures Do Not Provide For Attendance At Auction.

23. Kraemer objects to the Bidding Procedures to the extent that they are unclear as to whether Kraemer and other parties in interest or creditors may attend the Auction. All secured creditors, including Kraemer, should be entitled to observe and monitor the Auction to protect their rights to object to the ultimate Sale.

### v. Debtor Should Not Be Allowed Ex Parte Relief.

24. Kraemer objects to any modification of the Bidding Procedures by Debtor insofar as it would seek *ex parte* relief for its modifications.

25. The full and fair process set forth under Section 363 mandates that there be notice and hearing before Debtor may sell property of the estate. *See* 11 U.S.C. § 363(b) ("The trustee, *after notice and a hearing*, may . . . sell . . . other than in the ordinary course of business, property of the estate . . . .") (emphasis added).

26. Debtor should not be granted authority to blindside its creditors by modifying the Bidding Procedures without affording all parties the opportunity to review its proposed changes.

27. The Court should exclude Debtor's request for modifications to the Bidding Procedures that it would seek through *ex parte* relief.

## **CONCLUSION**

For the foregoing reasons, the Court should sustain Kraemer's objection and either deny the Motion or exclude the provisions from the Bidding Procedures to which Kraemer and the United States Trustee object.

Respectfully submitted,

WOLFSON BOLTON KOCHIS PLLC

Dated: January 27, 2026

By: /s/ Christopher J. Pullman
Christopher J. Pullman (IL 6321331)
880 W. Long Lake Rd, Suite 420
Troy, MI 48098
(248) 247-7109
cpullman@wolfsonbolton.com