# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

Case No. 25-51190-mlo

LELAND HOUSE LIMITED
PARTNERSHIP COMPANY,

Chapter 11

Debtor.

Hon. Maria L. Oxholm

_____/

## STIPULATION TO APPROVE DEBTOR'S RENEWED MOTION FOR ENTRY OF ORDER (A) AUTHORIZING THE DEBTOR TO CONDUCT AN AUCTION SALE OF DEBTOR'S BUILDING, (B) ESTABLISHING BIDDING PROCEDURES, (C) APPROVING STALKING HORSE AGREEMENT, AND (D) SCHEDULING A SALE HEARING

The undersigned parties, by and through counsel, stipulate to the entry of, and

respectfully request that the Court enter, the Order attached as Exhibit A approving

the Debtor's Renewed Motion for Entry of Order (A) Authorizing the Debtor to

Conduct an Auction Sale of Debtor's Building, (B) Establishing Bidding Procedures,

(C) Approving Stalking Horse Agreement, and (D) Scheduling a Sale Hearing [Doc.

No. 191] ("Bidding Procedures Motion").

1. On March 12, 2026, the Debtor filed the Bidding Procedures Motion.

2. As set forth on Exhibit 6.B. to the Bidding Procedures Motion, the

Debtor received an offer to purchase the Leland Building for $2.1 million from the

proposed stalking horse, Arkist, LLC ("Stalking Horse"). Bidding Procedures

Motion, ¶ 15-16, Exhibit 6.B.

{01165988.2}

3. On March 19, 2026, the Court conducted a hearing on the Bidding Procedures Motion. Doc. No. 194.

4. At that hearing, the Court ordered the Debtor to file a supplement to its Bidding Procedures Motion.

5. On March 25, 2026, the Debtor filed its Supplemental Brief [Doc. No. 226] ("Supplemental Brief").

6. Exhibit A to the Supplemental Brief set forth an estimated waterfall of sale proceeds, which is excerpted in part below. Doc. No. 226 at page 15 of 19.

**Project Sale Waterfall**

| | | | | |
|---|---|---|---|---|
| Sale Price | $2,100,000.00 | $2,500,000.00 | $3,000,000.00 | $3,500,000.00 |
| Ten-X [1] | $63,000.00 | $0.00 | $0.00 | $0.00 |
| Savills [2] | $84,000.00 | $100,000.00 | $120,000.00 | $140,000.00 |
| Water & Sewer [3] | $146,105.00 | $146,105.00 | $146,105.00 | $146,105.00 |
| Next Bridge Financing [4] | $1,350,000.00 | $1,350,000.00 | $1,350,000.00 | $1,350,000.00 |
| Debtor's Professoinals [5] | $300,000.00 | $300,000.00 | $300,000.00 | $300,000.00 |
| City of Detroit [6] | $600,000.00 | $600,000.00 | $600,000.00 | $600,000.00 |
| United States Trustee Fees [7] | $18,900.00 | $22,500.00 | $27,000.00 | $31,500.00 |
| subtotal | $2,562,005.00 | $2,518,605.00 | $2,543,105.00 | $2,567,605.00 |
| amount available to Secured Creditors | -$462,005.00 | -$18,605.00 | $456,895.00 | $932,395.00 |

7. On April 9, 2026, the Court conducted a further hearing on the Bidding Procedures Motion and expressed concern regarding the potential administrative insolvency of this bankruptcy case.

8.    As a result, the following parties have agreed to reduce their administrative expense claims on the terms set forth below and in the following order:

(a)    First, the Stalking Horse has agreed to reduce its break-up fee to 3% if the price for the Sale is under $3 million; otherwise, the break-up fee is unchanged.

(b)    Second, Schafer & Weiner, Heilman Law, and Harmon Partners (collectively, "Debtor's Professionals") have agreed that if the proceeds of the Sale (as defined in the Bidding Procedures Motion) are insufficient to pay all allowed administrative expense claims of the Debtor as of the Sale closing date, the Debtor's Professionals agree to a *pro rata* reduction in their respective allowed professional fee administrative claims to the extent necessary to pay the United States Trustee fees, up to the amount of all unpaid United States Trustee fees incurred through the Sale closing date. Debtor's Professionals, however, reserve and do not waive their rights previously ordered by the Court, including, without limitation, paragraph 8(f) of the Order entered at docket number 131.

(c)    Third, the City of Detroit[1] and the Detroit Water and Sewerage Department (with respect to its water claim but not its drainage claim) have agreed

_____

[1] On March 3, 2026, the City of Detroit ("City") filed the Motion of the City of Detroit to Approve (A) Tenant Property Removal Procedures and (B) Administrative Expense Claim ("City Administrative Expense Claims."). In the

that if the proceeds of the Sale (as defined in the Bidding Procedures Motion) are insufficient to pay all allowed administrative expense claims of the Debtor as of the Sale closing date, each will reduce on a *pro rata* basis their respective administrative expense claim to the extent necessary to allow for payment of other allowed administrative claims as of the Sale closing date who have not agreed to reduce their claims. The City, however, reserves and does not waive rights previously ordered by the Court, including, without limitation, paragraph 7 of the Order entered at docket number 245.

(d) Finally, if, after application of all the foregoing administrative expense reductions, the Court determines that the Debtor's estate is still insolvent as of the Sale closing date, the professional fee administrative claim of Heilman Law and Harmon Partners will be reduced to the extent necessary for the estate to no longer be administratively insolvent as of the sale date, provided that under no circumstances shall Heilman Law be required to return any of the pre-petition retainer paid by Debtor and held by Heilman Law. As Harmon Partners did not

City Administrative Expense Claim, the City asserted an administrative expense for expenses incurred in the amount of $85,116.34 and expenses that it anticipated to incur in the amount of $884,547, for a total administrative expense claim in the amount of $969,663.34.

receive a retainer from the Debtor, it is willing to discount its fees to the amount of the retainer received by Heilman Law.

9.      The concessions and reductions identified in paragraph 8 hereof will not become effective and will be null and void if the (a) Debtor is administratively solvent as of the date that the Sale is closed or (b) Sale is not approved.  Should Debtor receive any proceeds, property or funds beyond that anticipated from the Sale, the reductions identified in paragraph 8 are null and void to the extent of any proceeds, property or funds received.

10.     The Debtor has revised the bidding procedures as set forth on the redline attached as Exhibit A and the clean copy attached as Exhibit B.

11.     The Debtor has revised the Order Granting the Bidding Procedures Motion as set forth on the redline attached as Exhibit C and the clean copy attached as Exhibit D.

12.     After the April 16, 2026, hearing on the Bidding Procedures Motion, the parties to this stipulation respectfully request that this Court enter the Order attached as Exhibit D.

13.     As provided in the revised order attached as Exhibit D, the City[2] is granted standing to object to requests for administrative expenses.

---

[2] The City maintains that it has standing to object to requests for administrative expenses but includes this provision out of an abundance of caution.

**WHEREFORE**, the parties to this stipulation respectfully request that this Court enter the Order attached as Exhibit D.

Respectfully submitted,

HEILMAN LAW PLLC

/s/ Ryan D. Heilman
 Ryan D. Heilman (P63952)
 40950 Woodward Ave; Ste. 100
 Bloomfield, MI 48304
 (248) 835-4745
 ryan@heilmanlaw.com

*Attorneys for the Debtor in Possession*

SCHAFER AND WEINER, PLLC

/s/ John J. Stockdale, Jr.
 John J. Stockdale, Jr. (P71561)
 40950 Woodward Ave; Ste. 100
 Bloomfield, MI 48304
 (248) 971-1530
 jstockdale@schaferandweiner.com

*Attorneys for the Debtor in Possession*

VARNUM, LLC

/ s / Brendan G. Best   .
BRENDAN G. BEST (P66370)
480 Pierce Street, Ste. 300
Birmingham, MI 48009
313-481-7326
bbest@varnumlaw.com

*Attorneys for Arkist, LLC*

MILLER, CANFIELD, PADDOCK AND STONE, PLLC

/s/ Ronald A. Spinner
 Marc N. Swanson (P71149)
 Ronald A. Spinner (P73198)
 150 West Jefferson, Suite 2500
 Detroit, Michigan 48226
 (313) 496-7591
 spinner@millercanfield.com

*Attorneys for the City of Detroit*

SHERMETA, KILPATRICK & ASSOCIATES, PLLC

/ s / Richardo I. Kilpatrick  .
RICHARDO I. KILPATRICK (P35275)
P.O. Box 5016
Rochester, MI 48308-5016
248-519-1700
rkilpatrick@shermeta.com

*Attorneys for Wayne County Treasurer*

# Exhibit A

In re:

LELAND HOUSE LIMITED
PARTNERSHIP COMPANY,

Debtor.

Case No. 25-51190
Chapter 11
Hon. Maria L. Oxholm

_____/

## NOTICE OF AUCTION SALE AND BIDDING PROCEDURES

Leland House Limited Partnership Company ("Debtor") proposes to conduct an auction ("Auction") for the sale ("Sale") of the Debtor's real property located at 400 Bagley St., Detroit, MI 48226 (the "Leland House"). The Sale will be free of all interests, liens, claims and encumbrances except as expressly provided below. The Property is more fully described on attached Exhibit A.

To facilitate the Auction and Sale of the Leland House, the Bankruptcy Court for the Eastern District of Michigan ("Court") has approved the following Bidding Procedures:

### Auction Summary

| | |
|---|---|
| **Auction Date:** | ~~March 30~~ April ~~1~~27 – April 29, 2026 |
| **Closing Deadline:** | ~~April 30~~May 29, 2026 |
| **Sellers' Broker:** | **Savills, Inc. ("Savills")** |
| Contact: | Greg Bockart  gbockart@savills.us |
| | Pete McGrath  pcmcgrath@savills.us |
| | Addison Williams  awilliams@savills.us |
| **Auction Platform:** | **Ten-X  Accessible at Loopnet.com** |

## Marketing Process

Debtor has retained Savills as its real estate broker for the purpose of marketing the Leland House. Inquiries regarding the Leland House, the Auction and the sales process should be directed primarily to Savills. Inquiries regarding Debtor's Bankruptcy Case and the Court approval process should be directed to counsel for Debtor: Heilman Law PLLC at ryan@heilmanlaw.com

Debtor and Savills have made due diligence materials available for all qualified prospective bidders in a virtual data room ("Data Room") accessible via Ten-X at loopnet.com. To access the Data Room, prospective bidders must execute a non-disclosure agreement in a form acceptable to Debtor. All requests for access to the Data Room should be directed to Savills. Debtor and Savills reserve the right to exclude any prospective bidders from the Data Room if (i) Debtor has reason to believe the prospective bidder is not a good faith bidder, (ii) the prospective bidder has failed to provide, after request, sufficient evidence of an ability to close on a sale if the bidder is the successful bidder at the Auction, or (iii) Debtor believes providing access to the Data Room to the prospective would otherwise be detrimental to the Auction and Sale of the Property.

In addition to the Data Room, Debtor and Savills will make every reasonable effort to provide additional information to prospective bidders on request and to make walk-throughs of the Property available with sufficient advance notice. **Note: The Leland House's electricity is currently disconnected and may remain disconnected throughout the sale process. Any prospective bidder and its owners, agents, employees and other representatives accept all risks associated with any walk-through of the Leland House and Debtor may require execution of a waiver of liability. Walk-throughs are subject to prior approval by the appropriate officials of the City of Detroit ("City").**

The Marketing Process shall continue through the conclusion of the Auction. However, prospective bidders are highly encouraged to begin their due diligence as soon as possible.

## Qualification Process

Debtor, Savills and Ten-X intend to pre-qualify all prospective bidders. Debtor has obtained a "Stalking Horse Bid" from the "Stalking Horse Bidder." The Stalking Horse Bidder has been pre-qualified. All other prospective bidders must provide proof of an ability to timely close on a Sale if the bidder is the successful bidder at the Auction, which may include proof of financial ability to close, proof

of corporate authority to close, and other evidence of the bidder's ability and willingness to close by the Closing Deadline. Adequacy of such proof shall be determined in the Debtor's sole discretion. Debtor may also refuse to qualify a prospective bidder if Debtor, in consultation with Savills and Ten-X, determines that the bidder is not acting in good faith or that qualification would otherwise be detrimental to the Auction and Sale of the Property. If a prospective bidder fails to qualify, the bidder may not participate in the Auction. If a prospective bidder is qualified, the bidder shall be a "Qualified Bidder" and will be permitted to participate in the Auction. Debtor may, in consultation with Savills and Ten-X, disqualify a previously Qualified Bidder if Debtor determines the qualification was made in error or is detrimental to the Auction.

There is no deadline to qualify as a Qualified Bidder, except that all prospective bidders must be qualified before participating in the Auction. All prospective bidders are urged to begin the qualification process as soon as possible as Debtor, Savills and Ten-X make no guaranty or representation that qualification will be completed in sufficient time for participation before the close of the Auction.

As part of the qualification process, Debtor may, but is not required to, require that prospective bidders provide a good faith deposit of up to ten percent (10%) of the Minimum Bid (as defined below).

### Auction Process

The Auction shall take place on the Ten-X auction platform accessible at Loopnet.com and shall be subject to all rules and regulations posted by Ten-X. **By bidding at the Auction, all bidders accept the terms of the Auction posted by Ten-X and the terms of these Bidding Procedures and any other terms and conditions that may be authorized by Court Order. Among other things, all bidders: (a) acknowledge and agree that their bids are irrevocable commitments to execute the form purchase and sale agreement ("Form PSA"), to accept the Property as-is, where-is with no conditions or contingencies of any kind whatsoever except as specifically set forth in the Form PSA, and to close on the Sale on or before the Closing Deadline, and (b) acknowledge and understand that Debtor's electricity is currently disconnected, the Leland House is currently not in compliance with certain**

**ordinances and regulations of the City, and agree that, if they purchase the Leland House as the Successful Bidder, Back-up Bidder or otherwise, they will comply with all applicable ordinances, regulations, and laws of the City, including those relating to construction, demolition, rehabilitation, and operation of hotels and residential buildings, as applicable. This requirement will be included in any order authorizing and approving the Sale of the Property.** The Form PSA will be made available to all Qualified Bidders on request to Debtor, Savills or Ten-X.

To be a "Qualified Bid," a bid must be made by a Qualified Bidder at the Auction before the Auction closes and must be in the amount of at least the Minimum Bid. **Each Qualified Bid is a legally binding offer to purchase the Property for the amount of the Qualified Bid and is subject to all the terms of the Form PSA, the Ten-X auction platform, these Bidding Procedures and any applicable Court Order.**

The "Minimum Bid" shall be equal to (i) the Stalking Horse Bid, plus (ii) the Bid Protections, plus (iii) $50,000 (the "Minimum Bid Increment"). Notwithstanding the Minimum Bid, Ten-X may commence the Auction below the Minimum Bid, but no bid shall be a successful bid unless it equals or surpasses the Minimum Bid. If no bid equals or surpasses the Minimum Bid, the Stalking Horse shall be the successful bidder and shall proceed to closing.

If a Qualifed Bidder makes a Qualified Bid in at least the amount of the Minimum Bid, the Auction shall continue through minimum bid increments of $50,000 (the "Minimum Bid Increments") until no further timely Qualified Bids are submitted and the Auction is closed. Debtor may, in its discretion, (i) increase the Minimum Bid Increments or (ii) if the Stalking Horse Bidder agrees or has dropped out of the Auction, Debtor may reduce the Minimum Bid Increments, in either case in consultation with Savills and Ten-X.

The Qualified Bidder that makes the highest or otherwise best Qualified Bid made during the course of the Auction shall be the "Successful Bidder" and the highest or otherwise best bid shall be the "Successful Bid." The Qualified Bidder that made the second highest Qualified Bid shall be the "Back-up Bidder" and that bid shall be the "Back-up Bid." Debtor shall determine the Successful Bid and Back-up Bid based primarily, but not exclusively, by the amount of the respective

{01165738.13}                                        4

bids, but may also consider other factors, in consultation with Savills, Ten-X and the City, that provide value to Debtor's estate such as certainty of ability to close, ability to close before the Closing Deadline, willingness to provide more favorable Sale terms to Debtor, potential difficulties in obtaining Court approval, or other factors deemed relevant by Debtor. The Debtor reserves the right to designate a Qualified Bid as the Successful Bid and a Qualified Bidder as the Successful Bidder even if the Qualified Bid is not the highest Qualified Bid received based on factors other than purchase price.

Debtor may require that the Successful Bidder and Back-up Bidder provide a deposit equal to ten percent (10%) of the Successful Bid and Back-up Bid, respectively, within no more than 72 hours after the close of the Auction, and failure to provide such deposit may be treated by Debtor as a default. If a deposit was made before the Auction, Debtor may require that the amount of the deposit may be increased to ten percent (10%) of the respective bid.

The Successful Bidder must, within two hours after the close of the Auction, execute the Form PSA and deliver it to Debtor. The Successful Bidder must then proceed to closing and fully cooperate with Debtor through the Sale Approval Process (defined below) and the Closing Process (defined below).

The Back-up Bid shall remain a legally binding offer to purchase the Leland House until either (i) a Sale of the Property has closed by the Closing Deadline or (ii) Debtor releases the Back-up Bid in writing. Any other deposits received by Debtor will be returned within three business days after the close of the Auction.

### The Sale Approval Process and Closing Process

Promptly after the Auction, Debtor shall file a notice of the results of the Auction and shall seek approval of the Sale from the Court (the "Sale Approval Process"). **All Qualified Bidders acknowledge and agree that closing on the Sale is, at all times, contingent on Court approval.** The Successful Bidder and, if necessary, the Back-up Bidder shall fully cooperate with Debtor throughout the Sale Approval Process.

As soon as possible after Court approval of the Sale and, in any event, no later than the Closing Deadline, the Successful Bidder shall close on the Sale by paying the amount of the Successful Bid to Debtor and executing all documents

and instruments deemed reasonably necessary by Debtor and Savills. Debtor shall fully cooperate in the closing process and shall execute all documents reasonably necessary to convey title to the Leland House to the Successful Bidder. If the Successful Bidder closes on the Sale, Debtor will return the Back-up Bidder's deposit within three business days after the closing on the Sale.

In the event the Successful Bidder cannot or will not close on the Sale, Debtor may elect to continue with the Sale to the Back-up Bidder for the amount of the Back-up Bid. In such event, the Back-up Bidder shall have all rights and obligations of the Successful Bidder. To the extent feasible and necessary, Debtor shall provide reasonable additional time for the Back-up Bidder to close on the Sale.

## Modifications of Bidding Procedures and Reservations

Debtor reserves the right to modify these Bidding Procedures at any time with Court approval, subject under all circumstances to the City Condition, (as defined in Order approving the bidding procedures), which Debtor may seek on an expedited basis. Among other things, Debtor may determine due to subsequent events that (i) the Closing Deadline should be adjourned, (ii) the Auction should be conducted through an alternative process, or (iii) any other term or provision of these Bidding Procedures should be modified (other than the City Condition). Debtor makes no guaranties or representations regarding any part of these Bidding Procedures and shall have no liability whatsoever if the Auction is delayed, canceled or any of these Bidding Procedures are modified in any way.

Debtor reserves the right to refuse to qualify any prospective bidder if Debtor determines participation by the prospective bidder will not benefit Debtor's estate. Notwithstanding anything to the contrary herein, nothing in these Bid Procedures authorizes Debtor to modify these Bidding Procedures in any manner not consistent with the Stalking Horse Agreement without written consent of the Stalking Horse Bidder.

## Debtor's Consultations with Creditors and Parties-in-Interest; Confidentiality

Debtor may consult with creditors and other parties-in-interest, including the City of Detroit, regarding any aspect of these Bidding Procedures, the Auction, the Sale and the Sale Approval Process. On written request, Debtor shall take

reasonable precautions to ensure the confidentiality of all information provided by prospective bidders to Debtor, Savills or Ten-X on a confidential basis, including financial information. Notwithstanding the above, at the close of the Auction: (i) all Qualified Bids may be made public after the close of the Auction, (ii) the identity of the Successful Bidder and Back-up Bidder shall be made public, and (iii) bidders waive all rights to confidentiality if they default under the terms of these Bidding Procedures, any Court order, or the Ten-X Auction rules.

## As-is, Where-is, No Contingencies

This Auction and Sale are being conducted for the purpose of completing a full and final Sale of the Leland House. Debtor makes no representations or warranties and all bidders are required to conduct their own due diligence. The Successful Bidder and Back-up Bidder are legally bound to close on the Leland House in strict accordance with these Bidding Procedures and the Order approving these Bidding Procedures. Any waiver of rights or grant of extensions or accommodations by Debtor shall be binding only if in writing signed by Debtor or and shall be strictly limited to such writing.

## No Liability of Debtor, Savills or Ten-X

Under no conditions shall Debtor, Savills or Ten-X or their respective agents or representatives incur any liability to any prospective purchaser for any matter, action or activity relating to the Auction, except in the event of gross negligence or willful misconduct.

## Representations and Agreements of Qualified Bidders

By participating in the Auction, all Qualified Bidders agree that (i) all Qualified Bids are legally binding offers to purchase the Property; (ii) the bidder is able and intends to close on a Sale in the amount of any Qualifying Bid made by such bidder; (iii) all bids are offers that may be enforced in the Court or any other court of competent jurisdiction; (iv) all Qualified Bidders consent to jurisdiction of the Court and venue in the Court of any disputes relating to the Auction, the Sale or any other matter relating to the Property or these Bidding Procedures; (v) the bidders will comply with these Bidding Procedures and the Ten-X Auction rules, (vi) no bidder shall engage in collusion with other bidders or prospective bidders and will make all bids in a good faith effort to become the Successful Bidder; and

{01165738.13}                                     7

(vii) default or violation of any of these Bidding Procedures or the Ten-X Auction rules will subject the bidder to liability for damages, costs and attorneys' fees incurred by Debtor, Savills and/or Ten-X as a result of the default or violation.

Respectfully submitted,

SCHAFER AND WEINER, PLLC

By: /s/ John J. Stockdale, Jr.
JOHN J. STOCKDALE, JR. (P71561)
Co-Counsel for Debtor
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
jstockdale@schaferandweiner.com

- and -

HEILMAN LAW PLLC

By: /s/ Ryan D. Heilman
RYAN D. HEILMAN (P63952)

Co-Counsel for Debtor
40900 Woodward Ave., Ste. 100
Bloomfield, MI 48304
(248) 835-4745
ryan@heilmanlaw.com

Dated: April ___, 2026

# Exhibit B

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**In re:**

**LELAND HOUSE LIMITED
PARTNERSHIP COMPANY,**

Case No. 25-51190
Chapter 11
Hon. Maria L. Oxholm

Debtor.

_____/

## NOTICE OF AUCTION SALE AND BIDDING PROCEDURES

Leland House Limited Partnership Company ("Debtor") proposes to conduct an auction ("Auction") for the sale ("Sale") of the Debtor's real property located at 400 Bagley St., Detroit, MI 48226 (the "Leland House"). The Sale will be free of all interests, liens, claims and encumbrances except as expressly provided below. The Property is more fully described on attached Exhibit A.

To facilitate the Auction and Sale of the Leland House, the Bankruptcy Court for the Eastern District of Michigan ("Court") has approved the following Bidding Procedures:

### Auction Summary

| | |
|---|---|
| **Auction Date:** | **April 27 – April 29, 2026** |
| **Closing Deadline:** | **May 29, 2026** |
| **Sellers' Broker:** | **Savills, Inc. ("Savills")** |
| Contact: | Greg Bockart     gbockart@savills.us |
| | Pete McGrath     pcmcgrath@savills.us |
| | Addison Williams     awilliams@savills.us |
| **Auction Platform:** | **Ten-X   Accessible at Loopnet.com** |

## Marketing Process

Debtor has retained Savills as its real estate broker for the purpose of marketing the Leland House. Inquiries regarding the Leland House, the Auction and the sales process should be directed primarily to Savills. Inquiries regarding Debtor's Bankruptcy Case and the Court approval process should be directed to counsel for Debtor: Heilman Law PLLC at ryan@heilmanlaw.com

Debtor and Savills have made due diligence materials available for all qualified prospective bidders in a virtual data room ("Data Room") accessible via Ten-X at loopnet.com. To access the Data Room, prospective bidders must execute a non-disclosure agreement in a form acceptable to Debtor. All requests for access to the Data Room should be directed to Savills. Debtor and Savills reserve the right to exclude any prospective bidders from the Data Room if (i) Debtor has reason to believe the prospective bidder is not a good faith bidder, (ii) the prospective bidder has failed to provide, after request, sufficient evidence of an ability to close on a sale if the bidder is the successful bidder at the Auction, or (iii) Debtor believes providing access to the Data Room to the prospective would otherwise be detrimental to the Auction and Sale of the Property.

In addition to the Data Room, Debtor and Savills will make every reasonable effort to provide additional information to prospective bidders on request and to make walk-throughs of the Property available with sufficient advance notice. **Note: The Leland House's electricity is currently disconnected and may remain disconnected throughout the sale process. Any prospective bidder and its owners, agents, employees and other representatives accept all risks associated with any walk-through of the Leland House and Debtor may require execution of a waiver of liability. Walk-throughs are subject to prior approval by the appropriate officials of the City of Detroit ("City").**

The Marketing Process shall continue through the conclusion of the Auction. However, prospective bidders are highly encouraged to begin their due diligence as soon as possible.

## Qualification Process

Debtor, Savills and Ten-X intend to pre-qualify all prospective bidders. Debtor has obtained a "Stalking Horse Bid" from the "Stalking Horse Bidder." The Stalking Horse Bidder has been pre-qualified. All other prospective bidders must provide proof of an ability to timely close on a Sale if the bidder is the successful bidder at the Auction, which may include proof of financial ability to close, proof

of corporate authority to close, and other evidence of the bidder's ability and willingness to close by the Closing Deadline. Adequacy of such proof shall be determined in the Debtor's sole discretion. Debtor may also refuse to qualify a prospective bidder if Debtor, in consultation with Savills and Ten-X, determines that the bidder is not acting in good faith or that qualification would otherwise be detrimental to the Auction and Sale of the Property. If a prospective bidder fails to qualify, the bidder may not participate in the Auction. If a prospective bidder is qualified, the bidder shall be a "Qualified Bidder" and will be permitted to participate in the Auction. Debtor may, in consultation with Savills and Ten-X, disqualify a previously Qualified Bidder if Debtor determines the qualification was made in error or is detrimental to the Auction.

There is no deadline to qualify as a Qualified Bidder, except that all prospective bidders must be qualified before participating in the Auction. All prospective bidders are urged to begin the qualification process as soon as possible as Debtor, Savills and Ten-X make no guaranty or representation that qualification will be completed in sufficient time for participation before the close of the Auction.

As part of the qualification process, Debtor may, but is not required to, require that prospective bidders provide a good faith deposit of up to ten percent (10%) of the Minimum Bid (as defined below).

### Auction Process

The Auction shall take place on the Ten-X auction platform accessible at Loopnet.com and shall be subject to all rules and regulations posted by Ten-X. **By bidding at the Auction, all bidders accept the terms of the Auction posted by Ten-X and the terms of these Bidding Procedures and any other terms and conditions that may be authorized by Court Order. Among other things, all bidders: (a) acknowledge and agree that their bids are irrevocable commitments to execute the form purchase and sale agreement ("Form PSA"), to accept the Property as-is, where-is with no conditions or contingencies of any kind whatsoever except as specifically set forth in the Form PSA, and to close on the Sale on or before the Closing Deadline, and (b) acknowledge and understand that Debtor's electricity is currently disconnected, the Leland House is currently not in compliance with certain**

**ordinances and regulations of the City, and agree that, if they purchase the Leland House as the Successful Bidder, Back-up Bidder or otherwise, they will comply with all applicable ordinances, regulations, and laws of the City, including those relating to construction, demolition, rehabilitation, and operation of hotels and residential buildings, as applicable. This requirement will be included in any order authorizing and approving the Sale of the Property.** The Form PSA will be made available to all Qualified Bidders on request to Debtor, Savills or Ten-X.

To be a "Qualified Bid," a bid must be made by a Qualified Bidder at the Auction before the Auction closes and must be in the amount of at least the Minimum Bid. **Each Qualified Bid is a legally binding offer to purchase the Property for the amount of the Qualified Bid and is subject to all the terms of the Form PSA, the Ten-X auction platform, these Bidding Procedures and any applicable Court Order.**

The "Minimum Bid" shall be equal to (i) the Stalking Horse Bid, plus (ii) the Bid Protections, plus (iii) $50,000 (the "Minimum Bid Increment"). Notwithstanding the Minimum Bid, Ten-X may commence the Auction below the Minimum Bid, but no bid shall be a successful bid unless it equals or surpasses the Minimum Bid. If no bid equals or surpasses the Minimum Bid, the Stalking Horse shall be the successful bidder and shall proceed to closing.

If a Qualifed Bidder makes a Qualified Bid in at least the amount of the Minimum Bid, the Auction shall continue through minimum bid increments of $50,000 (the "Minimum Bid Increments") until no further timely Qualified Bids are submitted and the Auction is closed. Debtor may, in its discretion, (i) increase the Minimum Bid Increments or (ii) if the Stalking Horse Bidder agrees or has dropped out of the Auction, Debtor may reduce the Minimum Bid Increments, in either case in consultation with Savills and Ten-X.

The Qualified Bidder that makes the highest or otherwise best Qualified Bid made during the course of the Auction shall be the "Successful Bidder" and the highest or otherwise best bid shall be the "Successful Bid." The Qualified Bidder that made the second highest Qualified Bid shall be the "Back-up Bidder" and that bid shall be the "Back-up Bid." Debtor shall determine the Successful Bid and Back-up Bid based primarily, but not exclusively, by the amount of the respective

bids, but may also consider other factors, in consultation with Savills, Ten-X and the City, that provide value to Debtor's estate such as certainty of ability to close, ability to close before the Closing Deadline, willingness to provide more favorable Sale terms to Debtor, potential difficulties in obtaining Court approval, or other factors deemed relevant by Debtor. The Debtor reserves the right to designate a Qualified Bid as the Successful Bid and a Qualified Bidder as the Successful Bidder even if the Qualified Bid is not the highest Qualified Bid received based on factors other than purchase price.

Debtor may require that the Successful Bidder and Back-up Bidder provide a deposit equal to ten percent (10%) of the Successful Bid and Back-up Bid, respectively, within no more than 72 hours after the close of the Auction, and failure to provide such deposit may be treated by Debtor as a default. If a deposit was made before the Auction, Debtor may require that the amount of the deposit may be increased to ten percent (10%) of the respective bid.

The Successful Bidder must, within two hours after the close of the Auction, execute the Form PSA and deliver it to Debtor. The Successful Bidder must then proceed to closing and fully cooperate with Debtor through the Sale Approval Process (defined below) and the Closing Process (defined below).

The Back-up Bid shall remain a legally binding offer to purchase the Leland House until either (i) a Sale of the Property has closed by the Closing Deadline or (ii) Debtor releases the Back-up Bid in writing. Any other deposits received by Debtor will be returned within three business days after the close of the Auction.

### The Sale Approval Process and Closing Process

Promptly after the Auction, Debtor shall file a notice of the results of the Auction and shall seek approval of the Sale from the Court (the "Sale Approval Process"). **All Qualified Bidders acknowledge and agree that closing on the Sale is, at all times, contingent on Court approval.** The Successful Bidder and, if necessary, the Back-up Bidder shall fully cooperate with Debtor throughout the Sale Approval Process.

As soon as possible after Court approval of the Sale and, in any event, no later than the Closing Deadline, the Successful Bidder shall close on the Sale by paying the amount of the Successful Bid to Debtor and executing all documents

and instruments deemed reasonably necessary by Debtor and Savills. Debtor shall fully cooperate in the closing process and shall execute all documents reasonably necessary to convey title to the Leland House to the Successful Bidder. If the Successful Bidder closes on the Sale, Debtor will return the Back-up Bidder's deposit within three business days after the closing on the Sale.

In the event the Successful Bidder cannot or will not close on the Sale, Debtor may elect to continue with the Sale to the Back-up Bidder for the amount of the Back-up Bid. In such event, the Back-up Bidder shall have all rights and obligations of the Successful Bidder. To the extent feasible and necessary, Debtor shall provide reasonable additional time for the Back-up Bidder to close on the Sale.

### Modifications of Bidding Procedures and Reservations

Debtor reserves the right to modify these Bidding Procedures at any time with Court approval, subject under all circumstances to the City Condition (as defined in Order approving the bidding procedures), which Debtor may seek on an expedited basis. Among other things, Debtor may determine due to subsequent events that (i) the Closing Deadline should be adjourned, (ii) the Auction should be conducted through an alternative process, or (iii) any other term or provision of these Bidding Procedures should be modified (other than the City Condition). Debtor makes no guaranties or representations regarding any part of these Bidding Procedures and shall have no liability whatsoever if the Auction is delayed, canceled or any of these Bidding Procedures are modified in any way.

Debtor reserves the right to refuse to qualify any prospective bidder if Debtor determines participation by the prospective bidder will not benefit Debtor's estate. Notwithstanding anything to the contrary herein, nothing in these Bid Procedures authorizes Debtor to modify these Bidding Procedures in any manner not consistent with the Stalking Horse Agreement without written consent of the Stalking Horse Bidder.

### Debtor's Consultations with Creditors and Parties-in-Interest; Confidentiality

Debtor may consult with creditors and other parties-in-interest, including the City of Detroit, regarding any aspect of these Bidding Procedures, the Auction, the Sale and the Sale Approval Process. On written request, Debtor shall take

reasonable precautions to ensure the confidentiality of all information provided by prospective bidders to Debtor, Savills or Ten-X on a confidential basis, including financial information. Notwithstanding the above, at the close of the Auction: (i) all Qualified Bids may be made public after the close of the Auction, (ii) the identity of the Successful Bidder and Back-up Bidder shall be made public, and (iii) bidders waive all rights to confidentiality if they default under the terms of these Bidding Procedures, any Court order, or the Ten-X Auction rules.

## As-is, Where-is, No Contingencies

This Auction and Sale are being conducted for the purpose of completing a full and final Sale of the Leland House. Debtor makes no representations or warranties and all bidders are required to conduct their own due diligence. The Successful Bidder and Back-up Bidder are legally bound to close on the Leland House in strict accordance with these Bidding Procedures and the Order approving these Bidding Procedures. Any waiver of rights or grant of extensions or accommodations by Debtor shall be binding only if in writing signed by Debtor or and shall be strictly limited to such writing.

## No Liability of Debtor, Savills or Ten-X

Under no conditions shall Debtor, Savills or Ten-X or their respective agents or representatives incur any liability to any prospective purchaser for any matter, action or activity relating to the Auction, except in the event of gross negligence or willful misconduct.

## Representations and Agreements of Qualified Bidders

By participating in the Auction, all Qualified Bidders agree that (i) all Qualified Bids are legally binding offers to purchase the Property; (ii) the bidder is able and intends to close on a Sale in the amount of any Qualifying Bid made by such bidder; (iii) all bids are offers that may be enforced in the Court or any other court of competent jurisdiction; (iv) all Qualified Bidders consent to jurisdiction of the Court and venue in the Court of any disputes relating to the Auction, the Sale or any other matter relating to the Property or these Bidding Procedures; (v) the bidders will comply with these Bidding Procedures and the Ten-X Auction rules, (vi) no bidder shall engage in collusion with other bidders or prospective bidders and will make all bids in a good faith effort to become the Successful Bidder; and

(vii) default or violation of any of these Bidding Procedures or the Ten-X Auction rules will subject the bidder to liability for damages, costs and attorneys' fees incurred by Debtor, Savills and/or Ten-X as a result of the default or violation.

Respectfully submitted,

SCHAFER AND WEINER, PLLC

By: */s/ John J. Stockdale, Jr.*
    JOHN J. STOCKDALE, JR. (P71561)
    Co-Counsel for Debtor
    40950 Woodward Ave., Ste. 100
    Bloomfield Hills, MI 48304
    (248) 540-3340
    jstockdale@schaferandweiner.com

*- and -*

HEILMAN LAW PLLC

By: */s/ Ryan D. Heilman*
    RYAN D. HEILMAN (P63952)
    Co-Counsel for Debtor
    40900 Woodward Ave; Ste. 100
    Bloomfield, MI 48304
    (248) 835-4745
    ryan@heilmanlaw.com

Dated: April __, 2026

# Exhibit C

In re:

LELAND HOUSE LIMITED
PARTNERSHIP COMPANY,

Debtor.

Case No. 25-51190
Chapter 11
Hon. Maria L. Oxholm

_____/

**ORDER (A) AUTHORIZING THE DEBTOR TO CONDUCT AN AUCTION
SALE OF DEBTOR'S BUILDING, (B) ESTABLISHING BIDDING
PROCEDURES, (C) APPROVING A STALKING HORSE AGREEMENT,
AND (D) SCHEDULING A SALE HEARING**

This matter came before the Court upon the Debtor's[1] *Renewed Motion for
Entry of an Order (A) Authorizing the Debtor to Conduct an Auction Sale of Debtor's
Building; (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse
Agreement, and (D) Scheduling a Sale Hearing* ("Motion", ECF No. ___). ~~On
_____, the~~The Court held ~~a hearing~~hearings ("Hearing") on the Motion~~.~~ on
April 19, May 9 and May 16, 2026. The Court has reviewed the Motion, exhibits,
objections, and supplements, and heard arguments at the Hearing and is otherwise
advised in the premises.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth in this Order.

---

[1] Capitalized terms used but not defined in this Order shall have the meaning
ascribed to them in the Motion and/or Bidding Procedures.

2. Debtor is authorized to conduct an Auction Sale of the Leland House. The Bidding Procedures, as set forth in the Notice of Auction Sale and Bidding Procedures attached to the Motion (the "Bidding Procedures"), are approved and shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Leland House. Any party desiring to bid on the Leland House shall comply with the Bidding Procedures and this Order. Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures and conduct the Auction and Sale in compliance with the terms of this Order.

3. The Debtor is authorized to use the Auction Platform as described in the Motion and to enter into the Auction Platform Agreement.

4. The Sale of the Leland House will be free of all interests, liens, claims and encumbrances under 11 U.S.C. § 363(f). All interests, liens, claims and encumbrances will transfer to the proceeds of the Sale. For the avoidance of doubt, the Sale of the Leland House shall not be free and clear of any applicable laws of the City of Detroit ("City"), including its ordinances, regulations, and laws, whether under section 105, 363(f) or otherwise, and nothing in this Order, the Bidding Procedures, the Stalking Horse Agreement, or otherwise excuses any Successful Bidder or Back-up Bidder, as applicable, or any other party from compliance with all such applicable laws. All outstanding property taxes and amounts due and owing for water and sewerage charges shall be paid out of the proceeds of the Sale closing.

{0116574101166062.1}

2

**I.  APPROVAL OF THE STALKING HORSE AGREEMENT**

5.  The Stalking Horse Agreement attached to the Motion is hereby approved. For clarity, the term "Stalking Horse Agreement" shall be deemed to also include the purchase and sale agreement among the Debtor and Stalking Horse to be adopted as the Form PSA as defined below.

6.  The Bid Protections, as defined in the Stalking Horse Agreement, are hereby approved (in the amount of $73,500) and will be payable from sale proceeds upon the closing of any sale or alternative transaction to any purchaser other than the Stalking Horse, and shall survive dismissal of the Bankruptcy Case. In the event of conversion of the Bankruptcy Case to a case under Chapter 7, the Bid Protections shall survive if the Chapter 7 Trustee (or anyone on the Trustee's behalf) sells the Leland House within six months after the date of this Agreement.

7.  If no Qualified Bids are submitted at the Auction in an amount equal to or above (i) the Stalking Horse Bid, plus (ii) the Bid Protections, plus (iii) the Minimum Bid Increment of $50,000 (the total being $2,223,500, the "Minimum Bid Amount"), the Stalking Horse Bidder shall be the Successful Bidder and shall have all associated rights and obligations under this Order and the Bidding Procedures. If a Qualified Bid is received in the Minimum Bid Amount, the Stalking Horse shall be a Qualified Bidder and entitled to bid on an equal basis with all other Qualified

Bidders. For clarity, the amount of the Break-Up Fee shall be deemed credited to and included in any competing bids that Purchaser may choose to make.

8.      Debtor shall hold the deposit of the Stalking Horse in escrow until the conclusion of the Auction and shall return the deposit within two (2) business days after the Auction unless the Stalking Horse is the Successful Bidder in accordance with and pursuant to the Stalking Horse Agreement and that certain Escrow Agreement among the Debtor and the Stalking Horse. In the event the Stalking Horse is the Successful Bidder, Debtor shall hold the deposit until a closing on the Sale and the deposit shall be applied to the Stalking Horse Bidder's Successful Bid. If the Stalking Horse is not the Successful Bidder and the Sale is closed by any other purchaser that equals or exceeds the Minimum Bid Amount, the Bid Protections shall be paid to the Stalking Horse Bidder out of the Sale proceeds.

## II.    THE AUCTION

9.      As further described in the Bidding Procedures, the Debtor will conduct the Auction of the Leland House on ~~March 30~~ April ~~1~~27 – April 29, 2026 (the "Auction Date"). The Auction shall take place on the Auction Platform.

10.     The Auction will be run on the Auction Platform and conducted in accordance with the Bidding Procedures.

11.     The Debtor shall be entitled to exercise all rights and make all determinations permitted in the Bidding Procedures based on its business judgment

and in consultation with Savills, Ten-X, and the City. Among other things, Debtor may (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before the entry of the Sale Order any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interest of the Debtor's estate and its creditors; and (c) at or before the conclusion of the Auction, impose such other terms and conditions upon Qualified Bidders that are determined to be in the best interest of the Debtor's estate. Notwithstanding anything to the contrary in this Order or the Bidding Procedures, unless the DIP Lender provides its prior written consent, the Qualified Bid selected by the Debtor as the highest or otherwise best offer must provide for the payment to the DIP Lender of all of the Debtor's obligations to the DIP Lender, in full, in cash, and at the closing of the Sale. By submitting a Qualified Bid, a Qualified Bidder acknowledges and understands that the Leland House is currently not in compliance with the ordinances, regulations and laws of the City, and agrees that, if it becomes the Successful Bidder or Back-Up Bidder, as applicable, it will comply with, and abide by, applicable law, including all of the ordinances, regulations and laws of the City, and that such agreement shall be included in any order authorizing and approving the Sale of the Leland House, enforceable by the City in this or any other court of competent jurisdiction ("City Condition").

12.    No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and by submitting a Qualified Bid, each person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of section 503(b) of the Bankruptcy Code, as having made a substantial contribution to this Case, or otherwise.

13.    Any purchase agreement will contain a provision that the purchaser must not interfere with the Debtor, The City of Detroit, and their agent in their efforts to remove tenant belongs from the Debtor's Property.

## III.    FORM PSA AND NOTICE OF THE SALE PROCESS

13.14. The form of purchase and sale agreement agreed upon among the Debtor and the Stalking Horse pursuant to the Stalking Horse Agreement and to be filed with the Court (the "Form PSA") shall be the purchase and sale agreement used by Debtor in marketing Debtor's assets, and the Successful Bidder shall be required to execute the Form PSA promptly after conclusion of the Auction in accordance with the Bidding Procedures. Debtor may, but is not required to, permit alterations to the Form PSA if, in Debtor's judgment, such alterations will (i) not significantly delay closing, (ii) not significantly increase risk to Debtor's estate, and (iii) will facilitate Debtor obtaining the highest or otherwise best possible Bid. Any alterations

must be clearly noted in Debtor's sale approval motion to be filed after close of the Auction.

14.15. Debtor is authorized to circulate the Notice of Auction Sale and Bidding Procedures ("Notice") in substantially the form attached to the Motion. The Bidding Procedures set forth in the Notice are incorporated herein by reference and will apply to the Sale of the Leland House. To the extent there is a conflict or inconsistency between the Bidding Procedures incorporated herein and the remainder of this Order, the remainder of this Order shall govern and control to the extent of the conflict or inconsistency.

15.16. Within two (2) business days after the entry of this Order, the Debtor shall serve the Notice of Auction Sale and Bidding Procedures by first-class mail and/or email upon: (a) the U.S. Trustee; (b) counsel to the DIP Lender; (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (d) all applicable state and local taxing authorities; (e) all of the Debtor's other creditors; (f) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (g) all other parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Debtor shall further (h) arrange for the Notice of Auction Sale and

Bidding Procedures to be made available in Debtor's data room, and (i) delivered to all Qualified Bidders before the commencement of the Auction.

16.17. Within two (2) business days after the conclusion of the Auction, the Debtor shall file a Motion to Approve Sale with the Court and serve a copy on the Notice Parties via (i) the Court's electronic case filing system (ecf), (ii) email, (iii) overnight courier, or (iv) (only if the Sale Hearing is scheduled no less than ten days after service) by U.S. mail.

## IV. THE SALE HEARING AND OBJECTIONS

17.18. The Sale Hearing will be conducted on an expedited basis on _____,May___, 2026, at __:__ _.m. (prevailing Eastern Time). The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment being filed with the Court.

18.19. Objections, if any, to the relief requested in the Motion relating to the Sale must be in writing and filed with the Court no later than **twenty-four hours before the commencement of the Sale Hearing (the "Objection Deadline")**. Objections must be filed with the Court and served via ecf or otherwise served on the Notice Parties so that notice is actually received by the Objection Deadline.

{0116574101166062.1}

8

## V.   NO AMENDMENT OF OTHER ORDERS; IMMEDIATE EFFECT

19.20. Nothing in this Order or the Motion shall be deemed to constitute the assumption or assignment of a Contract. This Order does not amend or supersede any other Order issued by this Court, including, by way of example only, the Final DIP Funding Order (ECF No. 131). The City is granted standing to object to any request for administrative expenses filed in this case.

20.21. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtor may, in its discretion and without further delay, take any action and perform any act authorized by this Order.

{0146574101166062.1}

9

# Exhibit D

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**In re:**

                                   Case No. 25-51190

**LELAND HOUSE LIMITED**          Chapter 11
**PARTNERSHIP COMPANY,**      Hon. Maria L. Oxholm

    Debtor.

_____/

## ORDER (A) AUTHORIZING THE DEBTOR TO CONDUCT AN AUCTION SALE OF DEBTOR'S BUILDING, (B) ESTABLISHING BIDDING PROCEDURES, (C) APPROVING A STALKING HORSE AGREEMENT, AND (D) SCHEDULING A SALE HEARING

This matter came before the Court upon the Debtor's[1] *Renewed Motion for Entry of an Order (A) Authorizing the Debtor to Conduct an Auction Sale of Debtor's Building; (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse Agreement, and (D) Scheduling a Sale Hearing* ("Motion", ECF No. __). The Court held hearings ("Hearing") on the Motion on April 19, May 9 and May 16, 2026. The Court has reviewed the Motion, exhibits, objections, and supplements, and heard arguments at the Hearing and is otherwise advised in the premises.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted as set forth in this Order.

---

[1] Capitalized terms used but not defined in this Order shall have the meaning ascribed to them in the Motion and/or Bidding Procedures.

{01166062.1}                    1

2.     Debtor is authorized to conduct an Auction Sale of the Leland House. The Bidding Procedures, as set forth in the Notice of Auction Sale and Bidding Procedures attached to the Motion (the "Bidding Procedures"), are approved and shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Leland House. Any party desiring to bid on the Leland House shall comply with the Bidding Procedures and this Order. Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures and conduct the Auction and Sale in compliance with the terms of this Order.

3.     The Debtor is authorized to use the Auction Platform as described in the Motion and to enter into the Auction Platform Agreement.

4.     The Sale of the Leland House will be free of all interests, liens, claims and encumbrances under 11 U.S.C. § 363(f). All interests, liens, claims and encumbrances will transfer to the proceeds of the Sale. For the avoidance of doubt, the Sale of the Leland House shall not be free and clear of any applicable laws of the City of Detroit ("City"), including its ordinances, regulations, and laws, whether under section 105, 363(f) or otherwise, and nothing in this Order, the Bidding Procedures, the Stalking Horse Agreement, or otherwise excuses any Successful Bidder or Back-up Bidder, as applicable, or any other party from compliance with all such applicable laws. All outstanding property taxes and amounts due and owing for water and sewerage charges shall be paid out of the proceeds of the Sale closing.

## I. APPROVAL OF THE STALKING HORSE AGREEMENT

5. The Stalking Horse Agreement attached to the Motion is hereby approved. For clarity, the term "Stalking Horse Agreement" shall be deemed to also include the purchase and sale agreement among the Debtor and Stalking Horse to be adopted as the Form PSA as defined below.

6. The Bid Protections, as defined in the Stalking Horse Agreement, are hereby approved (in the amount of $73,500) and will be payable from sale proceeds upon the closing of any sale or alternative transaction to any purchaser other than the Stalking Horse, and shall survive dismissal of the Bankruptcy Case. In the event of conversion of the Bankruptcy Case to a case under Chapter 7, the Bid Protections shall survive if the Chapter 7 Trustee (or anyone on the Trustee's behalf) sells the Leland House within six months after the date of this Agreement.

7. If no Qualified Bids are submitted at the Auction in an amount equal to or above (i) the Stalking Horse Bid, plus (ii) the Bid Protections, plus (iii) the Minimum Bid Increment of $50,000 (the total being $2,223,500, the "Minimum Bid Amount"), the Stalking Horse Bidder shall be the Successful Bidder and shall have all associated rights and obligations under this Order and the Bidding Procedures. If a Qualified Bid is received in the Minimum Bid Amount, the Stalking Horse shall be a Qualified Bidder and entitled to bid on an equal basis with all other Qualified

Bidders. For clarity, the amount of the Break-Up Fee shall be deemed credited to and included in any competing bids that Purchaser may choose to make.

8. Debtor shall hold the deposit of the Stalking Horse in escrow until the conclusion of the Auction and shall return the deposit within two (2) business days after the Auction unless the Stalking Horse is the Successful Bidder in accordance with and pursuant to the Stalking Horse Agreement and that certain Escrow Agreement among the Debtor and the Stalking Horse. In the event the Stalking Horse is the Successful Bidder, Debtor shall hold the deposit until a closing on the Sale and the deposit shall be applied to the Stalking Horse Bidder's Successful Bid. If the Stalking Horse is not the Successful Bidder and the Sale is closed by any other purchaser that equals or exceeds the Minimum Bid Amount, the Bid Protections shall be paid to the Stalking Horse Bidder out of the Sale proceeds.

## II. THE AUCTION

9. As further described in the Bidding Procedures, the Debtor will conduct the Auction of the Leland House on April 27 – April 29, 2026 (the "Auction Date"). The Auction shall take place on the Auction Platform.

10. The Auction will be run on the Auction Platform and conducted in accordance with the Bidding Procedures.

11. The Debtor shall be entitled to exercise all rights and make all determinations permitted in the Bidding Procedures based on its business judgment

and in consultation with Savills, Ten-X, and the City. Among other things, Debtor may (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before the entry of the Sale Order any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interest of the Debtor's estate and its creditors; and (c) at or before the conclusion of the Auction, impose such other terms and conditions upon Qualified Bidders that are determined to be in the best interest of the Debtor's estate. Notwithstanding anything to the contrary in this Order or the Bidding Procedures, unless the DIP Lender provides its prior written consent, the Qualified Bid selected by the Debtor as the highest or otherwise best offer must provide for the payment to the DIP Lender of all of the Debtor's obligations to the DIP Lender, in full, in cash, and at the closing of the Sale. By submitting a Qualified Bid, a Qualified Bidder acknowledges and understands that the Leland House is currently not in compliance with the ordinances, regulations and laws of the City, and agrees that, if it becomes the Successful Bidder or Back-Up Bidder, as applicable, it will comply with, and abide by, applicable law, including all of the ordinances, regulations and laws of the City, and that such agreement shall be included in any order authorizing and approving the Sale of the Leland House, enforceable by the City in this or any other court of competent jurisdiction ("City Condition").

12. No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and by submitting a Qualified Bid, each person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of section 503(b) of the Bankruptcy Code, as having made a substantial contribution to this Case, or otherwise.

13. Any purchase agreement will contain a provision that the purchaser must not interfere with the Debtor, The City of Detroit, and their agent in their efforts to remove tenant belongs from the Debtor's Property.

## III. FORM PSA AND NOTICE OF THE SALE PROCESS

14. The form of purchase and sale agreement agreed upon among the Debtor and the Stalking Horse pursuant to the Stalking Horse Agreement and to be filed with the Court (the "Form PSA") shall be the purchase and sale agreement used by Debtor in marketing Debtor's assets, and the Successful Bidder shall be required to execute the Form PSA promptly after conclusion of the Auction in accordance with the Bidding Procedures. Debtor may, but is not required to, permit alterations to the Form PSA if, in Debtor's judgment, such alterations will (i) not significantly delay closing, (ii) not significantly increase risk to Debtor's estate, and (iii) will facilitate Debtor obtaining the highest or otherwise best possible Bid. Any alterations

must be clearly noted in Debtor's sale approval motion to be filed after close of the Auction.

15. Debtor is authorized to circulate the Notice of Auction Sale and Bidding Procedures ("Notice") in substantially the form attached to the Motion. The Bidding Procedures set forth in the Notice are incorporated herein by reference and will apply to the Sale of the Leland House. To the extent there is a conflict or inconsistency between the Bidding Procedures incorporated herein and the remainder of this Order, the remainder of this Order shall govern and control to the extent of the conflict or inconsistency.

16. Within two (2) business days after the entry of this Order, the Debtor shall serve the Notice of Auction Sale and Bidding Procedures by first-class mail and/or email upon: (a) the U.S. Trustee; (b) counsel to the DIP Lender; (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (d) all applicable state and local taxing authorities; (e) all of the Debtor's other creditors; (f) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (g) all other parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Debtor shall further (h) arrange for the Notice of Auction Sale and

Bidding Procedures to be made available in Debtor's data room, and (i) delivered to all Qualified Bidders before the commencement of the Auction.

17.     Within two (2) business days after the conclusion of the Auction, the Debtor shall file a Motion to Approve Sale with the Court and serve a copy on the Notice Parties via (i) the Court's electronic case filing system (ecf), (ii) email, (iii) overnight courier, or (iv) (only if the Sale Hearing is scheduled no less than ten days after service) by U.S. mail.

## IV.    THE SALE HEARING AND OBJECTIONS

18.     The Sale Hearing will be conducted on an expedited basis on **May __, 2026, at __:__ __.m. (prevailing Eastern Time)**. The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment being filed with the Court.

19.     Objections, if any, to the relief requested in the Motion relating to the Sale must be in writing and filed with the Court no later than **twenty-four hours before the commencement of the Sale Hearing (the "Objection Deadline")**. Objections must be filed with the Court and served via ecf or otherwise served on the Notice Parties so that notice is actually received by the Objection Deadline.

## V. NO AMENDMENT OF OTHER ORDERS; IMMEDIATE EFFECT

20. Nothing in this Order or the Motion shall be deemed to constitute the assumption or assignment of a Contract. This Order does not amend or supersede any other Order issued by this Court, including, by way of example only, the Final DIP Funding Order (ECF No. 131). The City is granted standing to object to any request for administrative expenses filed in this case.

21. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtor may, in its discretion and without further delay, take any action and perform any act authorized by this Order.