**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:                                             Case No. 25-51190

LELAND HOUSE LIMITED                 Chapter 11
PARTNERSHIP COMPANY,

            Debtor.                                Hon. Maria L. Oxholm
_____/

**SECOND STIPULATION TO ENTRY OF ORDER**
**APPROVING DEBTOR'S RENEWED MOTION FOR ENTRY**
**OF ORDER (A) AUTHORIZING THE DEBTOR TO CONDUCT AN**
**AUCTION SALE OF DEBTOR'S BUILDING, (B) ESTABLISHING**
**BIDDING PROCEDURES, (C) APPROVING STALKING HORSE**
**<u>AGREEMENT, AND (D) SCHEDULING A SALE HEARING</u>**

The undersigned parties, by and through counsel, stipulate to the entry of, and

respectfully request that the Court enter, the Order attached as **Exhibit A** approving

the *Debtor's Renewed Motion for Entry of Order (A) Authorizing the Debtor to*

*Conduct an Auction Sale of Debtor's Building, (B) Establishing Bidding Procedures,*

*(C) Approving Stalking Horse Agreement, and (D) Scheduling a Sale Hearing* [Doc.

No. 191] ("<u>Bidding Procedures Motion</u>").

1.      On March 12, 2026, the Debtor filed the Bidding Procedures Motion.

2.      The Court conducted hearings on the Bidding Procedures Motion on

March 19, April 9, and April 16, 2026.

3. At the April 16, 2026, the parties put agreed revisions to the proposed order filed at ECF No. 289 on the record.

4. The proposed order attached as **Exhibit A** reflects those agreed changes and a redline comparing the proposed order at ECF No. 289 and proposed order attached hereto is attached as **Exhibit B** hereto.

**WHEREFORE**, the parties to this stipulation respectfully request that this Court enter the Order attached as **Exhibit A**.

Respectfully submitted,

| | |
|---|---|
| HEILMAN LAW PLLC | MILLER, CANFIELD, PADDOCK AND STONE, PLLC |
| /s/ Ryan D. Heilman | /s/ Ronald A. Spinner |
| Ryan D. Heilman (P63952) | Marc N. Swanson (P71149) |
| Attorney for Debtor | Ronald A. Spinner (P73198) |
| 40950 Woodward Ave; Ste. 100 | 150 West Jefferson, Suite 2500 |
| Bloomfield, MI 48304 | Detroit, Michigan 48226 |
| (248) 835-4745 | Telephone: (313) 496-7591 |
| ryan@heilmanlaw.com | spinner@millercanfield.com |
| *Attorneys for the Debtor in Possession* | *Attorneys for the City of Detroit* |

*(Signatures Continue on Next Page)*

SCHAFER AND WEINER, PLLC

/s/ John J. Stockdale, Jr.
John J. Stockdale, Jr. (P71561)
Attorney for Debtor
40950 Woodward Ave; Ste. 100
Bloomfield, MI 48304
(248) 971-1530
jstockdale@schaferandweiner.com

*Attorneys for the Debtor in Possession*

SHERMETA, KILPATRICK &
   ASSOCIATES, PLLC

/ s / Richardo I. Kilpatrick          .
Richardo I. Kilpatrick (P35275)
P.O. Box 5016
Rochester, MI 48308-5016
248-519-1700
rkilpatrick@shermeta.com

*Attorneys for Wayne County Treasurer
and Detroit Water & Sewerage Dept.*

VARNUM, LLC

/ s / Brendan G. Best                    .
Brendan G. Best (P66370)
480 Pierce Street, Ste. 300
Birmingham, MI 48009
313-481-7326
bbest@varnumlaw.com

*Attorneys for Arkist, LLC*

WOLFSON BOLTON KOCHIS PLLC

/s/ Christopher J. Pullman          .
Christopher J. Pullman (IL6321331)
Anthony J. Kochis (P72010)
880 W. Long Lake Road, Ste. 420
Troy, MI 48098
248-247-7109
cpullman@wolfsonbolton.com

*Attorneys for Kraemer Design
Group, LLC*

*(Signatures Continue on Next Page)*

OFFICE OF THE UNITED STATES TRUSTEE

  / s / Jill Gies
Jill M. Gies (P56345)
Trial Attorney
U.S. Dept. of Justice
211 West Fort Street, Suite 700
Detroit, Michigan 48226
(313) 226-7913
Jill.gies@usdoj.gov

*United State Trustee*


OSIPOV BIGELMAN PC


/s/ Yuliy Osipov     .
Yuliy Osipov (P59486)
20700 Civic Center Drive, Ste. 420
Southfield, MI 48076
248-663-1800
yo@osbig.com

*Attorneys for Next Bridge Funding*

JOHN R. FOLEY, P.C.

/s/ Patrick A. Foley    .
Patrick A. Foley (P74323)
18572 W. Outer Drive
Dearborn, MI 48128
313-274-7377
pafoley@jrfpc.net


*Attorneys for Detroit Tenants Union & 3 Tenants*



Dated: April 17, 2026

# EXHIBIT A

**In re:**

**LELAND HOUSE LIMITED
PARTNERSHIP COMPANY,**

Case No. 25-51190
Chapter 11
Hon. Maria L. Oxholm

Debtor.

_____/

**ORDER (A) AUTHORIZING THE DEBTOR TO CONDUCT
AN AUCTION SALE OF DEBTOR'S BUILDING, (B) ESTABLISHING
BIDDING PROCEDURES, (C) APPROVING A STALKING HORSE
AGREEMENT,  AND (D) SCHEDULING A SALE HEARING**

This matter came before the Court upon the Debtor's[1] *Renewed Motion for Entry of an Order (A) Authorizing the Debtor to Conduct an Auction Sale of Debtor's Building; (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse Agreement, and (D) Scheduling a Sale Hearing* ("Motion", ECF No. 191).  The Court held hearings ("Hearing") on the Motion on March 19, April 9 and April 16, 2026.  The Court has reviewed the Motion, exhibits, objections, and supplements, and heard arguments at the Hearing and is otherwise advised in the premises.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted as set forth in this Order.

_____

[1] Capitalized terms used but not defined in this Order shall have the meaning ascribed to them in the Motion and/or Bidding Procedures.

{01166371.2}                                           1

2. Debtor is authorized to conduct an Auction Sale of the Leland House. The Bidding Procedures, as set forth in the *Notice of Auction Sale and Bidding Procedures* filed at ECF No. 289 (the "Bidding Procedures"), are approved and shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Leland House. Any party desiring to bid on the Leland House shall comply with the Bidding Procedures and this Order. Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures and conduct the Auction and Sale in compliance with the terms of this Order.

3. The Debtor is authorized to use the Auction Platform as described in the Motion and to enter into the Auction Platform Agreement.

4. The Sale of the Leland House will be free of all interests, liens, claims and encumbrances under 11 U.S.C. § 363(f). All interests, liens, claims and encumbrances will transfer to the proceeds of the Sale. For the avoidance of doubt, the Sale of the Leland House shall not be free and clear of any applicable laws of the City of Detroit ("City"), including its ordinances, regulations, and laws, whether under section 105, 363(f) or otherwise, and nothing in this Order, the Bidding Procedures, the Stalking Horse Agreement, or otherwise excuses any Successful Bidder or Back-up Bidder, as applicable, or any other party from compliance with all such applicable laws. All outstanding property taxes and amounts due and owing for water and sewerage charges shall be paid out of the proceeds of the Sale closing.

Notwithstanding anything in this paragraph 4, all objections to the sale of the property free and clear of the leasehold and possessory interests of the tenants represented by the Detroit Tenants Union, and the interests of Kraemer Design Group, LLC, are preserved pending a hearing on the forthcoming sale motion (the "Sale Motion") or other resolution between the respective parties.

**I.     APPROVAL OF THE STALKING HORSE AGREEMENT**

5.     Debtor may enter into a stalking horse agreement any time prior to the Auction Date subject to the following:

(i)     break up fee not greater than 3% of the stalking horse bid;

(ii)    approval of the stalking horse agreement by the DIP Lender, which approval shall not be unreasonably delayed, denied or withheld; and

(iii)   stalking horse purchase price shall not be less than $2.1 million.

The new stalking horse agreement shall be filed on the docket not later than close of business on Wednesday, April 22, 2026, otherwise the Stalking Horse Agreement at ECF No. 191 shall be the stalking horse agreement.  In the event that no stalking horse agreement is effective, then the Auction shall proceed without a stalking horse bidder so long as the reserved price is $2.1 million.  Notwithstanding anything to the contrary in the Motion, the term "Stalking Horse" shall mean the Person (as defined in 11 U.S.C. § 101) that is selected by the Debtor to be the stalking horse pursuant to this paragraph 5.

6.      A break up fee of 3% of the stalking horse bid will be payable from sale proceeds upon the closing of any sale or alternative transaction to any purchaser other than the Stalking Horse, and shall survive dismissal of the Bankruptcy Case. In the event of conversion of the Bankruptcy Case to a case under Chapter 7, the Bid Protections shall survive if the Chapter 7 Trustee (or anyone on the Trustee's behalf) sells the Leland House within six months after the date of this Agreement.

7.      If no Qualified Bids are submitted at the Auction in an amount equal to or above (i) the Stalking Horse Bid, plus (ii) the break up fee, plus (iii) the Minimum Bid Increment of $50,000 (the "Minimum Bid Amount"), the Stalking Horse Bidder shall be the Successful Bidder and shall have all associated rights and obligations under this Order and the Bidding Procedures. If a Qualified Bid is received in the Minimum Bid Amount, the Stalking Horse shall be a Qualified Bidder and entitled to bid on an equal basis with all other Qualified Bidders.

8.      Debtor shall hold the deposit of the Stalking Horse in escrow until the conclusion of the Auction and shall return the deposit within two (2) business days after the Auction unless the Stalking Horse is the Successful Bidder in accordance with and pursuant to the stalking horse agreement and that certain Escrow Agreement among the Debtor and the Stalking Horse. In the event the Stalking Horse is the Successful Bidder, Debtor shall hold the deposit until a closing on the Sale and the deposit shall be applied to the Stalking Horse Bidder's Successful Bid. If the

Stalking Horse is not the Successful Bidder and the Sale is closed by any other purchaser that equals or exceeds the Minimum Bid Amount, the Bid Protections shall be paid to the Stalking Horse Bidder out of the Sale proceeds.

**II.    THE AUCTION**

9.      As further described in the Bidding Procedures, the Debtor will conduct the Auction of the Leland House on April 27 – April 29, 2026 (the "Auction Date"). The Auction shall take place on the Auction Platform.

10.     The Auction will be run on the Auction Platform and conducted in accordance with the Bidding Procedures.

11.     The Debtor shall be entitled to exercise all rights and make all determinations permitted in the Bidding Procedures based on its business judgment and in consultation with Savills, Ten-X, and the City. Among other things, Debtor may (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before the entry of the Sale Order any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interest of the Debtor's estate and its creditors; and (c) at or before the conclusion of the Auction, impose such other terms and conditions upon Qualified Bidders that are determined to be in the best interest of the Debtor's estate. Notwithstanding anything to the contrary in this Order or the Bidding Procedures, unless the DIP Lender provides its prior written

consent, the Qualified Bid selected by the Debtor as the highest or otherwise best offer must provide for the payment to the DIP Lender of all of the Debtor's obligations to the DIP Lender, in full, in cash, and at the closing of the Sale. By submitting a Qualified Bid, a Qualified Bidder acknowledges and understands that the Leland House is currently not in compliance with the ordinances, regulations and laws of the City, and agrees that, if it becomes the Successful Bidder or Back-Up Bidder, as applicable, it will comply with, and abide by, applicable law, including all of the ordinances, regulations and laws of the City, and that such agreement shall be included in any order authorizing and approving the Sale of the Leland House, enforceable by the City in this or any other court of competent jurisdiction ("City Condition").

12. No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and by submitting a Qualified Bid, each person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of section 503(b) of the Bankruptcy Code, as having made a substantial contribution to this Case, or otherwise.

13.     Any purchase agreement will contain a provision that the purchaser must not interfere with the Debtor, The City of Detroit, and their agent in their efforts to remove tenant belongings from the Debtor's Property.

### III.     FORM PSA AND NOTICE OF THE SALE PROCESS

14.     The form of purchase and sale agreement agreed upon among the Debtor and the Stalking Horse pursuant to the Stalking Horse Agreement and to be filed with the Court (the "Form PSA") shall be the purchase and sale agreement used by Debtor in marketing Debtor's assets, and the Successful Bidder shall be required to execute the Form PSA promptly after conclusion of the Auction in accordance with the Bidding Procedures. Debtor may, but is not required to, permit alterations to the Form PSA if, in Debtor's judgment, such alterations will (i) not significantly delay closing, (ii) not significantly increase risk to Debtor's estate, and (iii) will facilitate Debtor obtaining the highest or otherwise best possible Bid. Any alterations must be clearly noted in Debtor's sale approval motion to be filed after close of the Auction.

15.     Debtor is authorized to circulate the Notice of Auction Sale and Bidding Procedures ("Notice") in substantially the form attached to the Motion. The Bidding Procedures set forth in the Notice are incorporated herein by reference and will apply to the Sale of the Leland House. To the extent there is a conflict or inconsistency between the Bidding Procedures incorporated herein and the remainder of this Order,

the remainder of this Order shall govern and control to the extent of the conflict or inconsistency.

16. Within two (2) business days after the entry of this Order, the Debtor shall serve the Notice of Auction Sale and Bidding Procedures by first-class mail and/or email upon: (a) the U.S. Trustee; (b) counsel to the DIP Lender; (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (d) all applicable state and local taxing authorities; (e) all of the Debtor's other creditors; (f) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (g) all other parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Debtor shall further (h) arrange for the Notice of Auction Sale and Bidding Procedures to be made available in Debtor's data room, and (i) delivered to all Qualified Bidders before the commencement of the Auction.

17. Within two (2) business days after the conclusion of the Auction, the Debtor shall file a Motion to Approve Sale with the Court and serve a copy on the Notice Parties via (i) the Court's electronic case filing system (ecf), (ii) email, (iii) overnight courier, or (iv) (only if the Sale Hearing is scheduled no less than ten days after service) by U.S. mail.

## IV.   THE SALE HEARING AND OBJECTIONS

**18.** The Sale Hearing will be conducted on an expedited basis on **May __, 2026, at __:__ _.m. (prevailing Eastern Time)**. The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment being filed with the Court.

19. Objections, if any, to the relief requested in the Sale Motion relating to the Sale must be in writing and filed with the Court no later than **twenty-four hours before the commencement of the Sale Hearing (the "Objection Deadline")**. Objections must be filed with the Court and served via ecf or otherwise served on the Notice Parties so that notice is actually received by the Objection Deadline.

## V.   NO AMENDMENT OF OTHER ORDERS; IMMEDIATE EFFECT

20. Nothing in this Order or the Motion shall be deemed to constitute the assumption or assignment of a Contract. This Order does not amend or supersede any other Order issued by this Court, including, by way of example only, the Final DIP Funding Order (ECF No. 131). The City is granted standing to object to any request for administrative expenses filed in this case.

21. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy

Rules or the Local Rules to the contrary, and the Debtor may, in its discretion and

without further delay, take any action and perform any act authorized by this Order.

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

                                          Case No. 25-51190

**LELAND HOUSE LIMITED**            Chapter 11
**PARTNERSHIP COMPANY,**       Hon. Maria L. Oxholm

     Debtor.

_____/

**ORDER (A) AUTHORIZING THE DEBTOR TO CONDUCT AN AUCTION
SALE OF DEBTOR'S BUILDING, (B) ESTABLISHING BIDDING
PROCEDURES, (C) APPROVING A STALKING HORSE AGREEMENT,
AND (D) SCHEDULING A SALE HEARING**

This matter came before the Court upon the Debtor's[1] *Renewed Motion for*

*Entry of an Order (A) Authorizing the Debtor to Conduct an Auction Sale of Debtor's*

*Building; (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse*

*Agreement, and (D) Scheduling a Sale Hearing* ("Motion", ECF No. ~~).~~191). The

Court held hearings ("Hearing") on the Motion on March 19, April ~~19, May~~ 9 and

~~May~~April 16, 2026. The Court has reviewed the Motion, exhibits, objections, and

supplements, and heard arguments at the Hearing and is otherwise advised in the

premises.

     **NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted as set forth in this Order.

_____

[1] Capitalized terms used but not defined in this Order shall have the meaning
ascribed to them in the Motion and/or Bidding Procedures.

{01166062.101166371.2}                 1

2. Debtor is authorized to conduct an Auction Sale of the Leland House. The Bidding Procedures, as set forth in the *Notice of Auction Sale and Bidding Procedures* ~~attached to the Motion~~filed at ECF No. 289 (the "Bidding Procedures"), are approved and shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Leland House. Any party desiring to bid on the Leland House shall comply with the Bidding Procedures and this Order. Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures and conduct the Auction and Sale in compliance with the terms of this Order.

3. The Debtor is authorized to use the Auction Platform as described in the Motion and to enter into the Auction Platform Agreement.

4. The Sale of the Leland House will be free of all interests, liens, claims and encumbrances under 11 U.S.C. § 363(f). All interests, liens, claims and encumbrances will transfer to the proceeds of the Sale. For the avoidance of doubt, the Sale of the Leland House shall not be free and clear of any applicable laws of the City of Detroit ("City"), including its ordinances, regulations, and laws, whether under section 105, 363(f) or otherwise, and nothing in this Order, the Bidding Procedures, the Stalking Horse Agreement, or otherwise excuses any Successful Bidder or Back-up Bidder, as applicable, or any other party from compliance with all such applicable laws. All outstanding property taxes and amounts due and owing

for water and sewerage charges shall be paid out of the proceeds of the Sale closing. Notwithstanding anything in this paragraph 4, all objections to the sale of the property free and clear of the leasehold and possessory interests of the tenants represented by the Detroit Tenants Union, and the interests of Kraemer Design Group, LLC, are preserved pending a hearing on the forthcoming sale motion (the "Sale Motion") or other resolution between the respective parties.

## I. APPROVAL OF THE STALKING HORSE AGREEMENT

5. The Stalking Horse Agreement attached to the Motion is hereby approved. For clarity, the term "Stalking Horse Agreement" shall be deemed to also include the purchase and sale agreement among the Debtor and Stalking Horse to be adopted as the Form PSA as defined below.

5. The Bid Protections, as defined in the Stalking Horse Agreement, are hereby approved (in the amount of $73,500) and Debtor may enter into a stalking horse agreement any time prior to the Auction Date subject to the following:

(i) break up fee not greater than 3% of the stalking horse bid;

(ii) approval of the stalking horse agreement by the DIP Lender, which approval shall not be unreasonably delayed, denied or withheld; and

(iii) stalking horse purchase price shall not be less than $2.1 million.

The new stalking horse agreement shall be filed on the docket not later than close of business on Wednesday, April 22, 2026, otherwise the Stalking Horse Agreement at

ECF No. 191 shall be the stalking horse agreement. In the event that no stalking horse agreement is effective, then the Auction shall proceed without a stalking horse bidder so long as the reserved price is $2.1 million. Notwithstanding anything to the contrary in the Motion, the term "Stalking Horse" shall mean the Person (as defined in 11 U.S.C. § 101) that is selected by the Debtor to be the stalking horse pursuant to this paragraph 5.

6.     A break up fee of 3% of the stalking horse bid will be payable from sale proceeds upon the closing of any sale or alternative transaction to any purchaser other than the Stalking Horse, and shall survive dismissal of the Bankruptcy Case. In the event of conversion of the Bankruptcy Case to a case under Chapter 7, the Bid Protections shall survive if the Chapter 7 Trustee (or anyone on the Trustee's behalf) sells the Leland House within six months after the date of this Agreement.

7.     If no Qualified Bids are submitted at the Auction in an amount equal to or above (i) the Stalking Horse Bid, plus (ii) the ~~Bid Protections~~break up fee, plus (iii) the Minimum Bid Increment of $50,000 (~~the total being $2,223,500,~~ the "Minimum Bid Amount"), the Stalking Horse Bidder shall be the Successful Bidder and shall have all associated rights and obligations under this Order and the Bidding Procedures. If a Qualified Bid is received in the Minimum Bid Amount, the Stalking Horse shall be a Qualified Bidder and entitled to bid on an equal basis with all other

Qualified Bidders. ~~For clarity, the amount of the Break-Up Fee shall be deemed credited to and included in any competing bids that Purchaser may choose to make.~~

8.      Debtor shall hold the deposit of the Stalking Horse in escrow until the conclusion of the Auction and shall return the deposit within two (2) business days after the Auction unless the Stalking Horse is the Successful Bidder in accordance with and pursuant to the ~~Stalking Horse Agreement~~<u>stalking horse agreement</u> and that certain Escrow Agreement among the Debtor and the Stalking Horse. In the event the Stalking Horse is the Successful Bidder, Debtor shall hold the deposit until a closing on the Sale and the deposit shall be applied to the Stalking Horse Bidder's Successful Bid. If the Stalking Horse is not the Successful Bidder and the Sale is closed by any other purchaser that equals or exceeds the Minimum Bid Amount, the Bid Protections shall be paid to the Stalking Horse Bidder out of the Sale proceeds.

## II.   THE AUCTION

9.      As further described in the Bidding Procedures, the Debtor will conduct the Auction of the Leland House on April 27 – April 29, 2026 (the "<u>Auction Date</u>"). The Auction shall take place on the Auction Platform.

10.      The Auction will be run on the Auction Platform and conducted in accordance with the Bidding Procedures.

11.      The Debtor shall be entitled to exercise all rights and make all determinations permitted in the Bidding Procedures based on its business judgment

and in consultation with Savills, Ten-X, and the City. Among other things, Debtor may (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before the entry of the Sale Order any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interest of the Debtor's estate and its creditors; and (c) at or before the conclusion of the Auction, impose such other terms and conditions upon Qualified Bidders that are determined to be in the best interest of the Debtor's estate. Notwithstanding anything to the contrary in this Order or the Bidding Procedures, unless the DIP Lender provides its prior written consent, the Qualified Bid selected by the Debtor as the highest or otherwise best offer must provide for the payment to the DIP Lender of all of the Debtor's obligations to the DIP Lender, in full, in cash, and at the closing of the Sale. By submitting a Qualified Bid, a Qualified Bidder acknowledges and understands that the Leland House is currently not in compliance with the ordinances, regulations and laws of the City, and agrees that, if it becomes the Successful Bidder or Back-Up Bidder, as applicable, it will comply with, and abide by, applicable law, including all of the ordinances, regulations and laws of the City, and that such agreement shall be included in any order authorizing and approving the Sale of the Leland House, enforceable by the City in this or any other court of competent jurisdiction ("City Condition").

12. No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and by submitting a Qualified Bid, each person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of section 503(b) of the Bankruptcy Code, as having made a substantial contribution to this Case, or otherwise.

13. Any purchase agreement will contain a provision that the purchaser must not interfere with the Debtor, The City of Detroit, and their agent in their efforts to remove tenant ~~belongs~~belongings from the Debtor's Property.

### III. FORM PSA AND NOTICE OF THE SALE PROCESS

14. The form of purchase and sale agreement agreed upon among the Debtor and the Stalking Horse pursuant to the Stalking Horse Agreement and to be filed with the Court (the "Form PSA") shall be the purchase and sale agreement used by Debtor in marketing Debtor's assets, and the Successful Bidder shall be required to execute the Form PSA promptly after conclusion of the Auction in accordance with the Bidding Procedures. Debtor may, but is not required to, permit alterations to the Form PSA if, in Debtor's judgment, such alterations will (i) not significantly delay closing, (ii) not significantly increase risk to Debtor's estate, and (iii) will facilitate Debtor obtaining the highest or otherwise best possible Bid. Any alterations

must be clearly noted in Debtor's sale approval motion to be filed after close of the Auction.

15.     Debtor is authorized to circulate the Notice of Auction Sale and Bidding Procedures ("Notice") in substantially the form attached to the Motion. The Bidding Procedures set forth in the Notice are incorporated herein by reference and will apply to the Sale of the Leland House. To the extent there is a conflict or inconsistency between the Bidding Procedures incorporated herein and the remainder of this Order, the remainder of this Order shall govern and control to the extent of the conflict or inconsistency.

16.     Within two (2) business days after the entry of this Order, the Debtor shall serve the Notice of Auction Sale and Bidding Procedures by first-class mail and/or email upon: (a) the U.S. Trustee; (b) counsel to the DIP Lender; (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (d) all applicable state and local taxing authorities; (e) all of the Debtor's other creditors; (f) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (g) all other parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Debtor shall further (h) arrange for the Notice of Auction Sale and

Bidding Procedures to be made available in Debtor's data room, and (i) delivered to all Qualified Bidders before the commencement of the Auction.

17.     Within two (2) business days after the conclusion of the Auction, the Debtor shall file a Motion to Approve Sale with the Court and serve a copy on the Notice Parties via (i) the Court's electronic case filing system (ecf), (ii) email, (iii) overnight courier, or (iv) (only if the Sale Hearing is scheduled no less than ten days after service) by U.S. mail.

## IV.     THE SALE HEARING AND OBJECTIONS

**18.**     The Sale Hearing will be conducted on an expedited basis on **May __, 2026, at __:__ _.m. (prevailing Eastern Time)**. The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment being filed with the Court.

19.     Objections, if any, to the relief requested in the Sale Motion relating to the Sale must be in writing and filed with the Court no later than **twenty-four hours before the commencement of the Sale Hearing (the "Objection Deadline")**. Objections must be filed with the Court and served via ecf or otherwise served on the Notice Parties so that notice is actually received by the Objection Deadline.

{01166062.101166371.2}

9

## V. NO AMENDMENT OF OTHER ORDERS; IMMEDIATE EFFECT

20. Nothing in this Order or the Motion shall be deemed to constitute the assumption or assignment of a Contract. This Order does not amend or supersede any other Order issued by this Court, including, by way of example only, the Final DIP Funding Order (ECF No. 131). The City is granted standing to object to any request for administrative expenses filed in this case.

21. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtor may, in its discretion and without further delay, take any action and perform any act authorized by this Order.