# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                              Case No. 25-51190

LELAND HOUSE LIMITED                                Chapter 11
PARTNERSHIP COMPANY,

          Debtor.                                   Hon. Maria L. Oxholm

_____/

## DEBTOR'S NOTICE OF FILING
## STALKING HORSE AGREEMENT

Leland House Limited Partnership Company (the "Debtor"), by and through its counsel, Heilman Law, PLLC and Schafer and Weiner, PLLC, for its *Notice of Filing Stalking Horse Agreement* (the "Notice") states as follows:

1.      On April 17, 2026, the Court entered its *Order (A) Authorizing the Debtor to Conduct an Auction Sale of Debtor's Building, (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse Agreement, and (D) Scheduling a Sale Hearing* [ECF No. 295] (the "Bid Procedures Order").

2.      The Bid Procedures Order gave Debtor discretion to enter into a stalking horse purchase agreement on certain terms and condition.  ECF No. 295, ¶ 5.

3.      The Order further required that "[t]he new stalking horse agreement shall be filed on the docket not later than close of business of Wednesday, April 22, 2026 ...." Id.

4.      The Debtor, in consultation with NextBridge Funding, LLC, has selected Mudhish Development Company, LLC as the stalking horse bidder consistent with the stalking horse agreement attached as **Exhibit A** hereto.

Respectfully submitted,

SCHAFER AND WEINER, PLLC

By: _/s/ John J. Stockdale, Jr._
JOHN J. STOCKDALE, JR.  (P71561)
Co-Counsel for Debtor
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
 (248) 540-3340
jstockdale@schaferandweiner.com


and             HEILMAN LAW PLLC

By: _/s/ Ryan D. Heilman_
RYAN D. HEILMAN (P63952)
Co-Counsel for Debtor
40900 Woodward Ave; Ste. 100
Bloomfield, MI 48304
(248) 835-4745
ryan@heilmanlaw.com

Dated: April 20, 2026

# Exhibit

# A

# STALKING HORSE PURCHASE AGREEMENT

Date: April 16, 2026

Leland House Limited Partnership Company
Debtor-in-Possession
400 Bagley Street
Detroit, Michigan 48226

**Re: *Stalking Horse Bid for 400 Bagley Street, Detroit, Michigan (a/k/a Leland House)***

Mudhish Development Co., LLC, a Michigan Limited Liability Company (**"Buyer"** or **"Stalking Horse"**) and Leland House Limited Partnership Company, a Michigan limited partnership, as debtor-in-possession (**"Seller"** or **"DIP"**), agree to this Stalking Horse Purchase Agreement ("Agreement") in connection with Seller's Chapter 11 case, *In re Leland House Limited Partnership Company*, Case No. 25-51190-MLO, pending in the United States Bankruptcy Court for the Eastern District of Michigan (the **"Bankruptcy Court"**). This Agreement sets forth the principal terms upon which Buyer proposes to acquire the Property (defined below) through a sale under Sections 363(b) and 363(f) of Title 11 of the United States Code (the **"Bankruptcy Code"**).

This Agreement sets forth the parties' agreement with respect only to the participation of Buyer as a stalking horse purchaser of the Property (defined below). The sale and purchase or the Property will be subject to execution of a definitive purchase and sale agreement (the **"PSA"**), on a form provided by Ten-X, approved by the Bankruptcy Court, and that containing a provision that Buyer must not interfere with the Debtor, The City of Detroit, and their agent in their efforts to remove tenant belongs from the Debtor's Property..

This Agreement is subject in all respects to approval by the Bankruptcy Court for which Seller shall immediately apply.

## 1. Property

The real property commonly known as 400 Bagley Street, Detroit, Michigan (a/k/a **Leland House**, as further described in the attached Exhibit A) (the **"Property"**), together with all buildings, fixtures, improvements, easements, appurtenances, and all assignable permits, warranties, contracts, intangible property, plans, specifications, and records used in the ownership or operation of the Property (collectively, the **"Assets"**).

## 2. Sale Structure

The Assets will be sold pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, and interests of any kind, including without limitation:

- All claims for possession asserted by or on behalf of former residential tenants;
- All claims relating to former tenants' personal property;
- All successor liability claims of any nature whatsoever.

The Sale Order (defined below) shall contain an express finding of no successor liability and a determination that Buyer qualifies as a good-faith purchaser under Section 363(m) of the Bankruptcy Code.

### 3. Lease Treatment

DIP shall sell the Property to Buyer free and clear of all leases, including all tenant leases and all commercial leases.

### 4. Purchase Price

The aggregate purchase price shall be **Three Million Dollars ($3,000,000)** (the **"Purchase Price"**), subject to customary prorations and adjustments as of the closing date.

### 5. Deposit

Upon execution of this Agreement, Buyer shall deliver a deposit of Three Hundred Thousand Dollars **($300,000)** (the **"Deposit"**) to Title Connect, LLC (the **"Escrow Agent"**), to be held in escrow and credited against the Purchase Price at closing.

Seller shall provide Title Connect, LLC's wire coordinates for Buyer's Deposit, at the time of the Bankruptcy Court's approval of this Agreement.

The Deposit shall be fully refundable to Buyer if: (a) Buyer is not the successful bidder at auction; (b) the Bankruptcy Court does not approve the sale to Buyer on the agreed terms; (c) any condition precedent to closing fails and Buyer has not waived it; (d) DIP defaults under the PSA; or (e) the Bankruptcy Case is converted or dismissed. In each such event, Escrow Agent shall return the Deposit to Buyer within three (3) business days of written demand.

### 6. Bid Protections

**(a) Breakup Fee.** If Buyer is not the successful purchaser, DIP shall pay Buyer a breakup fee equal to three percent (3%) of the Purchase Price (the **"Breakup Fee"**). The Breakup Fee shall be payable from the proceeds of any alternative sale or transaction at or prior to the closing of such alternative transaction.

{01166073.4}            2

**(b) Administrative Expense Treatment.** The Breakup Fee and Expense Reimbursement (collectively, the **"Bid Protections"**) shall be treated as ordinary administrative expenses under Section 503(b) of the Bankruptcy Code and payable on the same priority as other administrative claims. The Bid Protections shall survive dismissal of the Bankruptcy Case. In the event of conversion of the Bankruptcy Case to a case under Chapter 7, the Bid Protections shall survive if the Chapter 7 Trustee (or anyone on his behalf) sells the Property within six months after the date of this Letter of Intent.

**(d) No Credit Bid Offset.** The Stalking Horse is not permitted to use the Bid Protections as a credit against other bidders.

### 7. Bidding Procedures

DIP shall seek Bankruptcy Court approval of bidding procedures (the **"Bidding Procedures"**) that include the following minimum requirements:

- The initial overbid must exceed the Purchase Price by an amount no less than the aggregate Bid Protections plus $50,000, ensuring the estate is made whole after payment of the Bid Protections;
- Each successive bid increment shall be no less than $50,000;
- All competing bidders must demonstrate adequate financial capacity and submit a cash deposit equal to ten percent (10%) if and only if they are successful bidder and back-up bidder (as those terms are used in the Bidding Procedures);
- The Bidding Procedures shall provide Buyer reasonable advance notice of all qualified bids and a meaningful opportunity to respond at any auction. For clarity, a public auction conducted via the Ten-X platform satisfies this condition.
- Stalking Horse shall have the right to overbid any other bidder at the auction.

### 8. Stalking Horse Designation Conditions

As conditions to Buyer's agreement to serve as Stalking Horse and to remain so designated, DIP shall satisfy each of the following prior to or concurrently with stalking horse designation:

(1) DIP shall obtain written approval from the City of Detroit authorizing Buyer (and its agents, contractors, and consultants) to reasonably access the Property.

Failure to satisfy these conditions within the time period set forth in the Bidding Procedures shall entitle Buyer to terminate this Agreement and receive an immediate return of the Deposit.

## 9. Diligence Report Assignment

As a condition of reimbursement under paragraph 6, Buyer shall provide DIP with all surveys, environmental reports, engineering reports, and other third-party diligence materials procured by Buyer in connection with the transaction ("Diligence Materials") and permit DIP to place the Diligence Materials in a data room available to other qualified bidders. If Buyer is not the successful bidder and the Breakup Fee is paid in full, Buyer shall automatically assign to the successful bidder (or, at DIP's election, to DIP) all of Buyer's right, title, and interest in the Diligence Materials. This assignment is without warranty or recourse. This provision does not require Buyer to provide any particular materials, but Buyer will not be reimbursed for any materials that are not timely provided to DIP at least two weeks before a scheduled auction sale.

## 10. Conditions Precedent to Closing

Closing shall be subject to satisfaction (or waiver by the benefited party) of the following:

- Entry of a final order of the Bankruptcy Court approving the sale under Sections 363(b) and 363(f) free and clear of all liens, claims, encumbrances, and interests, with a finding of no successor liability, good-faith purchaser status under Section 363(m), and, if necessary to timely close on the sale, waiver of the 14-day stay under Bankruptcy Rule 6004(h) (the "Sale Order");

- Delivery by Title Connect, LLC of an ALTA owner's title insurance policy (or irrevocable commitment to issue), reasonably satisfactory to Buyer, insuring fee simple title in Buyer in the amount of the Purchase Price, subject only to generally applicable ordinances, regulations and other laws, utility easements, and other permitted exceptions acceptable to Buyer, provided, however, the form of title policy current disclosed in the data room is acceptable to Buyer;

- Delivery of customary seller closing documents, including deed, bill of sale, assignment and assumption agreements, FIRPTA certificate, and title affidavits, and an estoppel certificate from the commercial tenant in a form reasonably satisfactory to the Buyer;

- No injunction, stay, or order of any court prohibiting the sale or closing.

- The Definitive PSA shall be on a form provided by Ten-X.

## 11. Closing

Closing shall occur within twenty (20) business days after satisfaction or waiver of all conditions precedent, but in no event later than May 29, 2026, unless the parties mutually agree in writing to extend such time. Time is of the essence.

## 12. Prorations and Closing Costs

Real estate taxes, assessments, utilities, and operating expenses shall be prorated as of 11:59 p.m. on the day preceding closing in accordance with Michigan commercial practice. Each party shall bear closing costs as customarily allocated in Michigan commercial real estate transactions unless the Bankruptcy Court orders otherwise. Notwithstanding the forgoing, Buyer shall be responsible for all summer 2026 real and personal property taxes.

## 13. Representations; As-Is Sale

Buyer acknowledges that the Assets are sold **"AS IS, WHERE IS"** without representation or warranty of any kind except as expressly set forth in the PSA or the Sale Order. DIP makes no representations regarding the condition, fitness, or suitability of the Property.

Buyer represents and warrants that it is a ready, willing, and able purchaser of the Property and that Buyer shall provide proof of funds and Buyer's ability to close the contemplated transaction, to Seller and the Bankruptcy Court upon their demand.

Buyer's purchase is not contingent upon Buyer obtaining mortgage financing.

## 14. Confidentiality

Buyer acknowledges that this Agreement will become a public record in the Chapter 11 case, *In re Leland House Limited Partnership Company*, Case No. 25-51190-MLO, pending in the United States Bankruptcy Court for the Eastern District of Michigan. Excepting the disclosure of this Agreement and any related documents or information required in the Bankruptcy Court, each party shall hold in confidence the terms of this Agreement and all information exchanged in connection herewith, except as required by law, Bankruptcy Court order, or the rules governing the Bankruptcy Case, or as necessary for a party to perform its obligations or enforce its rights hereunder. Notwithstanding anything to the contrary, DIP may share a copy of this Agreement with the United States Trustee's Office and may file a copy of this Agreement with the Bankruptcy Court, once executed by both DIP and Buyer, as an attachment to a motion for approval of Bidding Procedures. This obligation is binding upon execution and survives termination.

## 15. Governing Law; Jurisdiction

This Agreement shall be governed by the laws of the State of Michigan, without regard to conflicts-of-law principles, except to the extent the Bankruptcy Code and federal law control. The Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of or related to this Agreement and the transaction.

## 16. Costs and Expenses

Except as provided in Section 6 regarding Bid Protections, each party shall bear its own costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby.

## 17. Counterparts; Electronic Signatures; Assignment

This Agreement may be executed in counterparts, each deemed an original, and all of which together constitute one instrument. Electronic signatures shall be treated as originals for all purposes.

If the foregoing terms are acceptable, please countersign this LOI and return it to the undersigned. Upon execution, the parties shall proceed in good faith to finalize the PSA and seek Bankruptcy Court approval of the Bidding Procedures and Sale Order.

Respectfully submitted,

Mudhish Development Co., LLC,

a Michigan Limited Liability Company

("Buyer")

By: _____

Name: Raad Gobah

Title: Member

Date: April 14, 2026

**AGREED AND ACCEPTED:**

**LELAND HOUSE LIMITED PARTNERSHIP COMPANY,**

a Michigan limited partnership, Debtor-in-Possession

By: _____

Name: Luis Ramirez

Title: President

Date: April 19, 2026