# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

Case No. 25-51190

LELAND HOUSE LIMITED
PARTNERSHIP COMPANY,

Chapter 11

Debtor.

Hon. Maria L. Oxholm

_____/

## DEBTOR'S MOTION TO SELL REAL PROPERTY

Leland House Limited Partnership Company (the "Debtor"), by and through its

counsel, Heilman Law, PLLC and Schafer and Weiner, PLLC, for it *Motion to Sell*

*Real Property* (the "Motion"), states as follows:

## GENERAL ALLEGATIONS

1.     On November 3, 2025 (the "Petition Date"), the Debtor filed a

Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code")[1] commencing the above-captioned case (the "Case"). *See* ECF

No. 1.

2.     The Debtor is currently operating as a debtor-in-possession pursuant to

sections 1107 and 1108.

---

[1] Except as otherwise noted herein, (i) all section references are references to sections of the Bankruptcy Code and (ii) all references to FRBP are references to the Federal Rules of Bankruptcy Procedure.

{01168449.4}

1

3. Luis Ramirez is the responsible person for the debtor-in-possession.

4. No committee of unsecured creditors has been formed in this Case under section 1102(a).

5. This Court has jurisdiction over the matters relating to this Motion pursuant to 28 U.S.C. §1334(a).

6. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(M).

7. Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

8. The Debtor files this Motion pursuant to sections 105(a), 361, and 363, as supplemented by Bankruptcy Rules 2002, 6004 and 9014.

## BACKGROUND AND HISTORY

8. The Debtor owns and operates the Leland House, a 20-story Beaux-Arts Detroit landmark built in 1927 and located at 400 Bagley Street, Detroit, Michigan (together with any personal property identified in the Purchase Agreement (defined herein), the "Property"). *See* **Exhibit B** (Declaration of Luis Ramirez)

9. Prior to the Petition Date, the Property was encumbered with thirteen (13) mortgages and liens having an aggregate face value of $18,877,346.26. *See*

ECF No. 40. Additionally, the Property was leased to approximately forty (40) tenants pursuant to month-to-month leases.[2] *See* **Exhibit B**.

10. The Property is presently not habitable because it lost power on December 10, 2025, and its tenants were relocated on an emergency basis by the City of Detroit. Id.

11. The Debtor retained Savills, Inc. ("Savills") to market the Property on January 27, 2026, and Savills has continuously done so since that date. *See* ECF No. 154. *See also* **Exhibit C** (Declaration of Greg Brockart). Additionally, Savills has further marketed the Property through Ten-X, an on-line auction platform with access to potential purchasers across the United States and internationally. *See* **Exhibit C**.

12. After three hearings at which objecting parties were permitted to be heard, and after the filing of a stipulation [ECF No. 294], on April 17, 2026, the Court entered its *Order (A) Authorizing the Debtor to Conduct an Auction Sale of the Debtor's Building, (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse Agreement, and (D) Scheduling a Sale Hearing* [ECF No. 295] (the "Bid Procedures Order").

---

[2] Debtor terminated the tenant leases on March 27, 2026, effective as of April 30, 2026, and, as belts and suspenders, its *Motion to Reject all Month-to-Month Rental Agreement with Residential Tenants* [ECF No. 231] is pending and will be heard contemporaneously with this Motion on May 14, 2026. *See* ECF No. 299.

13.     Consistent with paragraph 16 the Bid Procedures Order, the Debtor timely sent the *Notice of Auction Sale and Bidding Procedures* [ECF No. 289, Exhibit B] (the "Auction Notice") to those parties requiring the Notice. *See* ECF Nos. 301, 302, and 303.

14.     Additionally, the Auction Notice and Bid Procedures Order were placed in the data room as further required by paragraph 16 of the Bid Procedures Order. *See* **Exhibit C**.

15.     On April 20, 2026, Debtor, in consultation with Next Bridge Funding, LLC (the "DIP Lender"), selected Mudhish Development Company, LLC ("Mushish") to be the stalking horse and filed its $3 million stalking horse agreement on the docket at ECF No. 300.[3] *See also* ECF No. 295, ¶ 5(ii).

16.     Consistent with the Bid Procedures Order, the Debtor held the Auction from Noon on April 27, 2026 through approximately Noon on April 29, 2026 using the Ten-X on-line platform. *See* **Exhibit C**.

---

[3] Debtor had initially selected Arkist, LLC to be the stalking horse with a $2.1 million stalking horse bid. However, when Mudhish made a competing offer before entry of the Bid Procedures Order, Debtor selected Mudhish as the stalking horse bidder because (1) the price was $900,000 greater, (2) the break up fee was reduced from 3.5% to 3%, (3) Mudhish did not require authority to credit bid its break up fee, and (4) the proposed stalking horse purchase agreement was generally more favorable to Debtor.

17. Prior to the Auction, the Property's listing on the Ten-X platform had received 10,017 views, 157 executed confidentiality agreement, and 8 Qualified Bidders. Id.

18. Mudhish was the only Person to bid on the Property at the Auction. Id.

19. At the conclusion of the Auction, Mudhish (the "Winning Bidder") was selected with the Winning Bid of $3 million. Id.

20. A copy of the Winning Bidder's purchase agreement is attached as **Exhibit D** (the "Purchase Agreement").

21. The Debtor now proposes to sell the Property to the Winning Bidder pursuant to Purchase Agreement (the "Sale").

### RELIEF REQUESTED

22. Debtor respectfully requests that this Honorable Court enter an order, substantially in the form attached as **Exhibit A**, (1) authorizing and approving the Sale of Property to the Winning Bidder pursuant to the Purchase Agreement free and clear of all liens, claims, and encumbrances including, without limitation, tenant leases, and (2) except as otherwise noted herein, transferring all liens, claims and encumbrances to the proceeds of the Sale to the same extent, validity, and priority as existed prior to the Sale.

## BASES FOR RELIEF

23.     Section 363(b)(1) empowers a debtor-in-possession, after notice and a hearing to "use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. §363(b)(1).

24.     The standard for approving a sale of assets pursuant to section 363(b)(1) is whether the proposed sale represents an exercise of sound business judgment by the debtor.  Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)(1)); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); *See also* In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991), *citing* Lionel, 722 F.2d at 1071; In re Eng'g Products Co., Inc., 121 B.R. 246, 249 (Bankr. E.D. Wis. 1990).

25.     Under section 363(b), a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. *See* Lionel, 722 F.2d at 1070-1071.  Once the debtor has articulated such a valid business purpose, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in an honest belief that the action was in the debtor's best interests. *See* In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D. N.Y. 1992).

A party seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." <u>Montgomery Ward</u>, 242 B.R. 147, 155 (D. Del. 1999).

26. Courts consider the following factors to determine whether a proposed sale is an exercise of a debtor's sound business judgment: (a) whether a sound business reason exists for the proposed sale; (b) whether fair and reasonable consideration is provided; (c) whether the sale has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. <u>In re Eng'g Products Co., Inc.</u>, 121 B.R. 246, 247-49.

27. The paramount goal in any proposed sale of estate property is to maximize the proceeds received by the debtor's estate. *See, e.g.,* <u>In re Food Barn Stores, Inc.</u>, 107 F.3d 558, 564-565 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand."); <u>Integrated Resources</u>, 147 B.R. at 696 ("It is a well-established principle of bankruptcy law that the . . . [debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (*quoting,* <u>In re Atlanta Packaging Prods., Inc.</u>, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988).

28. The proposed Sale of the Property to the Winning Bidder satisfies each of the <u>Engineering Products</u> factors and results in the highest and best price for the Property.

29. The first factor is satisfied because there is a sound business justification for the Sale of the Property: The Debtor lacks sufficient resources to maintain or rehabilitate the Property. *See* **Exhibit B**. As a result, the Property continues to deteriorate and its value diminish absent significant investment. Id. The Sale of the Property to the Winning Bidder results in value maximizing transaction that will allow new investment into and rehabilitation of the Property. *See* **Exhibit C**.

30. The second factor is satisfied because the Winning Bid is fair and reasonable consideration for the Property under the circumstances of this Case. While the Debtor's 2020 appraisal is stale and cannot be used to set the Property's value, the auction together with the substantial pre-Auction marketing of the Property resulted in a value-maximizing Winning Bid – the $3 million stalking horse bid. *See* Barnes v Barnes (In re Barnes), 615 B.R. 514, 525 (Bankr. D. Conn. 2000) ("Critically, it is generally accepted that the best and truest indication of value is the behavior in the marketplace and the sale process itself." (citing cases)). Because the value of the Property was market-driven and set by the Winning Bid at auction, the Winning Bid is fair and reasonable under the circumstances of this Case.

31. The third factor is also satisfied because the Sale has been proposed and negotiated in good faith. "In assessing the good faith of a purchaser, courts have considered factors such as: (1) whether the sale was negotiated at arm's length; (2)

whether any officer or director of the debtor holds any interest in or is otherwise related to the potential purchaser; and (3) whether fraud or collusion exists among the prospective purchaser, any other bidders or the trustee." In re Nicole Energy Servs., 385 B.R. 201, 235 (Bankr. S.D. Ohio 2008) (internal citations omitted). Here the third factor is satisfied because (1) the Sale was negotiated at arm's length through the court-approved Auction process, (2) no officer or director of the Debtor holds any interest in the Winning Bidder or any other bidder, and (3) the Sale process has been without fraud or collusion. *See* **Exhibit B** and **Exhibit C**.

32. Lastly, the fourth factor is satisfied because there has been adequate and reasonable notice of the Sale through proper notice of the Sale both before and following entry of the Bid Procedures Order. *See* ECF Nos. 301, 302, and 303.

33. As a result, the Sale is within the Debtor's sound business judgment and should be approved.

A. **The Sale Process Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims, Interests and Encumbrances**

34. This Court has authority to authorize the sale of the assets free and clear of all liens, claims, rights, interests, charges, or encumbrances ("Liens"), with Liens transferred to proceeds. *See* section 363(f).

35. Under section 363(f), a debtor-in-possession may sell property free and clear of any non-debtor's interest in such property if, among other things: (1)

applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* section 363(f).

36. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to permit the Debtor's Sale of the Property free and clear of all Liens. *See* <u>Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)</u>, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided that at least one of the subsections of section 363(f) has been satisfied).

37. The Debtor submits that the Property may be sold free and clear of Liens—all in accordance with at least one of the five conditions of section 363(f).

38. Consistent with section 363(f)(2), each of the parties holding Liens on the Property has consented[4], will consent, or absent any objection to the Motion, will be deemed to have consented to, its sale and transfer.

---

[4] Those parties holding Liens that signed the *Stipulation to Approve Debtor's Renewed Motion for Entry of Order (A) Authorizing the Debtor to Conduct an Auction Sale of Debtor's Building, (B) Establishing Bidding Procedures, (C)*

39. Additionally, certain of the mortgages may be invalid under MCL § 565.382 because they are more than thirty (30)-years old.[5] As a result, the mortgages of 400 Bagley Corp., City of Detroit Community & Economic Development Depart., Detroit Downtown Development Authority, and Robert Reilly may be subject to a bona fide dispute because the mortgages were filed before 1996. *See* ECF No. 40. Thus, with respect to those mortgages, section 363(f)(4) is satisfied.

40. Further, the Debtor has terminated each of the Tenants' monthly rental agreements. Pursuant to MCL § 600.5714(1)(c), Debtor is entitled to recover possession of the premises after termination of a lease.[6] Accordingly, Tenants have

---

*Approving Stalking Horse Agreement, and (D) Scheduling a Sale Hearing* [ECF No. 289] have already consented to the Sale subject to the limited reservation of rights in the Bid Procedures Order.

[5] MCL §565.382 provides, "Every mortgage not renewed by the affidavit of the owner or 1 of the owners thereof, or by the affidavit of the agent or attorney of the owner or owners, showing the amount remaining unpaid on said mortgage, or by extension agreement, filed in the office of the register of deeds of the county in which the lands are situated which are covered by said mortgage, within 30 years after the due date as set forth in said mortgage, or when no due date is set forth in said mortgage, then within 30 years after the recording of said mortgage, shall be considered as discharged."

[6] The Tenants may argue that they have a right to possession until after summary proceedings have been completed and a court orders their removal from the premises. However, summary proceedings are a statutorily-approved means for a person [Debtor] "entitled to possession" to "recover possession." MCL § 600.5714(1). Summary proceedings do not grant any rights to a tenant, nor are they the only permissible remedy for recovery of possession. MCL § 600.5750. *See, infra,* n. 7.

25-51190-mlo    Doc 305    Filed 05/01/26    Entered 05/01/26 14:12:05    Page 11 of 76

no continuing interest in the Property and any interest they may assert is subject to *bona fide* dispute. Therefore, section 363(f)(4) is also satisfied with respect to the interests asserted by the Tenants.

41.    Furthermore, the remaining creditors could be compelled to accept a money satisfaction of such interest in a hypothetical legal or equitable proceeding satisfying section 363(f)(5). *See* In re Grand Slam U.S.A., 1748 B.R. 460, 462 (E.D. Mich. 1995)(hypothetical cram down proceedings under 1129(b)(2)(A)); In re Levitt & Sons, LLC, 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008)(discussing hypothetical nature and noting cram down under 1129(b)(2)(A) satisfies 363(f)(5)); In re DVS Show Co., 2012 Bankr. LEXIS 6369, **8-*9 (Bankr. C.D. Cal. June 22, 2022) (receivership sale qualified for section 363(f)(5) purposes); In re Halt Med., Inc., 2017 Bankr. LEXIS 3947, *20 (Bankr. D. Del. June 8, 2017) (foreclosure and receivership qualify under 363(f)(5))[7]; In re WK Lang Holdings, LLC, 2013 Bankr. LEXIS 5224, *27-28 (Bankr. D. Kan. Dec. 11, 2013) (state law article 9 foreclosure).

---

[7] Under Michigan foreclosure law, an interest in property (including a lease) created after the foreclosing mortgagor's interest is extinguished. White v. Riness, 2020 Mich. App. LEXIS 3930, *5 (Mich. Ct. App. June 18, 2020) (citing MCL § 600.3236 and cases).

Additionally, at least one court has found jurisdiction to decide eviction issues in connection with a sale of property free and clear. Ultimate Opportunities LLC v. Plan Adm'r, 2021 U.S. Dist. 185870, *10-*16 (E.D. N.Y. Sept. 28, 2021).

42.     Importantly, this Court may authorize the sale of the Property free and clear of the Tenant's interests. In <u>Precision Indus. v. Qualitech Steel SBQ, LLC</u>, 327 F.3d 537 (7th Cir. 2003), the Seventh Circuit Court of Appeals concluded that an interest, as used in section 363(f), included the possessory interest of a tenant (<u>id</u>. at 545) and section 365(h) did not supersede section 363(f) because, among other things, a lessee would have the right under 363(e) to request adequate protection[8] (<u>id</u>. at 547). *See also* <u>Pinnicale Rest. at Big Sky, LLC v. CH SP Acquisitions (In re Spanish Peaks Holdings II, LLC)</u>, 872 F.3d 892 (9th Cir. 2017), *following* <u>Precision Indus. v. Qualitech Steel SBQ, LLC</u>, *supra*. Thus, the Tenants could be compelled to accept a money judgement in a hypothetical foreclosure, receivership or plan and section 363(f)(5) is satisfied.

43.     Accordingly, section 363(f) authorizes the Property's sale and transfer free and clear of any Liens.

**B.      Purchasers are Good Faith Purchaser and are Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code, and the <u>Transfer and Sale of the Assets Does Not Violate Section 363(n).</u>**

44.     Under section 363(m), the reversal or modification on appeal of an

---

[8] To the extent that any Tenant asserts a claim for adequate protection under section 361, the Court should follow <u>In re R.J. Dooley Realty, Inc.</u>, 2010 Bankr. LEXIS 1761 (Bankr. S.D. N.Y. May 21, 2010), which concluded that a tenant faced with eviction is not entitled to adequate protection and that 365(h) does not apply with respect to 363(f).

authorization of the sale of property pursuant to section 363 does not affect the validity of such sale to an entity that purchased the property in good faith. *See* section 363(m).

45. The Sale has been negotiated at arm's-length and in good faith, and will be on the terms set forth in this Motion, Winning Bidder is entitled to the full protections of section 363(m). *See* **Exhibit C**.

46. A party would have to show fraud or collusion between the buyer and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See* <u>Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)</u>, 111 F.3d 269, 276 (2d Cir. 1997) ("[t]ypically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"). *See also* <u>In re Anglika Films, 57th, Inc.</u>, 1997 WL 283412, *7 (S.D. N.Y. 1997); <u>In re Bakalis</u>, 220 B.R. 525, 537 (Bankr. E.D. N.Y. 1998).

47. No such collusive activity took place here because the Auction was conducted in an open and transparent manner on-line through the Ten-X platform. *See* **Exhibit C**.

48. As a result, the Winning Bidder should receive the protections of section 363(m).

## ABANDONMENT OF PERSONAL PROPERTY

49. Section 554(a) provides "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or of inconsequential value and benefit to the estate.

50. Section 105(a) provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

51. Here, the remaining personal property consists of used appliances and maintenance tools and equipment of de minus value. *See* **Exhibit B**.

52. After closing on the Sale, the Debtor has no need for this property and estimates that the costs of removal will exceed the value of the property. Id.

53. The Debtor proposes to abandon all such personal property and any party in interest asserting a Lien on such property shall have until May 29, 2026 to take possession and remove such property.

## WAIVER OF STAY PROVIDED BY FRBP 6004(H)

54. FRBP 6004(h) provides that: "[a]n order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

55. The Debtor requests that the Court waive the fourteen-day stay of FRBP 6004. By waiving such requirement, the Debtor and any purchaser will be able to

25-51190-mlo   Doc 305   Filed 05/01/26   Entered 05/01/26 14:12:05   Page 15 of 76

immediately begin the process of closing on the Sale of the Property, which will benefit the estate by ensuring the Sale occurs prior to exhausting the Debtor's funding in the first week of June 2026.

## NOTICE

56.    Notice of the hearing on and a copy of this Motion shall be given to: (a) the Office of the United States Trustee for the Eastern District of Michigan; (b) all known parties with liens of record on assets of the Debtor as of the Petition Date; (c) all known taxing authorities for the Assets; (d) the Tenants; (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002, and (f) Debtor's matrix. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

**WHEREFORE**, Debtor respectfully requests that this Honorable Court grant the Motion, enter an order substantially in the form attached as **Exhibit A**, and provide any other relief that is just and proper.

*(Signatures on Next Page)*

Respectfully submitted,

SCHAFER AND WEINER, PLLC

By: /s/ John J. Stockdale, Jr.
  JOHN J. STOCKDALE, JR. (P71561)
  Attorneys for Debtor
  40950 Woodward Avenue, Suite 100
  Bloomfield Hills, MI  48304
  (248) 540-3340
  jstockdale@schaferandweiner.com


and     HEILMAN LAW PLLC

By: / s / Ryan D. Heilman
  RYAN D. HEILMAN (P63952)
  Attorneys for Debtor
  40900 Woodward Ave; Ste. 100
  Bloomfield, MI 48304
  (248) 835-4745
  ryan@heilmanlaw.com


Dated: May 1, 2026

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                          Case No. 25-51190

LELAND HOUSE LIMITED                            Chapter 11
PARTNERSHIP COMPANY,

      Debtor.                                  Hon. Maria L. Oxholm

_____/

### Order Granting Debtor's Motion to Sell Real Property

This matter came before the Court upon the Debtor's *Motion to Sell Real Property* [ECF No. __] (the "Sale Motion").[1] The Court has reviewed the Sale Motion, the exhibits thereto, and any objections thereto. On May 14, 2026, the Court held a hearing on the Sale Motion ("Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion. The Court reviewed the Sale Motion, the exhibits thereto, and other pertinent pleadings, considered the arguments and representations of counsel made, and the evidence proffered or adduced at, the Sale Hearing, and is advised in the premises. It appears that: (i) the Debtor gave sufficient notice of the Sale Motion and of the Sale Hearing and the relief sought therein under the particular circumstances of this Chapter 11 case and (ii) no other or further notice thereof need be given. It appears that the

---

[1] Capitalized terms used but not defined in this Order shall have the meaning ascribed them in the Sale Motion, the Bid Procedures Order, or the Purchase Agreement (as defined in this Order), as applicable.

{01168494.3}                      1

relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties-in-interest, and after due deliberation,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[2]

A.  **Jurisdiction and Venue**.  This Court has jurisdiction to decide the relief requested in the Sale Motion and over the Sale and the property of Debtor's estate, including the Property, under 28 U.S.C. §§ 157(a)-(b) and 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this chapter 11 case and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.  **Statutory Predicates**.  The statutory predicates for the relief requested in the Sale Motion are sections 105 and 363 of title 11 of Chapter 11 of the United States Code (the "Bankruptcy Code")[3].  Such relief is also warranted pursuant to Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[3] Except as noted to the contrary, all section references in this Order are references to sections of the Bankruptcy Code.

{01168494.3}                                   2

C. **Final Order**. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

D. **Prior Proceedings**. On November 3, 2025 (the "Petition Date"), the Debtor commenced this Chapter 11 case by filing its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108.

E. No official committee of creditors holding unsecured claims against the Debtor was appointed under section 1102.

F. On April 17, 2026, the Court entered its *Order (A) Authorizing the Debtor to Conduct an Auction Sale of the Debtor's Building, (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse Agreement, and (D) Scheduling a Sale Hearing* [ECF No. 295] (the "Bid Procedures Order").

G. The Bid Procedures Order approved the bidding procedures ("Bidding Procedures"; ECF No. 289, Exhibit B).

H. On April 20, 2026, Debtor, in consultation with Next Bridge Funding, LLC (the "DIP Lender"), selected Mudhish Development Company, LLC ("Mudhish") to be the stalking horse and filed its $3 million stalking horse agreement on the docket at ECF No. 300.

I. Consistent with the Bidding Procedures, the Debtor held an auction on April 27 through April 29, 2025 ("Auction"), and Mudhish was identified as the Winning Bidder. *See* ECF No. 304.

J. On May 1, 2026, the Debtor filed the Sale Motion.

K. As set forth in the Certificates of Service filed with the Court at ECF Nos. [_____],the Debtor served the Motion and *Notice of Opportunity to Respond to Motion to Approve Sale of Real Property* [ECF No. __] on May 1, 2026 upon those parties identified in paragraph 16 of the Bid Procedures Order, which service provided due and proper notice of (i) the proposed sale of substantially all of the Property ("Sale"); and (ii) the Sale Hearing. Such service satisfies Bankruptcy Rule 6004 and 2002 and no further or other notice of the Sale Motion need be given.

L. As evidenced by the affidavits of service previously filed with this Court, and based on the representations of counsel at the Sale Hearing, sufficient notice of the Sale, the Auction, the Sale Motion, and the Sale Hearing has been provided by the Debtor under the circumstances in accordance with the Bankruptcy Code and the Bankruptcy Rules and no other or further notice thereof need be given.

M. **Compliance with the Bid Procedures Order**. As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtor has complied with the Bid Procedures Order. The Debtor and its professionals have adequately and appropriately marketed the

Property in compliance with the Bidding Procedures and the Bid Procedures Order. Based upon the record of these proceedings, creditors, other parties-in-interest, and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Property.

N. The Bidding Procedures afforded notice and a fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Property. The Debtor conducted the sale process without collusion and in accordance with the Bidding Procedures.

O. The Debtor has designated Mudhish (the "Purchaser") as the Winning Bidder and its purchase agreement (the "Purchase Agreement") as the Winning Bid for the Property in accordance with the Bid Procedures Order. The Purchaser has complied with the Bid Procedures Order and all other applicable orders of this Court in negotiating and entering into the Purchase Agreement and the Sale otherwise complies with the Bid Procedures Order and all other applicable orders of this Court.

P. The Purchaser acknowledges and understands that the Property is currently not in compliance with the ordinances, regulations and laws of the City, and agrees that it will comply with, and abide by, applicable law, including all of the ordinances, regulations and laws of the City, and this provision is enforceable by the City in this or any other court of competent jurisdiction.

Q.   **Business Judgment**. The Debtor's determination that the Purchase Agreement, including the form and total consideration to be realized by the Debtor under the Purchase Agreement, constitutes the highest or otherwise best offer received by the Debtor for the Property, is fair and reasonable, and is in the best interests of the Debtor, its estate, its respective creditors and all other parties-in-interest, constitutes a valid and reasonable exercise of the Debtor's sound business judgment. The Debtor conducted a fair and open sale process, the sale process was non-collusive, duly noticed and provided a fair and reasonable opportunity for any entity to make an offer to purchase the Property, and the process conducted by the Debtor pursuant to the Bidding Procedures obtained the highest and best value for the Property for the Debtor and its estate, and any other transaction would not have yielded as favorable an economic result.

R.   Consistent with its fiduciary duties, the Debtor has demonstrated sufficient and sound business reasons and justifications for entering into the Sale and the performance of its obligations under the Purchase Agreement including, but not limited to, the fact that (a) the consideration provided by the Purchaser under the Purchase Agreement will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative; and (b) unless the Sale is concluded expeditiously as provided for in the Sale Motion, creditor recoveries will be diminished.

S. **Corporate Authority**. Subject to entry of this Order, the Debtor (a) has full corporate power and authority to execute and deliver the Purchase Agreement to the Purchaser and all other documents contemplated thereby, and (b) has all the necessary corporate power and authority to consummate the Sale. Subject to entry of this Order, the Debtor does not need any consent or approval other than those expressly set forth in the Purchase Agreement, in order to consummate the Sale of the Property.

T. **Good Faith**. The sale process engaged in by the Debtor and the Purchaser, and their respective management, board of directors, employees, agents, advisors and representatives, including, without limitation, the negotiation of the Purchase Agreement, was conducted in accordance with the Bidding Procedures and the Bid Procedures Order, was at arm's length, non-collusive, in good faith, and fair. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale to be avoided, or costs or damages to be imposed, under section 363(n).

U. The Purchaser is a good faith buyer within the meaning of section 363(m) and is therefore entitled to the full protection of that provision in respect of the Sale, each term of the Purchase Agreement (and any ancillary documents executed in connection therewith), and each term of this Order. The protections

afforded by Bankruptcy Code section 363(m) are integral to the Sale and the Purchaser would not consummate the Sale without such protections.

V.    Neither the Purchaser nor any of its officers, directors, managers, members or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined under section 101(31).    No common identity of directors, managers, or members exists between the Debtor and the Purchaser.

W.    **No Fraudulent Transfer**.    The consideration provided by the Purchaser for the Property pursuant to the Purchase Agreement  (a) is fair and reasonable, (b) is the highest and best offer for the Property, (c) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States.

X.    Neither the Debtor nor the Purchaser has entered into the Purchase Agreement or proposes to consummate the Sale, for the purpose of (a) escaping liability for any of the Debtor's debts or (b) hindering, delaying or defrauding the Debtor's present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States.

Y.  **Free and Clear**.  The Debtor may sell the Property free and clear of all claims (including, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof), liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights, and mortgages relating to, accruing, or arising any time prior to the closing of the Sale (the "Closing Date") (collectively, "Claims") because, in each case, one or more of the standards set forth in §§ 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Bid Procedures Motion or the Sale Motion are deemed to have consented under § 363(f)(2) of the Bankruptcy Code.  Those holders of Claims who did object that have an interest in the Property could be compelled in a legal or equitable proceeding to accept a money satisfaction of such Claims under § 363(f)(5) or fall within one or more of the other subsections of § 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Claims that constitute interests in the Property, if any, attach solely to the proceeds of the Sale ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force, and effect that such holders had prior to the Sale, subject to any defenses of the Debtor.  Except for Liens for real property taxes and water and sewer,

all persons having Claims of any kind or nature whatsoever against the Debtor or the Property shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Claims against the Purchaser or any of its assets, property, affiliates, successors, assigns, or the Property.

Z. The Debtor, to the extent permitted by applicable law, may transfer the Property free and clear of all Claims including, without limitation, rights or Claims based on any successor or transferee liability because one or more of the standards set forth in section 363(f)(1)-(5) has been satisfied.

AA. Next Bridge Funding, LLC (the "DIP Lender") has a post-petition lien and super-priority claim ("DIP Lender Claim") secured by the Property under the *Final Order Authorizing Post-Petition Secured Financing, Granting Priority Administrative Expense and Priming Liens on Debtor's Property Pursuant to Sections 364(c)(1), 364(c)(3), 364(d)(1), and Authorizing Adequate Protection* (the "Final Financing Order") [ECF No. 131]. Under the terms of the Final Financing Order, the DIP Lender Claim is required to be paid in full in cash on the Closing Date. Under the Final Financing Order, the DIP Lender Claim includes the all fees and expenses of Debtor's Court-approved professionals, to the extent allowed by the Bankruptcy Court ("Professional Claims"). Professional Claims are to be paid out of the proceeds of the Sale, and, to the extent necessary to ensure sufficient funds to pay the Professional Claims, Debtor may escrow funds from the Sale into a

segregated debtor-in-possession account. Such funds will remain property of Debtor's estate and free and clear of any liens or interests other than the Professional Claims (the "Carve-Out").

BB. The Debtor has, to the extent necessary, satisfied the requirements of section 363(b)(1).

CC. The Purchaser will not consummate the Sale unless this Court expressly orders that none of the Purchaser, its present or future affiliates, its respective present or future owners, or the Property will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims.

DD. Not transferring the Property free and clear of all Claims would adversely impact the Debtor's efforts to maximize the value of its estate, and the transfer of the Property other than pursuant to a transfer that is free and clear of all Claims would be of substantially less benefit to the Debtor's estate.

EE. The Purchaser is not a mere continuation of the Debtor or its estate, there is no continuity or common identity between the Purchaser, on the one hand, and the Debtor or any of its affiliates, on the other hand, and there is no continuity of enterprise between the Purchaser and the Debtor (or any of the Debtor's affiliates). The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and the Sale does not

amount to a consolidation, merger, or *de facto* merger of the Purchaser with or into the Debtor.

FF. Without limiting the generality of the foregoing, neither the Purchaser nor its present or future owners, successors or assigns, nor the Property, will be subject to any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtor may incur in connection with consummation of the Sale or that the Debtor has otherwise incurred prior to the consummation of the Sale.

GG. **Validity of Transfer**. The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement.

HH. The Property is property of the Debtor's estate and good title to the Property is vested in the Debtor's estate within the meaning under section 541(a). The Debtor is the sole and lawful owner of the Property.

II. The Purchase Agreement is a valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms. The Purchase

Agreement, the Sale, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtor and any Chapter 7 or Chapter 11 trustee appointed in this case and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

JJ.     **Compelling Circumstances for an Immediate Sale**. To maximize the value of the Property, it is essential that the transactions contemplated by the Purchase Agreement occur within the time constraints set forth therein.  Time is of the essence in consummating the Sale.  Accordingly, there is cause to waive the stays contained in Bankruptcy Rules 6004 and 6006.

KK.   The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement including, without limitation, the Sale prior to, and outside of, a Chapter 11 plan because, among other things, the Debtor's estate will suffer irreparable harm if the relief requested in the Sale Motion is not granted.  The transactions contemplated by the Purchase Agreement neither impermissibly restructure the rights of the Debtor's creditors nor impermissibly dictate the terms of a Chapter 11 plan for the Debtor, and therefore do not constitute a *sub rosa* plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Sale Motion and the relief requested therein is granted and approved as set forth in this Order. The Debtor is authorized to enter into and perform under the Purchase Agreement, to consummate the Sale to the Purchaser.

2. All objections and responses to the Sale Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and entities given notice of the Sale Motion that failed to timely object thereto are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2).

**A.    Approval of the Purchase Agreement**

3. The Purchase Agreement, all the ancillary documents thereto and all the terms and conditions thereof, are hereby approved in their entireties. The failure to specifically include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement (including, but not limited to, all related agreements and ancillary agreements contemplated thereby) be authorized and approved in their entirety.

4. All amounts due to the DIP Lender under the Final Financing Order, inclusive of post-petition interest, costs, fees, and other expenses and charges under

the Final Financing Order and the DIP Loan Documents (as defined in the Final Financing Order, shall be paid in full in cash to the DIP Lender by the Debtor at, and as a condition of, the Closing and the transfer of the Property to the Purchaser free and clear of Claims held by DIP Lender. Debtor is further authorized to deposit $400,000 from proceeds of the Sale as a Carve-Out into a segregated debtor-in-possession account, subject to the provisions of the Final Financing Order, which shall remain property of the Debtor's estate and may not be disbursed except as authorized by order of the Court.

5.    The claim of the Wayne County Treasurer for all amounts due and owing prior to the date of the Sale has previously been paid. Under the Purchase Agreement, Purchaser assumes responsibility for all real property tax payments due and owing after the date of the Sale, including summer property taxes owed to the City of Detroit for the 2026 tax year.

6.    The claim of the City of Detroit Water & Sewerage Department in the amount of approximately $64,567.10 shall be paid in full at Closing by the Debtor. Said payment to the City of Detroit Water & Sewerage Department shall satisfy section 363(f)(2).

7.    Savills, Inc. ("Savills"), Debtor's real estate broker, shall be paid four percent (4%) of the Purchase Price as provided in the Savills Listing Agreement filed as Exhibit 6.A to the *Application of Debtor to Employ Savills, Inc. as Debtor's Real*

*Estate Broker* [ECF No. 147] and as contemplated by the Court's *Order Authorizing Debtor to Employ Savills, Inc. as Debtor's Real Estate Broker* (stating that "Savills, Inc. shall be compensated for its services only as authorized by the Court, which may include a request for payment out of proceeds of a sale of Debtor's real property as part of a sale approval motion.") [ECF No. 154].

8.     Mudhish shall pay to Ten-X three percent (3%) of the Purchase Price as provided in the Auction Platform Agreement, approved in the Bid Procedures Order (par. 3).

9.     All outstanding and anticipated United States Trustee Fees involving or related to Sale shall be paid from the Sale proceeds at Closing.  The United States Trustee shall provide the Debtor with the amount claimed due within seven (7) days before the Closing.

10.     The Purchase Price specified in the Purchase Agreement for the Property shall be paid by the Purchaser directly to the Debtor as set forth in the Purchase Agreement.  Except as set forth in paragraphs 4 through 9 of this Order, the amount the Debtor receives at Closing shall be held and disbursed only pursuant to a confirmed plan of reorganization or liquidation or as may be otherwise ordered or approved in advance by the Court.

11.     The Debtor and its officers, employees, and agents are authorized and directed to take any and all actions necessary, appropriate or reasonably requested

by the Purchaser to perform, consummate, implement and close the Sale without further order of this Court. The Debtor is further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required to be paid by the Debtor in order to consummate the Sale or otherwise perform its obligations under the Purchase Agreement.

12. Each and every federal, state, local, and foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, and other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

13. All persons and entities including, without limitation, the Debtor, the Debtor's estate, any and all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Claims against the Debtor or the Property, arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, the operation or ownership of the Property by the Debtor before the Closing Date, or the Sale, are hereby prohibited, forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against the Purchaser or its present or future owners, successors, assigns, or property,

or the Property. No such Person shall assert or pursue any such Claim against the Purchaser or its successors or assigns.

14. The sale of the Property to the Purchaser under the Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code, and the sale of the Property to the Purchaser may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States.

**B.      Transfer of the Property Free and Clear**

15. Pursuant to sections 105(a) and 363(f), upon Closing the Property shall be and are sold free and clear of all Claims, with all such Claims to attach to the proceeds of the Sale with the same validity, force, priority, and effect which they now have as against the Property, subject to any claims and defenses the Debtor may possess with respect thereto; *provided, however*, that setoff rights against the Debtor will be extinguished to the extent there is no longer mutuality after the consummation of the Sale.

16. Except as expressly set forth in the Purchase Agreement, the Purchaser and its successors and assigns shall have no liability for any Claim.

17. Upon Closing, all of the Debtor's rights, titles and interests in and to, and possession of, the Property shall be immediately vested in the Purchaser

pursuant to sections 105(a), 363(b), and 363(f) free and clear of any and all Claims. Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Purchaser with good and marketable title to, the Property. All persons or entities, presently or on or after the Closing Date, in possession of some or all of the Property are authorized and directed to surrender possession of the Property to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

18. On the Closing Date, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Property acquired under the Purchase Agreement or this Order or a bill of sale or assignment transferring good and marketable title and interest in all of the Property to the Purchaser.

19. This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons

and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale.

20.     Except as otherwise expressly provided in this Order, all persons and entities (and their respective successors and assigns), holding Claims against the Debtor or the Property arising under or out of, in connection with, or in any way relating to, the Debtor, the Debtor's predecessors or affiliates, the Property, the ownership, sale or operation of the Property prior to Closing or the transfer of the Property to the Purchaser are hereby forever barred, estopped and permanently enjoined from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset, or recover on account of any Claims against the Purchaser, its successors or assigns, their property, or the Property.  Following the Closing, no holder of any Claim shall interfere with the Purchaser's title to or use and enjoyment of the Property based on or related to any such Claim, or based on any action or omission of the Debtor, including any action or omission the Debtor may take in this Chapter 11 case.

21.     The Debtor is authorized and directed to execute such documents as may be necessary to release any Claims of any kind against the Property as such Claims may have been recorded or may otherwise exist.  This Sale Order (a) shall be effective as a determination that, as of the Closing, all Claims have been unconditionally released, discharged, and terminated as to the Purchaser and the

Property, and that the conveyances and transfers described herein have been effected upon the Closing, and (b) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Property free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded claims, liens, mortgages, and other interests against the Property recorded before the date of this Sale Order in respect of Claims against the Debtor. A certified copy of this Sale Order may be filed or recorded with the appropriate Recording Officers to evidence cancellation of any recorded claims, liens, mortgages, and other interests against the Property recorded prior to the date of the Sale Order in respect of Claims against the Debtor. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement. This Order is deemed to be in recordable form sufficient to be

placed in the filing or recording system of each and every federal, state, or local government agency, department or office, and such agencies, departments and offices are authorized and directed to accept this Order for filing or recording. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Property free and clear of Claims shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

22. To the extent provided in the Purchase Agreement and to the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Property and, to the maximum extent permitted under applicable law, all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser with respect to the Property as of the Closing Date.

Notwithstanding anything to the contrary in this Order or the Purchase Agreement, the Purchaser may not interfere with the Debtor, the City of Detroit, and their agents in their efforts to remove tenant belongings from the Debtor's Property.

23. No governmental unit (as defined in section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Property on account of the filing or pendency of this Chapter 11 case to the extent that any such action by a governmental unit or any representative thereof would violate section 525.

24. For the avoidance of doubt, the Sale of the Property shall not be free and clear of any applicable laws of the City of Detroit ("City"), including its ordinances, regulations, and laws, whether under section 105, 363(f) or otherwise, and nothing in this Order, the Bidding Procedures, the Stalking Horse Agreement, or otherwise excuses the Purchaser, any Successful Bidder or Back-up Bidder, as applicable, or any other party from compliance with all such applicable laws.

### C. No Successor or Transferee Liability

25. Upon and at all times after the Closing Date, none of the Purchaser, or its present or future owners, successors or assigns, as a result of any action taken in connection with the Purchase Agreement, the consummation of the Sale, or the transfer or operation of the Property, shall be deemed to: (a) be a legal successor or successor employer to the Debtor (including with respect to any health or benefit plans), or otherwise be deemed a successor to the Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment

laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor.

26. None of the Purchaser or its present or future owners, successors or assigns, or professionals shall have or incur any liability to, or be subject to any action by the Debtor or any of its estate, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Purchase Agreement or the consummation of the Sale except as expressly provided in the Purchase Agreement and in this Order.

27. Nothing in this Order or in the Purchase Agreement shall require any of the Purchaser, or its present or future owners, successors or assigns, to (a) continue or maintain in effect, or assume any liability in respect of any employee, former employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtor is a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement

(including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

### D.     Good Faith; Arm's Length Sale

28.     The Purchaser is a good faith purchaser within the meaning of section 363(m) and, as such, is entitled to the full protections under section 363(m).

29.     The consideration provided by the Purchaser for the Property under the Purchase Agreement is fair and reasonable, and the Sale may not be avoided under section 363(n).

### E.     Personal Property Located at the Property

30.     The Sale is a Sale of the Property only and not a sale of personal property located in the Property except as specifically set forth in the Purchase Agreement.

31.     Debtor's interest in the tangible personal property located at the Property is hereby abandoned, excepting all Debtor's books, records, papers, and all computers, files, servers, storage, electronic devices and other tangible materials used by Debtor to store or access Debtor's books, records and papers.

32.     Capital Impact Partners or any other person asserting a secured interest in Debtor's personal property shall have until May 29, 2026 to take possession of such personal property (the "Removal Deadline"). Debtor shall cooperate with any

secured creditor with a valid and enforceable interest in the personal property, but shall have no obligation to expend any funds or take any action other than reasonable efforts to make the Property available through the end of the Removal Deadline. All personal property not removed by the Removal Deadline shall be deemed abandoned by secured creditors and Purchaser may take possession of or dispose of such personal property in its sole discretion.

33. Nothing in this Order, including the previous paragraph regarding security interests in Debtor's personal property, shall modify or amend the *Order Granting, in part, Motion of the City of Detroit to Approve (A) Tenant Property Removal Procedures and (B) Administrative Expense Claim* [ECF No. 245] or the Tenant Property Removal Procedures approved therein.

**F. Related Relief**

34. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Purchase Agreement, the Sale Motion, or this Order.

35. Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized and directed to accept any and all documents and instruments in connection with or necessary to consummate the Sale.

36. Except as expressly provided in the Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtor or its estate from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset, rights or interests of any kind other than the Property as described in the Purchase Agreement.

37. To the extent this Order is inconsistent with any prior order or pleading filed in this Chapter 11 case related to the Sale Motion, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Purchase Agreement, the terms of this Order shall govern.

38. This Order and the Purchase Agreement shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtor, all interest holders of the Debtor, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in this Chapter 11 case or upon a conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, including a Chapter 7 trustee, and the Sale shall not be subject in whole or in part to rejection or avoidance under any circumstances by any party. If any order under section 1112 is entered, such order shall provide (in accordance with sections 105 and 349) that this Order and the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal,

shall remain binding on parties in interest. For the avoidance of doubt, the Debtor's inability to satisfy in full all administrative expense claims of the Debtor's estate shall not be a basis for termination, rejection, or avoidance (as applicable) of the Purchase Agreement or the Sale.

39. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale; *provided, however*, that, if the Court abstains from exercising or declines to exercise such jurisdiction with respect to the Purchase Agreement, the Bid Procedures Order, or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. This Court retains jurisdiction to compel delivery of the Property, to protect the Debtor and its assets, including the Property, against any Claims and successor and transferee liability and to enter orders, as appropriate, pursuant to sections 105(a) or 363 (or other applicable provisions of the Bankruptcy Code) necessary to transfer the Property to the Purchaser.

40. The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

41. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply; (b) the Debtor is not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtor may, in its discretion and without further delay, take any action and perform any act authorized under this Order.

42. The provisions of this Order are non-severable and mutually dependent.

# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                                    Case No. 25-51190

LELAND HOUSE LIMITED                                      Chapter 11
PARTNERSHIP COMPANY,

        Debtor.                                   Hon. Maria L. Oxholm

_____/

## DECLARATION OF LUIS RAMIREZ IN
## SUPPORT OF DEBTOR'S MOTION TO SELL REAL PROPERTY

I, Luis Ramirez, declare under penalty of perjury:

1.    I am a President of Leland House Limited Partnership Company (the "Debtor")[1], and I am the Debtor's authorized represented in the above-captioned bankruptcy case.

2.    In my capacity as Debtor's President, I am familiar with the Debtor's business and operations and have been intimately involved with the Case since it was filed on November 3, 2025.

3.    Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with the Debtor's personnel and professionals, my knowledge and review of relevant

---

[1] Capitalized terms not defined in this declaration have the meanings ascribed to them in the *Debtor's Motion to Seller Real Property* ("Sale Motion"), which is filed contemporaneously herewith.

documents including the Debtor's books and records, and my opinion based on my experience, knowledge, and information concerning the Debtor's operations and financial condition. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4.      The Debtor owns and operates the Property, which includes a 20-story Beaux-Arts Detroit landmark built in 1927.

5.      On the Petition Date, the Debtor had forty (40) residential tenants and leased space to the Leland City Club.

6.      The Property is presently not habitable because it lost power on December 10, 2025, and its tenants were relocated on an emergency basis by the City of Detroit.

7.      The Debtor lacks sufficient resources to maintain or rehabilitate the Property. As a result, the Property continues to deteriorate and its value diminish absent significant investment.

8.      In order to maximize the value of the Property and provide for its rehabilitation, I made the decision to sell the Property and undertake a sale process.

9.      On January 27, 2026, the Debtor retained Savills, Inc. ("Savills") as its real estate broker. *See* ECF No. 154.

10.     Savills worked with Ten-X, an on-line real property auction platform, to further market the Property to potential domestic and international buyers.

11. I communicated regularly with Savills and the Debtor's professionals regarding the sale process.

12. As a result of Savills' marketing efforts, the Debtor was able to secure Arkist, LLC as an initial stalking horse bidder with an opening bid of $2.1 million. However, during further marketing efforts, an unsolicited stalking horse bid of $3 million was received and accepted from Mudhish Development Company ("Mudhish").

13. I am informed that prior to the Auction, there were eight (8) qualified bidders for the Property on the Ten-X platform.

14. The Auction was held from Noon on April 27 through approximately Noon on April 29, 2026, and Mudhish's $3 million bid was the winning bid at the Auction.

15. The sale of the Property to Mudhish for the Winning Bid constitutes the highest and best offer received by the Debtor for the Property; is fair, adequate, and reasonable; and is in the best interests of the Debtor, its creditors, and all other parties-in-interest.

16. The Debtor has reviewed and approved the Purchase Agreement.

17. The negotiation of the Purchase Agreement was conducted at arm's length, in good faith, without collusion, and was substantially and procedurally fair to all parties-in-interest.

18. I believe that the sale of the Property to Mudhish must be concluded expeditiously otherwise the Debtor will probably run out of operating capital by mid-June 2026.

19. Subject only to this Court's approval of the sale, the Debtor has the power and authority to execute and deliver the Purchase Agreement and other documents contemplated thereby and the corporate power necessary to consummate the sale contemplated by the Purchase Agreement.

20. Except for this Court's approval, there are no consents or approvals from any non-Debtor entities required to consummate the Sale.

21. The Debtor has not entered into the Purchase Agreement or proposes to consummate the sale of the Property for the purposes of escaping liability for its debts or hindering, delaying, or defrauding the Debtor's present or future creditors.

22. Upon information and belief, no officer, member or employee of the Debtor is also employed in any capacity or holds equity in Mudhish.

23. There is no common identity of ownership, directors, managers, controlling shareholders, or members between the Debtor and Mudhish.

24. There remains certain personal property consisting of used appliances and maintenance tools and equipment of de minimus value at the Property. After closing on the Sale, the Debtor has no need for this property and estimates that the costs of removal will exceed the value of the property.

25. Declarant says nothing further.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the above statements are true and correct.

Luis Ramirez

Dated: May 1, 2026

# EXHIBIT C

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Case No. 25-51190

LELAND HOUSE LIMITED                            Chapter 11
PARTNERSHIP COMPANY,

                    Debtor.                     Hon. Maria L. Oxholm

_____/

## SUPPLEMENTAL DECLARATION OF GREGORY J. BOCKART IN SUPPORT OF DEBTOR'S MOTION TO SELL REAL PROPERTY

I, Gregory J. Bockhart, declare under penalty of perjury:

1.      I am a vice chairman of Savills, Inc. ("Savills")[1].

2.      Savills has been engaged as the Debtor's commercial broker.

3.      I am the individual at Savills primarily responsible for completing Savills' engagement with the Debtor.

4.      Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with the Debtor's personnel and professionals, representatives of Ten-X, potential interested buyers of the Property, or my opinion based on my experience, knowledge, and

---

[1] Capitalized terms not defined in this declaration have the meanings ascribed to them in the *Debtor's Motion to Seller Real Property* ("Sale Motion"), which is filed contemporaneously herewith.

{01168088.1}                                      1

information concerning the Debtor's sale process and marketing efforts. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

5. On January 27, 2026, the Debtor retained Savills as its real estate broker. *See* ECF No. 154.

6. Beginning in January 2026, the Savills marketing team marketed the Property by sending notice of the opportunity to thousands and personally discussed the opportunity with dozens of potential purchasers. We have conduced individual tours of the Property and provided information for potential purchasers until the Auction concluded.

7. Additionally, Savills worked with Ten-X, an on-line real property auction platform, to further market the Property to potential domestic and international buyers.

8. As a result of Savills' marketing efforts, the Debtor was able to secure Arkist, LLC as an initial stalking horse bidder with an opening bid of $2.1 million. However, further marketing efforts were fruitful and resulted in an accepted stalking horse bid of $3 million from Mudhish Development Company ("Mudhish").

9. On April 17, 2026, the Court entered its *Order (A) Authorizing the Debtor to Conduct an Auction Sale of the Debtor's Building, (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse Agreement, and (D) Scheduling a Sale Hearing* [ECF No. 295] (the "Bid Procedures Order").

10. Consistent with the Bid Procedures Order, the Notice and the Bid Procedures Order were added to the data room.

11. Prior to the Auction, the Property's listing on the Ten-X platform had received 10,017 views, 157 executed confidentiality agreement, and 8 Qualified Bidders (including Mudhish).

12. From Noon on April 27 through approximately Noon on April 29, 2026, the Auction was held on the Ten-X platform, and I monitored the Auction over that period.

13. The Auction opened with Mudhish's $3 million bid.

14. Mudhish was the only person to bid on the Property at the Auction, and its $3 million bid was the winning bid (the "Winning Bid").

15. I believe that the marketing efforts and auction process to sell the Property was fulsome and resulted in the highest and best price for the Debtor's Property.

16. The Sale of the Property to Mudhish results in a value-maximizing transaction that allows new investment into and rehabilitation of the Property.

17. I further believe that the Winning Bid is fair, adequate and reasonable and a sale at the Winning Bid is in the best interests of the Debtor, its creditors, and all other parties-in-interest.

18. Declarant says nothing further.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the above statements are true and correct.

_Greg Bockart_
Gregory J. Bockart

Dated: May 1, 2026

# EXHIBIT  D

 Ten·X™

Congratulations on your winning bid!

**Next Steps**

1. Sign this contract package *within two hours*
2. Submit your Earnest Money Deposit *without delay* using the wire instructions located on the following page
3. Once the wire transfer is complete, send confirmation of your wire transfer to CommercialContracts@Ten-X.com

*IMPORTANT: It is the sender's responsibility to confirm wire instructions with the Escrow Company prior to sending a wire transfer.*

If you have any questions, please refer to the contact information below for the parties involved in this transaction.

**Escrow Company:**
Title Connect LLC
Jerri Hill
28470 W 13 Mile Rd, Suite 325
Farmington Hills, MI 48334-5402
jhill@title-connect.com
(248)642-3256

| Event Item: | March 25, 2026    Listing ID: 39507865    Property ID: 9984195 |
|---|---|
| Property Name: | Historic Downtown Redevelopment Opp. |
| Property Address: | 400 Bagley St, Detroit, MI 48226-1305 USA |

| Buyer: | Mudhish Development Co., LLC, a Michigan Limited Liability Company Raad Gobah |
|---|---|
| Address: | 401 N Main St, Royal Oak, MI 48067 |
| Phone: | 313-992-6920    Email: raadgobah1@gmail.com |

| Additional Buyer Contact | |
|---|---|
| Phone: | Email: |

| Additional Buyer Contact | |
|---|---|
| Phone: | Email: |

| Buyer's Brokerage Firm: | |
|---|---|
| Buyer's Broker of Record: | |
| Phone: | Email: |
| Buyer's Agent (Main Contact): | |
| Phone: | Email: |

| Listing Brokerage Firm: | Savills | Savills |
|---|---|---|
| Listing Agent (Main Contact): | Addison Williams | Gregory Bockart |
| Phone: | (248)227-3611 | (313)474-5171 |
| Email: | awilliams@savills.us | gbockart@savills.us |

*Please note that the Participation Terms remain in full force and effect.*

ITEM NO. 39507865

# SUBJECT TO CONFIRMATION ADDENDUM

Seller: Estate of The Leland House Limited Partnership Company, a Michigan limited partnership, Cha

Buyer: Mudhish Development Co., LLC, a Michigan Limited Liability Company

Property Address: 400 Bagley St, Detroit, MI 48226-1305 USA

This Subject To Confirmation Addendum ("Addendum"), dated effective as of 04/22/2026____, amends and supplements that certain purchase and sale agreement ("Agreement") between Buyer and Seller for the purchase and sale of the real property identified above. If there is a conflict between the terms of the Agreement and the terms of this Addendum, the terms of this Addendum shall control. Any capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement.

**1. SUBJECT TO CONFIRMATION.** The transaction contemplated by the Agreement is subject to, and contingent upon, Seller approving such transaction, which approval shall be granted or denied in Seller's sole and absolute discretion within 15____ business days from the date of the Agreement (if blank, then fifteen (15) business days after the date of the Agreement) ("Decision Date").

   (A)  Approval. If Seller approves the transaction contemplated by the Agreement, Seller (or Seller's designee) shall notify Buyer in writing (by electronic mail, overnight courier or registered mail with return receipt requested) of such approval on or before the Decision Date ("Approval Notice"), and notwithstanding anything to the contrary in the Agreement, the Closing Date shall be 30 calendar days after the date (if blank, then thirty (30) calendar days after the date of the Approval Notice).

   (B)  Disapproval. If Seller (or Seller's designee) does not send Buyer the Approval Notice on or before the Decision Date, or if Seller otherwise notifies Buyer in writing that Seller does not approve the transaction contemplated by the Agreement, then the Agreement shall be deemed terminated without further action, and Buyer and Seller shall be relieved of any further liability and/or obligation to each other under the Agreement (other than those obligations which expressly survive the termination of the Agreement). Notwithstanding anything to the contrary in the Agreement, in the event of such termination under this Section, Closing Agent is hereby instructed to return any Earnest Money Deposit to Buyer, and Seller shall be solely responsible for all cancellation fees of Closing Agent. The provisions of this Section shall survive the termination of the Agreement.

| SELLER: | BUYER: |
|---|---|
| Estate of The Leland House Limited Partnership Company, a Michigan limited partnership, Chapter 11 Bankruptcy Debtor | Mudhish Development Co., LLC, a Michigan Limited Liability Company |

Printed Name: Luis Ramirez

Title (if applicable): President

Printed Name: Raad Gobah

Title (if applicable): Member

Printed Name: _____

Title (if applicable): _____

Printed Name: _____

Title (if applicable): _____

Dated: 04/22/2026

Dated: 04/22/2026

Subject To Confirmation Addendum (Rev. 01/01/2021)
Copyright © 2021 Ten-X, LLC. All rights reserved.

ITEM NO. <u>39507865</u>

# EXTENSION OPTION ADDENDUM

<u>Seller:</u> Estate of The Leland House Limited Partnership Company, a Michigan limited partnership, Cha⬛

<u>Buyer:</u> Mudhish Development Co., LLC, a Michigan Limited Liability Company

<u>Property Address:</u> 400 Bagley St, Detroit, MI 48226-1305 USA

    This Extension Option Addendum ("<u>Addendum</u>"), dated effective as of <u>04/22/2026</u>, amends and supplements that certain purchase and sale agreement ("<u>Agreement</u>") between Buyer and Seller for the purchase and sale of the real property identified above.  If there is a conflict between the terms of the Agreement and the terms of this Addendum, the terms of this Addendum shall control. Any capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement.

**1.  EXTENSION OPTION(S).** ☒ **Seller** ☒ **Buyer** (*check applicable box*) shall have <u>1</u> option(s) to extend the Closing Date by a maximum of <u>15</u> calendar day(s) each.  In order for an extension option to be effectively exercised, the exercising party shall (A) provide written notice to the other party of its exercise of such extension option (which notice must specify the extended Closing Date) at least five (5) business days prior to the then scheduled Closing Date, and (B) (*check applicable box*):

☒   <u>Buyer to Increase Earnest Money Deposit</u>: For any Buyer extension option, Buyer shall immediately upon exercise of such option, deposit with Closing Agent an additional amount equal to ☒ <u>2.50</u> % of the Purchase Price, or ☐ $<u>         </u>, which shall constitute an increase in the Earnest Money Deposit for all purposes under the Agreement.

        ☒ *Release of Earnest Money Deposit*: If this box is checked, then in connection with the exercise of any Buyer extension option, Buyer hereby authorizes Closing Agent to immediately pay to Seller an amount equal to fifty percent (50%) of the initial Earnest Money Deposit (which shall not include any increase to the Earnest Money Deposit tendered by the Buyer pursuant to this Addendum or any other Extension Option Addendum) held in escrow, which payment shall be nonrefundable, may be retained by Seller in all circumstances, and shall constitute a decrease in the Earnest Money Deposit for all purposes under the Agreement; provided, however, that at closing, such payment shall constitute a credit towards the Purchase Price. Notwithstanding the foregoing, in no event shall the total Earnest Money Deposit released to Seller for all exercised extension options, exceed the initial Earnest Money Deposit as set forth in the Agreement, and shall not include any increase to the Earnest Money Deposit tendered by Buyer pursuant to this Addendum or any other Extension Option Addendum.

☐   <u>No Extension Fee</u>: Neither Buyer nor Seller shall be required to pay an extension fee or deposit additional funds with Closing Agent.

**SELLER:**

Estate of The Leland House Limited Partnership Company, a Michigan limited partnership, Chapter 11 Bankruptcy Debtor

*[signature]*

Printed Name: <u>Luis Ramirez</u>

Title (if applicable): <u>President</u>

Printed Name: _____

Title (if applicable): _____

Dated: <u>04/22/2026</u>

**BUYER:**

Mudhish Development Co., LLC, a Michigan Limited Liability Company

*[signature]*

Printed Name: <u>Raad Gobah</u>

Title (if applicable): <u>Member</u>

Printed Name: _____

Title (if applicable): _____

Dated: <u>04/22/2026</u>

Extension Fee Addendum (Rev. 01/01/2024)
Copyright © 2024 Ten-X, LLC. All rights reserved.

ITEM NO. 39507865

# PURCHASE AND SALE AGREEMENT WITH JOINT CLOSING INSTRUCTIONS

Seller agrees to sell the Property to Buyer, and Buyer agrees to purchase the Property from Seller, in accordance with the terms of this Purchase and Sale Agreement with Joint Closing Instructions ("Agreement"). This Agreement is effective as of the later of the dates Seller and Buyer sign this Agreement ("Effective Date").

1. **KEY TERMS.**

   (A) Seller: Estate of The Leland House Limited Partnership Company, a Michigan limited partnership
   phone number: (313)587-3979   email address: Luis@theleland.com
   mailing address: 400 Bagley St, Detroit, MI

   (B) Buyer: Mudhish Development Co., LLC, a Michigan Limited Liability Company
   phone number: 313-992-6920   email address: raadqobah1@gmail.com
   mailing address: 401 N Main St, Royal Oak, MI 48067

   (C) Purchase Price: $ 3,000,000.00 _____ (which equals Buyer's offer price of $3,000,000.00 _____ plus a Ten-X Transaction Fee of $ 90,000.00 _____ ).

   (D) Earnest Money Deposit: $ 300,000.00 _____ . (If blank, then 10% of the Purchase Price, but no less than $50,000 or more than $1,000,000).

   (E) Property: Address: 400 Bagley St, Detroit, MI 48226-1305 USA _____ as legally described on **Exhibit A**, including all permanent improvements thereon (but excluding any personal property unless specifically identified by addendum or amendment to this Agreement).

   (F) Closing Date: 30 Calendar days after the effective date _____ (If blank, then (I) 30 calendar days after the Effective Date). If the Closing Date falls on a weekend or a state or federally recognized holiday, the Closing Date shall be the next business day.

   (G) Closing Agent: Title Connect LLC _____ contact: Jerri Hill _____
   address: 28470 W 13 Mile Rd, Suite 325, Farmington Hills, MI 48334-5402 USA _ phone number: (248)642-3256
   email address: jhill@title-connect.com _____ .

   (H) Title Insurance Company: Title Connect LLC _____ .

   (I) Closing Cost Allocations: As described in the Section below entitled "Closing Cost Allocations".

2. **EARNEST MONEY DEPOSIT.** Buyer must deposit the Earnest Money Deposit with Closing Agent on or before 5:00 PM in the time zone where the Property is located on the first business day after the Effective Date. The Earnest Money Deposit is non-refundable except as set forth in this Agreement and may be applied towards the amounts payable by Buyer under this Agreement. The escrow ("Escrow") for the purchase of the Property shall be opened upon Closing Agent's receipt of the Earnest Money Deposit and a fully signed copy of this Agreement.

3. **CLOSING.** The transactions contemplated by this Agreement shall be consummated ("Close" or "Closing") on or before the Closing Date.

4. **CLOSING DELIVERIES.**

   (A) Seller's Deliveries. On or before the Closing Date, Seller shall deliver the following to Closing Agent ("Seller's Deliveries"):

      (i) The transfer deed warranting against title defects arising by, through or under Seller (in the form customarily used for similar transactions in the state where the Property is located) ("Deed") signed by Seller and acknowledged in accordance with the laws of the state in which the Property is located.

      (ii) A Non-Foreign Transferor Declaration signed by Seller, or evidence reasonably acceptable to Closing Agent and Buyer that Seller is exempt from the withholding requirements of the Foreign Investment in Real Property Tax Act (FIRPTA), Internal Revenue Code Section 1445.

      (iii) A counterpart of the "Settlement Statement" (defined below) signed by Seller.

      (iv) A counterpart of the assignment and assumption of leases and contracts substantially in the form attached as **Exhibit B** ("Assignment of Leases and Contracts") signed by Seller.

      (v) Any and all other instruments reasonably required by Closing Agent or otherwise necessary to Close the transactions contemplated by this Agreement.

Copyright © 2024 Ten-X, LLC. All rights reserved.

(B) Buyer's Deliveries. On or before the Closing Date, Buyer shall deliver the following to Closing Agent ("Buyer's Deliveries"):

    (i) An amount in immediately available "good funds" equal to the Purchase Price (less the Earnest Money Deposit already deposited with Closing Agent), plus Buyer's share of closing costs, prorations and expenses as set forth in this Agreement.

    (ii) A counterpart of the Settlement Statement signed by Buyer.

    (iii) A counterpart of the Assignment of Leases and Contracts signed by Buyer.

    (iv) Any and all other instruments reasonably required by Closing Agent or otherwise necessary to Close the transactions contemplated by this Agreement.

## 5. CONDITIONS PRECEDENT TO CLOSING.

(A) Seller's Conditions. Seller's obligation to Close is conditioned upon the following:

    (i) All representations and warranties of Buyer in this Agreement shall have been true in all material respects as of the Effective Date.

    (ii) Buyer shall have performed in all material respects all covenants and obligations required to be performed by Buyer on or before the Closing Date.

(B) Buyer's Conditions. Buyer's obligation to Close is conditioned upon the following:

    (i) All representations and warranties of Seller in this Agreement shall have been true in all material respects as of the Effective Date.

    (ii) Seller shall have performed in all material respects all covenants and obligations required to be performed by Seller on or before the Closing Date.

    (iii) Title Insurance Company is irrevocably committed to issue to Buyer an owner's title insurance policy covering the Property with standard coverage customary in the state where the Property is located, showing liability in the amount of the Purchase Price and showing insurable title to the Property vested in Buyer, subject only to the following: (a) Title Insurance Company's standard exceptions; (b) liens for all current general and special real property taxes and assessments not yet due and payable; (c) liens of supplemental taxes, if any assessed; (d) any facts not shown by public records that an accurate survey and/or a personal inspection of the Property would have disclosed; (e) the mortgage/deed of trust/deed to secure debt lien in connection with any Buyer financing; (f) any laws, regulations, or ordinances regarding the use, occupancy, subdivision, or improvement of the Property, or the effect of any non-compliance with or any violation thereof; (g) rights of existing tenants and/or occupants of the Property, if any; (h) covenants, restrictions, easements, and other matters that do not materially impair the value or use of the Property; (i) non-monetary encumbrances disclosed to Buyer in writing prior to entering into this Agreement; and (j) any other matter for which Title Insurance Company agrees to provide insurance at no additional cost to Buyer.

(C) Duty to Cooperate in Good Faith to Resolve. Despite anything to the contrary in this Section, if either party learns that a closing condition is unlikely to be satisfied, such party shall promptly notify the other party, and both parties shall cooperate in good faith to fairly and promptly resolve the matter, and the party whose closing condition was not satisfied shall not be relieved of its obligation to Close unless (i) the other party fails to cooperate in good faith, (ii) fair and prompt resolution is not reached after the parties have cooperated in good faith, or (iii) fair and prompt resolution of the matter on or before the Closing Date would be impracticable.

(D) Waiver of Conditions. Either party may waive its respective closing conditions in its sole discretion. By proceeding to Closing, each party waives its respective closing conditions and irrevocably releases the other party from any liability arising from any facts known by such waiving party that would otherwise have resulted in a failure of a closing condition.

## 6. CLOSING INSTRUCTIONS TO CLOSING AGENT. At Closing, Closing Agent is irrevocably instructed to do the following:

(A) Record the Deed.

(B) Pay all fees, costs, deed and transfer taxes for the sale of the Property which are required to be paid by Seller and Buyer under this Agreement, the portion of any fees charged by Closing Agent which are payable by Seller and Buyer (if any) and other expenses relating to the sale of the Property which are required to be paid by Seller and Buyer.

(C) Pay to Seller the balance of the Purchase Price and any other funds remaining after Closing.

Copyright © 2024 Ten-X, LLC. All rights reserved.

Seller and Buyer acknowledge that Closing Agent shall have no liability in connection with its activity as Closing Agent except to the extent of Closing Agent's gross negligence, willful misconduct, or willful disregard of the terms of this Agreement.

7. **COSTS AND PRORATIONS.**

(A) <u>Pre-Closing Costs</u>. Buyer and Seller acknowledge that Closing Agent may incur certain costs while processing this transaction which must be paid prior to Closing. Closing Agent is authorized and instructed to release funds for payment of such costs prior to Closing from funds deposited into Escrow by Buyer. Such funds are not refundable and Closing Agent is released from any liability for payment of any such funds pre-released through the Escrow. Closing Agent is authorized to charge the appropriate party for such costs incurred, or credit the appropriate party for credits, as applicable, at Closing or upon termination of this Agreement.

(B) <u>Prorations</u>. The following shall be prorated as of the date of Closing as between Buyer and Seller, in each case based on the number of calendar days in the applicable period and in accordance with local customs: (i) all real property taxes, assessments, utilities and other operating expenses customarily apportioned in similar situations ("<u>Property Expenses</u>"), and (ii) all rents and other income (including but not limited to any common area expenses due during the time of Seller's ownership of the Property, but paid within one year of the Closing, provided, however, such common area expenses shall be calculated and communicated to Buyer prior to Closing) actually received and customarily apportioned in similar situations ("<u>Property Income</u>"). Despite anything to the contrary in this Agreement, insurance premiums will not be prorated, and Seller may cancel any existing insurance on the Property after Closing. If either party receives Property Income or a refund of Property Expenses attributable, in whole or in part, to the other party's period of ownership, the party that received such Property Income or refund shall immediately submit to the other party the portion attributable to such other party's period of ownership. Except as set forth in this Agreement, Seller shall not be responsible for any Property Expenses accruing after Closing. This paragraph shall survive Closing indefinitely.

(C) <u>Closing Costs</u>. Seller and Buyer shall pay closing costs as described in the Closing Cost Allocations (and Closing Agent is authorized to (i) pay Seller's costs from Seller's proceeds, and (ii) pay Buyer's costs from funds deposited into Escrow by Buyer).

(D) <u>Settlement Statement</u>. On or before the third business day prior to Closing, Closing Agent shall prepare and deliver to Seller and Buyer a settlement statement setting forth the prorations and cost allocations set forth in this Agreement ("<u>Settlement Statement</u>").

8. **TERMINATION AND CANCELLATION OF ESCROW.**

(A) <u>Termination Resulting from Breach</u>. If Closing does not or cannot occur on or before the Closing Date due to a breach of this Agreement by Buyer or Seller, then the non-breaching party may terminate this Agreement and cancel the Escrow by written notice to the breaching party and Closing Agent. If Buyer fails to timely deposit the Earnest Money Deposit, then Seller may immediately terminate this Agreement by written notice to Buyer. Upon any such termination and/or cancellation, the breaching party shall pay any cancellation fees of Closing Agent and Title Insurance Company. If Seller is the breaching party, Closing Agent shall return the Earnest Money Deposit to Buyer, and Buyer shall be entitled to pursue remedies at law or in equity. If Buyer is the breaching party, then the following shall apply:

> **BUYER AND SELLER AGREE THAT IT WOULD BE EXTREMELY DIFFICULT TO DETERMINE SELLER'S ACTUAL DAMAGES RESULTING FROM A BREACH BY BUYER. IN THE EVENT OF A BREACH BY BUYER, SELLER SHALL BE ENTITLED TO AN AMOUNT EQUAL TO THE EARNEST MONEY DEPOSIT AS LIQUIDATED DAMAGES AND AS SELLER'S EXCLUSIVE REMEDY. BUYER AGREES THAT SUCH AMOUNT IS A REASONABLE PRE-ESTIMATE OF SELLER'S ACTUAL DAMAGES FOR BREACH OF THIS AGREEMENT AND IS NOT A PENALTY. IF CLOSING AGENT IS IN POSSESSION OF THE EARNEST MONEY DEPOSIT, THEN CLOSING AGENT SHALL DELIVER THE EARNEST MONEY DEPOSIT TO SELLER. DESPITE THE FOREGOING, IF APPLICABLE LAW LIMITS THE AMOUNT OF THE LIQUIDATED DAMAGES PAYABLE TO SELLER UPON A BREACH BY BUYER, SELLER SHALL ONLY BE ENTITLED TO THE AMOUNT PERMITTED BY LAW, AND ANY EXCESS SHALL BE PROMPTLY RETURNED TO BUYER.**
>
> **SELLER'S INITIALS** _ℓ_ / _R_         **BUYER'S INITIALS** RG / G

(B) <u>Costs Upon Termination and Cancellation of Escrow</u>. Except as otherwise set forth in Section 8(A), upon termination of this Agreement and cancellation of Escrow, Seller and Buyer shall be jointly responsible for any cancellation fees of Closing Agent and Title Insurance Company, and all other costs incurred in connection with the transactions contemplated by this Agreement (including, without limitation, payments for loan applications, inspections, appraisals, and other reports) shall be the sole responsibility of the party incurring such costs.

(C) <u>Closing Agent Authorization</u>. If Closing Agent receives a written notice from a party to cancel the Escrow in accordance with this Section 8, and Closing Agent can confirm that the other party also received the notice, Closing

Agent is authorized to comply with the notice if Closing Agent does not receive a written objection within 10 calendar days after such other party received the notice.

9. **BUYER'S REPRESENTATIONS AND WARRANTIES.** Buyer represents and warrants to Seller as follows:

(A) <u>Authority</u>. Buyer has the necessary authority to enter into and perform its obligations under this Agreement. If Buyer is an entity, the natural person signing this Agreement on behalf of Buyer represents and warrants that (i) Buyer is duly formed and in good standing and (ii) the natural person signing on behalf of Buyer has the necessary authority to bind Buyer to this Agreement.

(B) <u>Property Condition and Attributes</u>. Prior to entering into this Agreement, Buyer had the opportunity to conduct Buyer's own due diligence and investigations. Except as expressly set forth in this Agreement, Buyer's obligations under this Agreement are not contingent on any further due diligence and/or investigation. Buyer acknowledges that the square footage of the Property (including the square footage of the lot and any improvements thereon) is deemed approximate and not guaranteed. Buyer acknowledges that except as otherwise expressly set forth in this Agreement or in written disclosures to Buyer signed by Seller, (i) Seller does not make, and expressly disclaims, any representation or warranty, express or implied, regarding the Property, and (ii) Buyer acknowledges and agrees that Seller is selling the Property "As Is, Where Is, With All Faults and Limitations" and Seller shall have no liability for or any obligation to make any repairs or improvements of any kind to the Property.

(C) <u>Disclosures</u>. Prior to entering into this Agreement, Buyer has received (or, to the extent not received, Buyer irrevocably waives) all disclosure documents required to be provided by or on behalf of Seller or Seller's representatives. Disclosures furnished by or on behalf of Seller shall be for informational purposes only and are not made part of this Agreement unless required under applicable law.

(D) <u>Sophisticated Buyer</u>. Buyer (i) is a sophisticated purchaser, (ii) is capable of evaluating the merits and risks of purchasing the Property, (iii) understands and is able to bear the economic risks of purchasing the Property, including, without limitation, a total loss of investment and/or the risk that Buyer may be required to hold the Property indefinitely.

10. **SELLER'S REPRESENTATIONS AND WARRANTIES.** Seller represents and warrants to Buyer as follows:

(A) <u>Authority</u>. Seller has the necessary authority to enter into and perform its obligations under this Agreement. If Seller is an entity, the natural person signing this Agreement on behalf of Seller represents and warrants that (i) Seller is duly formed and in good standing and (ii) the natural person signing on behalf of Seller has the necessary authority to bind Seller to this Agreement.

(B) <u>Property Condition and Attributes</u>. Except as would not be reasonably expected to have a material adverse effect on the value or ongoing business or operation of the Property, the written information regarding the Property provided to Buyer by or on behalf of Seller, taken as a whole (i.e. including any updates or revisions provided, or any disclaimers in any information provided), fairly represents the Property. This paragraph shall not survive Closing.

(C) <u>No Violations</u>. Except as disclosed in writing to Buyer prior to signing this Agreement, Seller's execution and performance of this Agreement will not result in any breach of, conflict with, or result in the creation of any encumbrance upon the Property pursuant to any indenture, mortgage, deed of trust, note, evidence of indebtedness, right of first refusal, right of first offer, or any other agreement or instrument by which Seller is bound with respect to the Property.

(D) <u>Leases</u>. Except for the leases (including any amendments) listed in <u>Exhibit C</u> ("<u>Leases</u>"), Seller knows of no other agreement with respect to the occupancy of the Property that will be binding on Buyer after Closing. To Seller's knowledge, the information on <u>Exhibit C</u> and copies of any Leases delivered by Seller to Buyer are true, correct and complete in all material respects. Except as disclosed in writing to Buyer prior to signing this Agreement and except as would not be reasonably expected to have a material adverse effect on the ongoing business or operation of the Property, to Seller's actual knowledge, (i) each of the Leases is in full force and effect; (ii) there are no uncured material defaults under any of the Leases or circumstances which with the giving of notice, the passage of time or both would constitute a material default under any of the Leases; (iii) there are no unsatisfied concessions, abatements, offsets, defenses or other basis for relief or adjustment under any of the Leases; (iv) there is no outstanding obligation to provide any tenant with an allowance to perform any tenant improvements; (v) no tenant has requested in writing a modification of its Lease or a release of any material obligation under its Lease, or has given written notice terminating its Lease, or has been released of any material obligation under its Lease prior to the normal expiration of the term of the Lease; (vi) no tenant is the subject of a bankruptcy or insolvency proceeding; (vii) no guarantor has been released or discharged from any obligation in connection with any Lease; and (viii) all brokerage commissions currently due and payable with respect to the Leases have been paid.

(E) <u>No Litigation</u>. Except as disclosed in writing to Buyer prior to signing this Agreement, there is no pending litigation affecting the Property or that would affect Seller's ability to perform its obligations under this Agreement.

(F) <u>No Mechanics' Liens</u>. Except as disclosed in writing to Buyer prior to signing this Agreement, there are no unsatisfied mechanics' or materialmen's lien rights concerning the Property.

## 11. SELLER'S COVENANTS.

(A) <u>Possession</u>. At Closing, Seller shall relinquish possession of the Property to Buyer (subject to the Leases) and promptly provide Buyer with all keys, codes and other means of Property access in Seller's possession.

(B) <u>Utilities</u>. Seller shall reasonably cooperate with Buyer prior to Closing to allow Buyer to obtain responsibility for and maintain access to applicable utilities following Closing.

(C) <u>Operation and Maintenance of Property</u>. Prior to Closing, Seller shall maintain, and to the extent within Seller's reasonable control, operate, the Property consistent with past practice.

(D) <u>Leases and Contracts</u>. Prior to Closing, Seller shall not enter into, terminate or amend any Lease or other material agreement with respect to the Property which would encumber or be binding upon the Property from and after Closing, without Buyer's prior written consent, which consent may not be unreasonably withheld, conditioned or delayed.

(E) <u>No Violations</u>. Prior to Closing, Seller shall comply in all material respects with the terms of the Leases and any other material document or agreement affecting the Property consistent with past practice.

(F) <u>Notice of Material Changes or Untrue Representations</u>. Prior to Closing, Seller shall promptly notify Buyer if Seller learns of any material change in any condition of the Property or any event or circumstance which makes any representation or warranty of Seller under this Agreement untrue or misleading.

## 12. DISPUTE RESOLUTION. AT THE REQUEST OF EITHER PARTY TO THIS AGREEMENT, ANY DISPUTE ARISING UNDER THIS AGREEMENT SHALL BE FIRST SUBMITTED TO MEDIATION BEFORE A PARTY INITIATES ARBITRATION OR COURT ACTION. MEDIATION FEES SHALL BE DIVIDED EQUALLY AND EACH PARTY SHALL BEAR HIS/HER/ITS OWN ATTORNEYS' FEES AND COSTS.

**BUYER AND SELLER HAVE READ AND UNDERSTAND THE ABOVE PARAGRAPH AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT TO MEDIATION PRIOR TO COMMENCEMENT OF ARBITRATION OR COURT ACTION.**

SELLER'S INITIALS ___/___          BUYER'S INITIALS RG / G

## 13. MISCELLANEOUS.

(A) <u>Survival of Representations and Warranties</u>. Except as otherwise set forth in this Agreement, (i) all representations and warranties of Seller and Buyer in this Agreement shall survive Closing for a period of one year, and (ii) no claim for breach of any representation or warranty in this Agreement may be made more than one year after Closing.

(B) <u>No Assignment or Recording</u>. Buyer may not assign or record all or any part of this Agreement without the express prior written consent of Seller. Despite the foregoing, Buyer may assign this Agreement to any entity wholly owned, directly or indirectly, by Buyer; provided, however, that, in such event, the undersigned Buyer shall remain liable for the obligations of Buyer under this Agreement.

(C) <u>Casualty and Condemnation</u>. If any material portion of the Property is damaged or taken by eminent domain (or is the subject of a pending taking) prior to Closing, Seller shall notify Buyer promptly after Seller obtains knowledge thereof. Within 10 business days after Buyer receives such written notice (if necessary, the Closing Date shall be extended until one business day after the expiration of such period), Buyer may, at its option, either (i) terminate this Agreement, or (ii) proceed to Closing in accordance with this Agreement. Buyer shall be deemed to have waived its right to terminate this Agreement if Buyer does not notify Seller in writing of its election to terminate this Agreement within such period. Buyer shall not be entitled to any insurance proceeds or obtain any rights with respect to any claims Seller may have with regard to insurance maintained by Seller with respect to the Property. In the event of a taking by eminent domain, Seller shall assign to Buyer at Closing all of Seller's right, title and interest in and to all awards, if any, for such taking.

(D) <u>Common Interest Development</u>. If the Property is in a common interest development, unless otherwise required by law, Buyer acknowledges that Buyer was provided for review (or, to the extent not provided, Buyer waives any right to review) the declaration of covenants, conditions, restrictions and/or bylaws and other documentation regarding such common interest development and Buyer acknowledges that Buyer has reviewed such documentation to the fullest extent Buyer deems necessary and, by signing this Agreement, Buyer accepts the declaration of covenants, conditions, restrictions and/or bylaws of the common interest community.

(E) <u>Local Requirements</u>. Some counties, cities, municipalities and other state subdivisions may require a certificate of occupancy, certificate of use or code compliance certificate and/or inspection ("<u>Local Requirement</u>") may be required in order to transfer and/or occupy the Property. If a Local Requirement is required for the Property to be transferred

to or occupied by Buyer, Buyer waives such Local Requirements to the extent waivable. To the extent any such Local Requirement is not waivable by Buyer, Buyer shall comply with the Local Requirement at Buyer's sole cost, including, without limitation, the correction of any violations or performance of other work which may be required in connection therewith. Seller makes no representation as to whether a Local Requirement applies. Buyer shall indemnify, defend and hold Seller harmless from and against all fines, penalties, costs, expenses, claims and liabilities arising out of or relating to any Local Requirements. This paragraph shall survive Closing indefinitely.

(F) <u>Counterparts, Electronic Signatures, and Complete Agreement</u>. This Agreement and any addenda or other document necessary for Closing of the transactions contemplated by this Agreement may be signed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one document. Facsimile and electronic signatures shall have the same legal effect as original signatures. This Agreement and any addenda or other document necessary for Closing of the transactions contemplated by this Agreement may be accepted, signed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act (E-Sign Act), Title 15, United States Code, Sections 7001 et seq., the Uniform Electronic Transaction Act (UETA) and any applicable state law. This Agreement constitutes the entire agreement of Buyer and Seller with respect to the subject matter of this Agreement and supersedes any other instruments purporting to be an agreement of Buyer and Seller relating to that subject matter. No modification of this Agreement will be effective unless it is in writing and signed by both parties.

(G) <u>Severability</u>. If any portion of this Agreement is judicially determined to be invalid or unenforceable, that portion shall be deemed severable from this Agreement and the remainder of this Agreement shall remain in full force and effect and be construed to fulfill the intention of the parties.

(H) <u>Time is of the Essence</u>. Time is of the essence for the performance of each and every covenant under this Agreement and the satisfaction of each and every condition under this Agreement.

(I) <u>Governing Law and Venue</u>. This Agreement shall be interpreted, construed, applied and enforced in accordance with the laws of the state in which the Property is located. The state and federal courts located in the county in which the Property is located shall be proper forums for any legal controversy between the parties arising in connection with this Agreement, which courts shall be the exclusive forums for all such suits, actions or proceedings.

(J) <u>Attorneys' Fees</u>. In any action, proceeding or arbitration arising out of this Agreement, the prevailing party (defined as the party who prevails as to a substantial part of the litigation or claim) shall be entitled to reasonable attorneys' fees and costs.

(K) <u>Further Assurances</u>. The parties agree to execute such other documents, and to take such other actions as may reasonably be necessary, to further the purposes of this Agreement.

(L) <u>Notices</u>. All notices and other communications contemplated under this Agreement shall be in writing and shall be deemed given and received upon receipt if: (i) delivered personally; or (ii) mailed by registered or certified mail return receipt requested, postage prepaid; (iii) sent by a nationally recognized overnight courier; and/or (iv) sent by email. Notice to Buyer and Seller shall be given as set forth on the first page of this Agreement or to such other address or addresses as may from time to time be designated by either party by written notice to the other.

(M) <u>Prohibited Persons and Transactions</u>. Each party represents and warrants to the other that neither it, nor any of its affiliates, nor any of their members, directors or other equity owners (excluding holders of publicly traded shares), and none of their principal officers and employees: (i) is listed as a "specifically designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control ("OFAC"); (ii) is a person or entity with whom U.S. persons or entities are restricted from doing business under OFAC regulations or any other statute or executive order (including the September 24, 2001 "Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism"); and (iii) is engaged in prohibited dealings or transactions with any such persons or entities.

(N) <u>Brokers</u>. In connection with the transactions contemplated by this Agreement, Seller is represented by Listing Broker identified on the signature page hereto, Buyer is represented by Buyer's Broker identified on the signature page hereto, Ten-X is acting as the marketing firm and marketplace provider, and Seller and Buyer each represents and warrants that it has not dealt with any other broker, finder or other agent who would be entitled to any fee from Seller or Buyer. Seller and Buyer shall each indemnify and hold harmless the other from and against any claims, losses, costs, damages, liabilities or expenses, including reasonable attorneys' fees, arising in connection with any breach by the indemnifying party of the representations and warranties in this paragraph. This paragraph shall survive Closing indefinitely.

(O) <u>Form of Agreement</u>. Buyer and Seller acknowledge that no representation, recommendation or warranty is made by Ten-X or any broker relating to the legal sufficiency or tax consequences of this Agreement or any attachments hereto, and Buyer and Seller each represent and warrant that it has consulted with, had the opportunity to consult with or waived the right to consult with counsel in connection with this Agreement.

## 14. CLOSING COST ALLOCATIONS.

| Closing Costs (as applicable) | Seller Pays | Buyer Pays | 50% Seller/ 50% Buyer |
|---|:---:|:---:|:---:|
| Title Search Fee | ☒ | | |
| Owner's Title Insurance Policy (Standard Coverage) | ☒ | | |
| Additional Title Coverage or Endorsements Requested by Buyer | | ☒ | |
| Lender's Title Insurance Policy | | ☒ | |
| Closing Agent Fees | | | ☒ |
| State and/or Local Transfer Taxes | | | ☒ |
| Credit Reports, Loan Fees, Loan Points, Reports and Inspections Required by Buyer's Lender, Appraisal Fees, Mortgage Notarization and Recording Fees, and All Other Costs In Connection With Buyer's Loan | | ☒ | |
| Seller's Loan Prepayment Fees and All Other Costs In Connection With Seller's Existing Loan | ☒ | | |
| Deed Notarization and Recording Fees | ☒ | | |
| Real Estate Broker/Agent Commissions Due Listing Broker | ☒ | | |
| Offered Cooperating Real Estate Broker/Agent Commissions Due Buyer's Broker | ☒ | | |
| Additional Real Estate Broker/Agent Commissions Due Buyer's Broker (If Any) | | ☒ | |
| Any Reports and Inspections Requested by Buyer | | ☒ | |
| Seller's Attorney Fees | ☒ | | |
| Buyer's Attorney Fees | | ☒ | |
| All Other Closing Costs | | ☒ | |

**SELLER'S INITIALS** _L_ / _R_          **BUYER'S INITIALS** RG / G

**15. STATE-SPECIFIC PROVISIONS.** See state-specific rider attached hereto and incorporated herein by reference (if applicable).

*(Remainder of Page Intentionally Blank)*

Copyright © 2024 Ten-X, LLC. All rights reserved.

25-51190-mlo    Doc 305    Filed 05/01/26    Entered 05/01/26 14:12:05    Page 69 of 76

**SELLER:**

Estate of The Leland House Limited Partnership Company, a Michigan limited partnership, Chapter 11 Bankruptcy Debtor

_(signature)_

Printed Name: Luis Ramirez
Title (if applicable): President

Printed Name: _____
Title (if applicable): _____
Dated: 04/22/2026

**BUYER:**

Mudhish Development Co., LLC, a Michigan Limited Liability Company

(and its permitted assigns under Section 13(B))

_(signature)_

Printed Name: Raad Gobah
Title (if applicable): Member

Printed Name: _____
Title (if applicable): _____
Dated: 04/22/2026

**LISTING BROKER (if any):**

Broker Printed Name: Addison Williams
Brokerage Printed Name: Savills
Broker/Brokerage License Number: 6501406933 State: MI

**BUYER'S BROKER (if any):**

Broker Printed Name: _____
Brokerage Printed Name: _____
Broker/Brokerage License Number: _____ State: ____

(Brokers must be licensed in the state where the Property is located.)

**DISCLOSURE AND CONFIRMATION OF AGENCY RELATIONSHIP**

Buyer and Seller acknowledge that, unless otherwise set forth in this Agreement, Ten-X is not acting as Seller's real estate agent or Buyer's real estate agent, and Ten-X is acting as a marketing firm and marketplace provider only.

**SELLER'S INITIALS** _L_ / _R_          **BUYER'S INITIALS** RG / G

**CLOSING AGENT ACKNOWLEDGEMENT**

Closing Agent acknowledges receipt of a copy of this Agreement and the Earnest Money Deposit set forth in Section 1(D) and agrees to act as Closing Agent in accordance with this Agreement.

Title Connect LLC

By: _____

<u>**EXHIBIT A**</u>

**LEGAL DESCRIPTION OF THE PROPERTY**

The Land referred to herein below is situated in the County of Wayne, State of Michigan and is described as follows:

Land situated in the City of Detroit, County of Wayne, State of Michigan, described as follows:

Lots 5, 6 and 7, and the Southerly 1/2 of Lot 4, Block 54, of CASS WESTERN ADDITION TO THE CITY OF DETROIT, according to the plat thereof as recorded in Liber 42 of Deeds, pages 138, 139, 140 and 141, Wayne County Records, EXCEPT that portion of the said Lots which has heretofore been taken by the City of Detroit in the widening of Cass Avenue, ALSO Lots 8, 9 and 10, Block 54, of CASS WESTERN ADDITION TO THE CITY OF DETROIT, according to the plat thereof as recorded in Liber 42 of Deeds, pages 138, 139, 140 and 141, Wayne County Records, ALSO that part of the vacated alley running between Bagley Avenue and Jones Street, which lies in the rear of said Lots 5, 6 and 7 and the Southerly 1/2 of said Lot 4, ALSO the Southerly 1/2 of the vacated alley lying in the rear of said Lots 8, 9 and 10, together with the Easterly 1/2 of the vacated alley lying adjacent to the South 100 feet of Lot 10.

AND:

The Easterly 1/2 of that part of the North-South vacated alley, 15 feet wide, in the block bounded by First, Cass, Bagley, and Jones Avenues as platted in Block 54, of CASS WESTERN ADDITION TO THE CITY OF DETROIT, according to the plat thereof as recorded in Liber 42 of Deeds, pages 138, 139, 140 and 141, Wayne County Records, lying Westerly of and abutting the Northerly 32.50 feet of Lot 10, Block 54, AND abutting the South 1/2

of vacated alley in rear, of said CASS WESTERN ADDITION TO THE CITY OF DETROIT.

ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS

# ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS

Seller: Estate of The Leland House Limited Partnership Company, a Michigan limited partnership, Cha

Buyer: Mudhish Development Co., LLC, a Michigan Limited Liability Company

Property (Address): 400 Bagley St, Detroit, MI 48226-1305 USA

This Assignment and Assumption of Leases and Contracts, dated effective as of _____, is entered into between Buyer and Seller in connection with the transfer of the Property from Seller to Buyer concurrently herewith.

Seller is the landlord under those certain leases identified on Schedule 1 attached hereto (collectively, "Leases") relating to the Property. Seller desires to assign to Buyer, and Buyer desires to assume from Seller, all of Seller's right, title and interest in and to the Leases and all other transferable licenses, contracts, permits and agreements affecting the Property (collectively, "Contracts").

For valuable consideration, the receipt and sufficiency of which is acknowledged, Buyer and Seller agree as follows:

**1. ASSIGNMENT.** Seller hereby assigns, transfers and conveys to Buyer all of Seller's right, title and interest in and to (a) the Leases and Contracts and (b) all security deposits, letters of credit and guarantees given in connection with the Leases.

**2. ASSUMPTION.** Buyer hereby assumes all of Seller's obligations and liabilities under the Leases and Contracts and agrees to perform all of the landlord's obligations under the Leases, and Seller's obligations under the Contracts, arising from and after the date hereof. Buyer shall be solely responsible for notifying any tenants or occupants (a) that Seller has transferred ownership of the Property to Buyer, (b) regarding any change in place for payment of rentals, and (c) that Buyer is responsible for the security deposits of such tenants or occupants.

**3. INDEMNIFICATION BY SELLER.** Seller hereby indemnifies Buyer and agrees to hold Buyer harmless from and against all claims, expenses, losses or damages to the extent arising out of (a) the landlord's obligations and liabilities under the Leases accruing prior to the date hereof, and/or (b) Seller's obligations and liabilities under the Contracts accruing prior to the date hereof.

**4. INDEMNIFICATION BY BUYER.** Buyer hereby indemnifies Seller and agrees to hold Seller harmless from and against all claims, expenses, losses or damages to the extent arising out of (a) the landlord's obligations and liabilities under the Leases accruing from and after the date hereof, and/or (b) Seller's obligations and liabilities under the Contracts accruing from and after the date hereof.

**SELLER:**

Estate of The Leland House Limited Partnership Company, a Michigan limited partnership, Chapter 11 Bankruptcy Debtor

**BUYER:**

Mudhish Development Co., LLC, a Michigan Limited Liability Company

Printed Name: Luis Ramirez
Title (if applicable): President

Printed Name: Raad Gobah
Title (if applicable): Member

Printed Name: _____
Title (if applicable): _____

Printed Name: _____
Title (if applicable): _____

Dated: _____

Dated: _____

<u>**Schedule 1 to Assignment and Assumption of Leases and Contracts**</u>

<u>Leases</u>

## EXHIBIT C

### LEASES

All leases posted to the Property's listing page on Ten-X's website (a) after the date of the attached list, and (b) before Buyer signs this Agreement are hereby incorporated herein by reference.

Not Applicable

# COMMERCIAL REAL ESTATE AGENCY DISCLOSURE

By signing the agreement to which this page is attached, the parties acknowledge receipt of the agency disclosure located at www.ten-x.com/company/AgencyDisclosure

*(Remainder of Page Intentionally Blank)*

Commercial Real Estate Agency Disclosure (Rev. 01/01/2024)
Copyright © 2024 Ten-X, LLC. All rights reserved.

ITEM NO. 9984195

# ADDENDUM TO
# PURCHASE AND SALE AGREEMENT

Seller: Estate of The Leland House Limited Partnership Company, a Michigan limited partnership, Ch⁁

Buyer: Mudhish Development Co., LLC, a Michigan Limited Liability Company

Property Address: 400 Bagley St, Detroit, MI 48226-1305 USA

This Addendum to Purchase and Sale Agreement ("Addendum"), dated effective as of 04/22/2026 ,
amends and supplements that certain purchase and sale agreement ("Agreement") between Buyer and Seller for the
purchase and sale of the real property identified above. If there is a conflict between the terms of the Agreement and the
terms of this Addendum, the terms of this Addendum shall control. Any capitalized terms not otherwise defined herein shall
have the meanings set forth in the Agreement. The Agreement is hereby amended as follows:

1. The sale is fully subject to approval by the Bankruptcy Court for the Eastern District of Michigan (Case No. 25-51190)
   ("Bankruptcy Court"). If approval of the sale is denied, the sale and this agreement shall be null and void and any deposit
   shall be returned within 3 business days.
2. Delivery by the seller of an Order of the Bankruptcy Court approving the sale free and clear of all liens, mortgages, claims
   and encumbrances under 11 USC section 363 shall satisfy all obligations of seller to deliver title free of encumbrances
   and litigation claims.
3. No leases or contracts are being assumed and assigned by Seller to Buyer. Accordingly, section 10(D) of the Agreement,
   Exhibit C, and all other sections of the Agreement relating to leases or contracts are of no force or effect.
4. Any and all disputes relating to the Agreement must be brought before the Bankruptcy Court unless the case has been
   dismissed, in which event the dispute resolution provisions of the Agreement shall govern. Any obligation for Seller to pay
   attorneys' fees is subject to prior review and approval of the Bankruptcy Court.
5. For clarity, Seller has paid the Michigan winter property taxes. Summer property taxes will be the sole obligation of Buyer.

SELLER:
Estate of The Leland House Limited
Partnership Company, a Michigan limited
partnership, Chapter 11 Bankruptcy Debtor

BUYER:
Mudhish Development Co., LLC, a Michigan
Limited Liability Company

Printed Name: Luis Ramirez
Title (if applicable): President

Printed Name: Raad Gobah
Title (if applicable): Member

Printed Name: _____
Title (if applicable): _____

Printed Name: _____
Title (if applicable): _____

Dated: 04/22/2026

Dated: 04/22/2026

Addendum To Purchase Agreement (Rev. 01/01/2021)
Copyright © 2021 Ten-X, LLC. All rights reserved.