# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

In the matter of:
**LELAND HOUSE LIMITED PARTNERSHIP COMPANY,**
*Debtor.*

Case No. 25-51190-mlo
Hon. MARIA L. OXHOLM
Chapter 11

## DETROIT TENANTS UNION'S RESPONSE AND OBJECTION TO DEBTOR'S MOTION TO SELL REAL PROPERTY (ECF NO. 305)

**NOW COMES** Detroit Tenants Union ("DTU"), by and through its counsel, Patrick A. Foley of John R. Foley, P.C., and for its *Response and Objection* to Debtor's Motion to Sell Real Property [ECF No. 305] (the "Sale Motion"), states:

## I. INTRODUCTION

1. DTU represents thirty-four (34) of the thirty-seven (37) displaced residential tenants formerly residing at the Leland House located at 400 Bagley Street in Detroit, Michigan (the "Property"). ECF No. 290.

2. The Sale Motion seeks entry of an order approving the sale of the Property to Mudhish Development Co., LLC ("Mudhish") for $3,000,000 free and clear of "all liens, claims, and encumbrances including, without limitation, **tenant leases**" pursuant to 11 U.S.C. § 363(f). Sale Motion ¶ 22 (emphasis added).

3. DTU's objections to a sale of the Property free and clear of the leasehold and possessory interests of the tenants are expressly preserved by

25-51190-mlo   Doc 323   Filed 05/11/26   Entered 05/11/26 13:05:58   Page 1 of 22

paragraph 4 of the Order (A) Authorizing the Debtor to Conduct an Auction Sale of Debtor's Building, (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse Agreement, and (D) Scheduling a Sale Hearing [ECF No. 295] (the "Bid Procedures Order"), which provides: "*all objections to the sale of the property free and clear of the leasehold and possessory interests of the tenants represented by the Detroit Tenants Union ... are preserved pending a hearing on the forthcoming sale motion ... or other resolution between the respective parties.*"

4.    This is the hearing at which those preserved objections must be adjudicated.

5.    DTU does not object, in concept, to an orderly disposition of the Property. DTU objects to the entry of the proposed Sale Order in its current form because it: (a) purports to extinguish tenants' state-law possessory and leasehold interests through a § 363(f) sale rather than through summary proceedings under MCL 600.5701 et seq.; (b) contains a directive to surrender possession that operates, in practical effect, as a court-ordered dispossession of residential tenants absent completion of Michigan summary proceedings; (c) releases all "Claims" against the Purchaser without adjudication of those claims; (d) deems non-objecting parties to have consented to relief under 11 U.S.C. §§ 363(f)(2), 365(c)(1), and 365(e)(2) without any factual or legal basis; (e) waives the 14-day stay under Bankruptcy Rule 6004(h) and thereby forecloses meaningful appellate review; and (f) provides no

adequate protection of tenant interests under 11 U.S.C. § 363(e).

6. The proposed sale also rests on a single-bidder auction at the stalking horse price, with no current appraisal, no rehabilitation or operating covenants in the Purchase Agreement, and an internally inconsistent treatment of tenant leases that further confirms the unresolved status of tenant interests.

## II. INCORPORATION OF PRIOR PLEADINGS

7. DTU incorporates by reference, as if fully restated herein, the legal arguments and factual allegations set forth in:

(a) DTU's Objection to Debtor's Renewed Motion for Entry of Order Authorizing an Auction Sale [ECF No. 206];

(b) DTU's Response and Objection to Debtor's Motion to Reject All Month-to-Month Rental Agreements with Residential Tenants [ECF No. 263];

(c) DTU's Supplemental Brief in Response to Debtor's Supplemental Brief Regarding Renewed Motion for Bidding Procedures [ECF No. 264]; and

(d) DTU's Application for Determination of Administrative Expense and for Surcharge under § 506(c) [ECF No. 319].

8. Those filings establish, among other things: (a) the residential tenants represented by DTU hold possessory leasehold interests under Michigan law that

have not been lawfully terminated; (b) involuntary displacement caused by the Debtor's failure to maintain electrical service does not effect a voluntary surrender of leasehold rights and does not extinguish the tenants' § 365(h) election (see MCL 600.2918(2)(f)); (c) the Sixth Circuit has applied 11 U.S.C. § 365(h) to confirm that, upon rejection of an unexpired lease in which the debtor is the lessor, the tenant may retain its rights under such lease for the balance of its term (*EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493, 498–99 (6th Cir. 2021)); (d) authority holds that § 365(h) protects tenants' possessory interests from extinguishment through a § 363(f) sale (*see, e.g.*, *In re Taylor*, 198 B.R. 142 (Bankr. D.S.C. 1996) (holding that § 365(h) is a debtor-lessor's exclusive remedy and that § 363(f) does not authorize sale free and clear of an unexpired lessee's possessory interest)); and (e) DTU has asserted post-petition administrative expense claims and § 506(c) surcharge rights for which a reserve must be established before sale proceeds are disbursed.

9. Those arguments are not waived or abandoned and apply with full force to the relief sought in the Sale Motion.

**III. THE PURCHASE AGREEMENT IS INTERNALLY INCONSISTENT REGARDING TENANT LEASEHOLD INTERESTS**

10. The Purchase Agreement attached as Exhibit D to the Sale Motion (the "PSA") is internally inconsistent regarding the status of the tenant leases.

11. Section 11(A) of the PSA provides: "At Closing, Seller shall relinquish possession of the Property to Buyer (subject to the Leases) and promptly provide

Buyer with all keys, codes and other means of Property access in Seller's possession." (Emphasis added.)

12. Section 10(D) of the PSA contains seller's representations and warranties regarding "the leases (including any amendments) listed in Exhibit C ('Leases')."

13. Exhibit B to the PSA is a form Assignment and Assumption of Leases and Contracts, which contemplates the assignment of "all of Seller's right, title and interest in and to (a) the Leases and Contracts and (b) all security deposits, letters of credit and guarantees given in connection with the Leases."

14. Yet the Addendum to Purchase and Sale Agreement (Sale Motion at p. 76) states at paragraph 3: "**No leases or contracts are being assumed and assigned by Seller to Buyer. Accordingly, section 10(D) of the Agreement, Exhibit C, and all other sections of the Agreement relating to leases or contracts are of no force or effect.**" (emphasis added)

15. <u>**In other words, the face of the document purports to preserve the leasehold interests, while in fact, buried further down, the Debtor and Purchaser have slipped in language rendering the preservation of the leases null and void.**</u>

16. The Debtor cannot have it both ways. Either possession is being delivered "subject to the Leases" (PSA § 11(A)), in which case the leases survive

25-51190-mlo    Doc 323    Filed 05/11/26    Entered 05/11/26 13:05:58    Page 5 of 22

the sale, or the leases are of "no force or effect" (Addendum ¶ 3), in which case §

11(A)'s parenthetical reservation is meaningless.

17.     The internal inconsistency of the operative sale document confirms
what DTU has maintained throughout these proceedings: the legal status of the
tenant leasehold interests has not been adjudicated and cannot be resolved through
the entry of a § 363 sale order. Where the parties to the transaction themselves cannot
agree on whether the leases survive the sale, the Court should not enter an order
purporting to extinguish them.

18.     The Court should require the Debtor and Mudhish to identify, before
any sale is approved, which provision controls.

(a) If the leases survive (as PSA § 11(A) suggests), the Sale Order should

so state and the tenants' rights should be expressly preserved.

(b) If the Debtor's position is that the leases do not survive (as the

Addendum seems to state), the question whether § 363(f) authorizes

that result must be litigated on the merits, and the burden remains with

the Debtor.

19.     DTU respectfully submits that, for the reasons set forth herein and in
the other incorporated documents, § 363(f) does not authorize unilateral termination

**IV. SPECIFIC OBJECTIONS TO THE PROPOSED SALE ORDER**

**A. Paragraph 17 — The "Surrender of Possession" Directive**

20. Paragraph 17 of the proposed Sale Order provides: "All persons or entities, presently or on or after the Closing Date, in possession of some or all of the Property are authorized and directed to surrender possession of the Property to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request."

21. This provision operates, in practical effect, as a directive requiring surrender of possession by residential tenants absent completion of Michigan summary proceedings. It directs every person in possession, including tenants represented by DTU whose right to possession remains contested and preserved under paragraph 4 of the Bid Procedures Order, to surrender possession upon the Purchaser's demand.

22. The Bankruptcy Code does not create a federal eviction mechanism. The proper procedure for recovering possession from a residential tenant in Michigan is summary proceedings under MCL 600.5701 et seq., commenced in the 36th District Court for the State of Michigan, with judgment for possession and writ of restitution. See MCL 600.5714(1)(c); MCL 600.5750.

23. The Debtor itself acknowledged this in footnote 6 of the Sale Motion, conceding that "tenants may argue that they have a right to possession until after summary proceedings have been completed and a court orders their removal from the premises." Sale Motion at 11 n.6. The Debtor's response is that summary

proceedings "do not grant any rights to a tenant" … an argument that begs the question. Whatever rights summary proceedings do or do not grant, they remain the lawful procedural vehicle by which a Michigan landlord recovers possession from a residential tenant in lawful possession.

24. Paragraph 17 must be modified to expressly carve out the tenants of the Leland House, and to require summary proceedings under Michigan law before any such tenant may be dispossessed.

**B. Paragraph 2 — The Deemed Consent Provision Overreaches**

25. Paragraph 2 of the proposed Sale Order provides that "all persons and entities given notice of the Sale Motion that failed to timely object are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2)."

26. The inclusion of §§ 365(c)(1) and 365(e)(2) is gratuitous and unsupported. Those subsections govern the assumption and assignment of executory contracts and unexpired leases relief the Debtor has not requested in the Sale Motion. To the contrary, the Addendum to the PSA expressly disclaims any assumption or assignment of leases. There is no factual or legal basis on this record to deem any party to have consented under §§ 365(c)(1) or 365(e)(2).

27. As to deemed consent under § 363(f)(2): DTU has objected. There is no deemed consent. Thus, said paragraph does not operate against DTU or the

tenants it represents, and that the preservation of objections under paragraph 4 of the Bid Procedures Order survives entry of the Sale Order.

**C. Paragraph 21 — The Self-Releasing Provision**

28. Paragraph 21 of the proposed Sale Order provides that the order "shall be effective as a determination that, as of the Closing, all Claims have been unconditionally released, discharged, and terminated as to the Purchaser and the Property."

29. The defined term "Claims" in paragraph Y of the proposed Sale Order is sweeping: it includes "any and all 'claims' as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof," together with all "liens … liabilities, interests, rights, and mortgages relating to, accruing, or arising any time prior to the closing of the Sale."

30. Read together, these provisions purport to release the Purchaser from every conceivable cause of action, including unadjudicated tort, statutory, and contract claims of every party in interest, including the tenants represented by DTU.

31. The tenants of Leland House hold causes of action against the Debtor, the estate, and any successor in title arising from, among other things: (a) the December 10, 2025 power outage and the Debtor's failure to maintain the building's electrical systems; (b) the involuntary displacement of tenants on December 10, 2025; (c) breach of the covenants of quiet enjoyment and habitability; (d) violation

of MCL 600.2918 (unlawful interference with possessory interest); and (e) the handling, packing, removal, transport, storage, and condition of tenant personal property.

32.     None of these claims has been adjudicated, liquidated, or settled.

33.     A § 363 sale order is not a vehicle for extinguishing unadjudicated claims of non-consenting parties. Section 363(f) addresses interests in property; it does not authorize a sale order to extinguish in personam claims of non-consenting third parties. Paragraph 21 should be modified to expressly preserve the tenant claims described above.

**D. Paragraphs 25–27 — No Successor Liability Should Not Extend to Tenant Claims Based on the Purchaser's Own Post-Closing Conduct**

34.     Paragraphs 25 through 27 of the proposed Sale Order purport to insulate the Purchaser from "successor or successor employer" liability, "de facto merger" liability, "alter ego" liability, and "mere continuation" liability.

35.     To the extent these provisions purport to release the Purchaser from claims that do not depend on predecessor-successor identity — including claims based on the Purchaser's own post-closing conduct in continuing to displace tenants, dispose of tenant property, or otherwise interfere with tenant possessory interests — those provisions overreach. The carve-out language requested in Section IX below addresses this.

**E. Paragraph 22 — Removal of Tenant Belongings**

36. Paragraph 22 of the proposed Sale Order provides that, "[n]otwithstanding anything to the contrary in this Order or the Purchase Agreement, the Purchaser may not interfere with the Debtor, the City of Detroit, and their agents in their efforts to remove tenant belongings from the Debtor's Property."

37. While the non-interference language is consistent with the Tenant Property Removal Procedures Order [ECF No. 245], paragraph 22 stands as a freestanding provision in the Sale Order. It should be expressly cross-referenced and made subordinate to ECF No. 245 (in the manner that paragraph 33 of the proposed Sale Order subordinates personal property security interests to ECF No. 245). Standing alone, paragraph 22 implies a broader sanction of tenant property removal than ECF No. 245 actually provides.

**F. Paragraph 41 — The Rule 6004(h) Stay Waiver**

38. Paragraph 41 of the proposed Sale Order expressly waives the 14-day stay provided in Bankruptcy Rule 6004(h), making the order "immediately effective and enforceable upon its entry."

39. The 14-day stay is the procedural mechanism by which an aggrieved party may seek a stay pending appeal. Waiver of that stay forecloses meaningful appellate review.

40. DTU has preserved its objections to the free-and-clear sale under paragraph 4 of the Bid Procedures Order. If the Court rules against DTU, DTU is

entitled to a reasonable opportunity to seek appellate review. Waiver of the Rule 6004(h) stay would deprive DTU of that opportunity.

41. The Debtor's claim of "compelling circumstances" rests on its assertion that it will run out of operating capital in mid-June 2026. Ramirez Decl. ¶ 18. Even accepting that representation, a 14-day stay does not jeopardize a mid-June closing. The waiver should be denied, or at minimum modified to permit the 14-day stay to remain in effect with respect to the tenants represented by DTU.

## V. SECTION 363(f) DOES NOT AUTHORIZE EXTINGUISHMENT OF TENANT LEASEHOLD INTERESTS

42. As briefed in ECF Nos. 206 and 264, none of the five subsections of § 363(f) is satisfied with respect to the tenants' possessory and leasehold interests. DTU does not repeat that analysis here in full but incorporates it by reference.

43. DTU notes that the Sale Motion repeats the same § 363(f) analysis.

44. Two new points warrant emphasis.

45. First, the Sale Motion's footnote 7 invokes Michigan foreclosure law for the proposition that "an interest in property (including a lease) created after the foreclosing mortgagor's interest is extinguished" upon foreclosure. See *White v. Riness*, 2020 Mich. App. LEXIS 3930, at *5 (Mich. Ct. App. June 18, 2020). The Debtor uses this to support the § 363(f)(5) "hypothetical foreclosure" theory. *White* itself involved a commercial sand-and-gravel mining lease, was decided on a motion testing only the pleadings under MCR 2.116(C)(8), and was remanded for further

proceedings; on its own terms it does not address federal protections for residential tenants in foreclosure under the Protecting Tenants at Foreclosure Act of 2009, Pub. L. 111-22, §§ 701–704 (codified at 12 U.S.C. § 5220 note) (restored permanently by Pub. L. 115-174, § 304) (the "PTFA"), or applicable Michigan post-foreclosure tenant protections. The PTFA provides that the immediate successor in interest in any foreclosure on a residential dwelling takes the property subject to the rights of any bona fide tenant and must give bona fide tenants at least 90 days' notice to vacate. The hypothetical foreclosure premise of the Debtor's § 363(f)(5) argument therefore does not extinguish residential tenant possessory rights even on its own terms.

46. Second, the Sale Motion's footnote 8 instructs the Court to follow *In re R.J. Dooley Realty, Inc.*, 2010 Bankr. LEXIS 1761 (Bankr. S.D.N.Y. May 21, 2010), for the proposition that "a tenant faced with eviction is not entitled to adequate protection and that 365(h) does not apply with respect to 363(f)."

47. *R.J. Dooley Realty* is an unpublished bankruptcy court decision from another district. It is not binding on this Court. It is also a poor fit for this case in four respects. First, *R.J. Dooley* involved a commercial waterfront property leased to small businesses and restaurants, with no residential tenants. The federal and state-law protections for residential tenants that are central to this matter, including the PTFA and Michigan summary proceedings under MCL 600.5701 et seq., were not

before that court. Second, *R.J. Dooley* was a single-asset real estate case under 11 U.S.C. § 101(51B); this case is not. Third, *R.J. Dooley* was a stay-pending-appeal denial in which the tenant had failed to participate at the sale and was held to have waived its objections; DTU's objections, by contrast, are expressly preserved by paragraph 4 of the Bid Procedures Order. Fourth, *R.J. Dooley* relies on *In re Downtown Athletic Club*, 2000 WL 744126 (S.D.N.Y. June 9, 2000), a Southern District of New York district court decision that is not binding on this Court and that conflicts with the Sixth Circuit's application of § 365(h) in *EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493 (6th Cir. 2021). Authority on the majority side of the recognized split holds that § 365(h) protects tenants' possessory interests from extinguishment through a § 363(f) sale. *See, e.g.*, *In re Taylor*, 198 B.R. 142 (Bankr. D.S.C. 1996).

48. The Sixth Circuit has applied 11 U.S.C. § 365(h) to confirm that, upon rejection of an unexpired lease in which the debtor is the lessor, the tenant may "retain its rights under such lease … that are in or appurtenant to the real property for the balance of the term of such lease." *EPLET*, 984 F.3d at 498–99 (quoting 11 U.S.C. § 365(h)(1)(A)(ii)). *EPLET* is binding Sixth Circuit authority. Footnote 8 of the Sale Motion does not cite *EPLET*. Section 363(l) of the Bankruptcy Code further confirms that a sale of property is "subject to the provisions of section 365" — not the inverse.

## VI. SECTION 363(e) REQUIRES ADEQUATE PROTECTION

49. Section 363(e) provides that "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e) (emphasis added). The statutory command is mandatory.

50. Even the courts that have permitted § 363(f) to override § 365(h) have done so only on the condition that the tenant receives adequate protection. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 547–48 (7th Cir. 2003) (lessees "are therefore not without recourse in the event of a sale free and clear of their interests" and "have the right to seek protection under section 363(e)," upon which "the bankruptcy court is obligated to ensure that their interests are adequately protected").

51. The Sale Motion proposes no adequate protection. It does not establish a reserve. It does not preserve tenant claims. It does not condition the sale on the Purchaser's commitment to operate the Property as residential housing.

52. DTU requests, by this Response and Objection, adequate protection under § 363(e). If the Court is inclined to authorize a sale free and clear of tenant interests, the Court should condition such authorization on the following:

53. Establishment of a reserve from sale proceeds in the amount of

approximately \$592,000 pending resolution of the administrative expense and §
506(c) surcharge issues raised in ECF No. 319;

54.    Express preservation of all tenant claims against the Debtor, the estate,
and the Purchaser to the extent based on the Purchaser's own post-closing conduct;

55.    Express preservation of the Tenant Property Removal Procedures Order
[ECF No. 245] and all tenant rights thereunder;

56.    Retention of the 14-day stay under Bankruptcy Rule 6004(h) with
respect to the tenants represented by DTU; and

57.    A finding that nothing in the Sale Order limits the rights of any tenant
to pursue any state-law cause of action against the Debtor, its agents, or the
Purchaser arising from the December 10, 2025 power outage, evacuation, or
handling of tenant personal property.

## VII. THE SALE TERMS, AS CURRENTLY STRUCTURED, ARE NOT IN THE BEST INTERESTS OF THE ESTATE

58.    The standard for approval of a sale of estate property under Section
363(b)(1) is whether the sale represents an exercise of sound business judgment.
*Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986). DTU does not
seek to relitigate the auction process approved by this Court. DTU notes, however,
that the sale closed at the stalking horse price of \$3,000,000 with no competing bids
(Sale Motion ¶ 18; Bockart Decl. ¶ 14), that the Debtor concedes its 2020 appraisal
"is stale and cannot be used to set the Property's value" (Sale Motion ¶ 30), and that

the PSA contains no rehabilitation covenant, no commitment to operate the Property as residential housing, and no commitment to remediate code violations (PSA § 9(B)). These circumstances do not, in themselves, defeat the sale. They do, however, counsel against the entry of overbroad free-and-clear findings and underscore the need for the protections DTU requests in Sections VI and IX.

59. Two specific structural concerns warrant separate attention:

(a) **Unrestricted assignment to affiliates.** PSA Section 13(B) permits Mudhish to "assign this Agreement to any entity wholly owned, directly or indirectly, by Buyer." The actual closing entity may differ from the Successful Bidder approved by this Court. Any assignment should require Court approval and should expressly bind the assignee to the City Condition imposed by paragraph 11 of the Bid Procedures Order.

(b) **Administrative insolvency.** The Debtor projects exhaustion of operating capital by mid-June 2026. Ramirez Decl. ¶ 18. The estate cannot pay all administrative claims. Yet paragraph 38 of the proposed Sale Order provides that "the Debtor's inability to satisfy in full all administrative expense claims of the Debtor's estate shall not be a basis for termination, rejection, or avoidance … of the Purchase Agreement or the Sale." This locks in the sale before any administrative expense

claim, including the tenant administrative expense claims raised in ECF No. 319, can be heard. At minimum, the Sale Order should expressly provide that paragraph 38 does not waive, release, or impair any administrative expense claim or the estate's Section 506(c) rights.

## VIII. COORDINATION WITH ECF NO. 319

60. On May 5, 2026, DTU filed its Application for Determination of Administrative Expense and for Surcharge under § 506(c) [ECF No. 319] (the "Administrative Expense Motion"), seeking an order (a) determining that each tenant represented by DTU holds an administrative expense claim of $16,000, for an aggregate of approximately $592,000, or in the alternative establishing a reserve in that amount; and (b) preserving the estate's rights under § 506(c) and prohibiting any waiver or release of those rights in any sale order.

61. The Administrative Expense Motion has not yet been heard. To the extent the Sale Hearing proceeds before the Administrative Expense Motion is resolved, the Court should either (a) defer entry of a final Sale Order pending resolution of the Administrative Expense Motion, or (b) include language in the Sale Order that reserves the requested $592,000 from sale proceeds and expressly preserves the estate's § 506(c) rights without waiver or release.

62. Failing to coordinate the two proceedings risks rendering the Administrative Expense Motion moot before it is heard, contrary to paragraph 4 of

the Bid Procedures Order, which preserved the very claims at issue.

## IX. REQUESTED CARVE-OUT LANGUAGE

63. To the extent the Court is inclined to grant the Sale Motion in any form, DTU requests that the Sale Order include the following carve-out:

> Notwithstanding any other provision of this Order or the Purchase Agreement, the Sale shall not be free and clear of, and nothing in this Order shall be deemed to extinguish, impair, release, discharge, waive, or otherwise affect:
>
> (a) the leasehold and possessory interests of the residential tenants represented by the Detroit Tenants Union;
>
> (b) the rights of such tenants under 11 U.S.C. § 365(h), including the right to elect to retain possession;
>
> (c) any administrative expense claims of such tenants asserted in or pending before this Court, including without limitation those described in ECF No. 319, and the estate's rights under 11 U.S.C. § 506(c) with respect thereto;
>
> (d) any tenant claims, whether asserted or assertable, arising from or relating to the December 10, 2025 power outage, the evacuation of the Property, or pre-closing conduct relating to the displacement of tenants or the handling, packing, removal, transport, storage, or condition of tenant personal property under or in connection with the Tenant Property Removal Procedures (ECF No. 245);
>
> (e) any tenant rights under the Tenant Property Removal Procedures Order (ECF No. 245); and
>
> (f) any tenant cause of action against the Purchaser based on the Purchaser's own conduct after the Closing Date.
>
> Notwithstanding any other provision of this Order, the 14-day stay provided in Bankruptcy Rule 6004(h) shall remain in full force and effect with respect to any tenant represented by the Detroit Tenants Union, and the Purchaser shall not be authorized to take possession of any unit occupied by such a tenant, or otherwise dispossess any such tenant, without first commencing and completing summary proceedings under MCL 600.5701 et seq. in the 36th District Court for the State of Michigan, and obtaining a judgment for possession and writ of restitution against such tenant.

## X. RELIEF REQUESTED

**WHEREFORE**, Detroit Tenants Union respectfully requests that this Court enter an Order:

A.     Denying the Sale Motion;

B.     Alternatively, conditioning any approval of the Sale Motion upon (i) inclusion of the carve-out language set forth in Section IX above; (ii) establishment of a reserve from sale proceeds in the amount of approximately $592,000 pending resolution of ECF No. 319; (iii) deletion or modification of paragraphs 2, 17, 21, 22, and 41 of the proposed Sale Order as set forth herein; and (iv) resolution of the internal inconsistency in the Purchase Agreement regarding the status of the tenant leases;

C.     Directing that the sale of the Property may not proceed free and clear of the leasehold and possessory interests of the tenants represented by Detroit Tenants Union;

D.     Preserving all administrative expense claims and § 506(c) surcharge rights pending resolution of ECF No. 319; and

E.     Granting such other relief as is just and equitable.

Respectfully submitted,
**JOHN R. FOLEY, P.C.**
*Counsel for Detroit Tenants Union*

By: /s/ Patrick A. Foley
Patrick A. Foley (P74323)
18572 W. Outer Drive
Dearborn, MI 48128
(313) 274-7377
pafoley@jrfpc.net

Dated: May 11, 2026

In the matter of:
**LELAND HOUSE LIMITED
PARTNERSHIP COMPANY,**
*Debtor.*

Case No. 25-51190-mlo
Hon. MARIA L. OXHOLM
Chapter 11

## <u>PROOF OF SERVICE</u>

Patrick A. Foley hereby certifies that on May 11, 2026 he electronically filed the foregoing DETROIT TENANTS UNION'S RESPONSE AND OBJECTION TO DEBTOR'S MOTION TO SELL REAL PROPERTY (ECF NO. 305) along with all attachments thereto, with the Clerk of the Court using the Court's CM/ECF system, which will serve a copy of said filing to all counsel of record and all parties listed for electronic service in this case.

Respectfully Submitted,
**JOHN R. FOLEY, P.C.**
*Counsel for Detroit Tenants Union*

By: /s/ Patrick A. Foley
Patrick A. Foley, Esq. (P74323)
18572 W. Outer Drive
Dearborn, MI 48128
Phone: (313) 274-7377
Fax: (313) 274-5946
Email: pafoley@jrfpc.net

Date: May 11, 2026