**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

|  |  |
|---|---|
| | Case No. 25-51190 |
| LELAND HOUSE LIMITED | Chapter 11 |
| PARTNERSHIP COMPANY, | Hon. Maria L. Oxholm |

      Debtor.

_____/

## Order Granting Debtor's Motion to Sell Real Property

This matter came before the Court upon the Debtor's *Motion to Sell Real Property* [ECF No. 305] (the "Sale Motion").[1]  The Court has reviewed the Sale Motion, the exhibits thereto, and any objections thereto.  On May 14, 2026, the Court held a hearing on the Sale Motion ("Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion. The Court reviewed the Sale Motion, the exhibits thereto, and other pertinent pleadings, considered the arguments and representations of counsel made, and the evidence proffered or adduced at, the Sale Hearing, issued a bench opinion on May 21, 2026, and is advised in the premises.  It appears that: (i) the Debtor gave sufficient notice of the Sale Motion and of the Sale Hearing and the relief sought therein under the particular circumstances of this Chapter 11 case and (ii) no other or further notice

---

[1]  Capitalized terms used but not defined in this Order shall have the meaning ascribed them in the Sale Motion, the Bid Procedures Order, or the Purchase Agreement (as defined in this Order), as applicable.

1

thereof need be given. It appears that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties-in-interest, and after due deliberation,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[2]

A. **Jurisdiction and Venue**. This Court has jurisdiction to decide the relief requested in the Sale Motion and over the Sale and the property of Debtor's estate, including the Property, under 28 U.S.C. §§ 157(a)-(b) and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief requested in the Sale Motion are sections 105 and 363 of title 11 of Chapter 11 of the United States Code (the "Bankruptcy Code")[3]. Such relief is also warranted pursuant to Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[3] Except as noted to the contrary, all section references in this Order are references to sections of the Bankruptcy Code.

C. **Final Order**. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

D. **Prior Proceedings**. On November 3, 2025 (the "Petition Date"), the Debtor commenced this Chapter 11 case by filing its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108.

E. No official committee of creditors holding unsecured claims against the Debtor was appointed under section 1102.

F. On April 17, 2026, the Court entered its *Order (A) Authorizing the Debtor to Conduct an Auction Sale of the Debtor's Building, (B) Establishing Bidding Procedures, (C) Approving a Stalking Horse Agreement, and (D) Scheduling a Sale Hearing* [ECF No. 295] (the "Bid Procedures Order").

G. The Bid Procedures Order approved the bidding procedures ("Bidding Procedures"; ECF No. 289, Exhibit B).

H. On April 20, 2026, Debtor, in consultation with Next Bridge Funding, LLC (the "DIP Lender"), selected Mudhish Development Company, LLC ("Mudhish") to be the stalking horse and filed its $3 million stalking horse agreement on the docket at ECF No. 300.

3

I.  Consistent with the Bidding Procedures, the Debtor held an auction on April 27 through April 29, 2025 ("Auction"), and Mudhish was identified as the Winning Bidder.  *See* ECF No. 304.

J.  On May 1, 2026, the Debtor filed the Sale Motion.

K.  As set forth in the Certificates of Service filed with the Court at ECF Nos. 307, 308 and 309, the Debtor served the Motion and *Notice of Opportunity to Respond to Motion to Approve Sale of Real Property* [ECF No. 306] on May 1, 2026 upon those parties identified in paragraph 16 of the Bid Procedures Order, which service provided due and proper notice of (i) the proposed sale of substantially all of the Property ("Sale"); and (ii) the Sale Hearing.  Such service satisfies Bankruptcy Rule 6004 and 2002 and no further or other notice of the Sale Motion need be given.

L.  As evidenced by the affidavits of service previously filed with this Court, and based on the representations of counsel at the Sale Hearing,  sufficient notice of the Sale, the Auction, the Sale Motion, and the Sale Hearing has been provided by the Debtor under the circumstances in accordance with the Bankruptcy Code and the Bankruptcy Rules and no other or further notice thereof need be given.

M.  **Compliance with the Bid Procedures Order**.  As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtor has complied with the Bid Procedures Order.  The Debtor and its professionals have adequately and appropriately marketed the

Property in compliance with the Bidding Procedures and the Bid Procedures Order. Based upon the record of these proceedings, creditors, other parties-in-interest, and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Property.

N. The Bidding Procedures afforded notice and a fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Property. The Debtor conducted the sale process without collusion and in accordance with the Bidding Procedures.

O. The Debtor has designated Mudhish (the "Purchaser") as the Winning Bidder and its purchase agreement (the "Purchase Agreement") as the Winning Bid for the Property in accordance with the Bid Procedures Order. The Purchaser has complied with the Bid Procedures Order and all other applicable orders of this Court in negotiating and entering into the Purchase Agreement and the Sale otherwise complies with the Bid Procedures Order and all other applicable orders of this Court.

P. The Purchaser acknowledges and understands that the Property is currently not in compliance with the ordinances, regulations and laws of the City, and agrees that it will comply with, and abide by, applicable law, including all of the ordinances, regulations and laws of the City, and this provision is enforceable by the City in this or any other court of competent jurisdiction.

5

Q.  **Business Judgment**.  The Debtor's determination that the Purchase Agreement, including the form and total consideration to be realized by the Debtor under the Purchase Agreement, constitutes the highest or otherwise best offer received by the Debtor for the Property, is fair and reasonable, and is in the best interests of the Debtor, its estate, its respective creditors and all other parties-in-interest, constitutes a valid and reasonable exercise of the Debtor's sound business judgment. The Debtor conducted a fair and open sale process, the sale process was non-collusive, duly noticed and provided a fair and reasonable opportunity for any entity to make an offer to purchase the Property, and the process conducted by the Debtor pursuant to the Bidding Procedures obtained the highest and best value for the Property for the Debtor and its estate, and any other transaction would not have yielded as favorable an economic result.

R.  Consistent with its fiduciary duties, the Debtor has demonstrated sufficient and sound business reasons and justifications for entering into the Sale and the performance of its obligations under the Purchase Agreement including, but not limited to, the fact that (a) the consideration provided by the Purchaser under the Purchase Agreement will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative; and (b) unless the Sale is concluded expeditiously as provided for in the Sale Motion, creditor recoveries will be diminished.

S. **Corporate Authority**. Subject to entry of this Order, the Debtor (a) has full corporate power and authority to execute and deliver the Purchase Agreement to the Purchaser and all other documents contemplated thereby, and (b) has all the necessary corporate power and authority to consummate the Sale. Subject to entry of this Order, the Debtor does not need any consent or approval other than those expressly set forth in the Purchase Agreement, in order to consummate the Sale of the Property.

T. **Good Faith**. The sale process engaged in by the Debtor and the Purchaser, and their respective management, board of directors, employees, agents, advisors and representatives, including, without limitation, the negotiation of the Purchase Agreement, was conducted in accordance with the Bidding Procedures and the Bid Procedures Order, was at arm's length, non-collusive, in good faith, and fair. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale to be avoided, or costs or damages to be imposed, under section 363(n).

U. The Purchaser is a good faith buyer within the meaning of section 363(m) and is therefore entitled to the full protection of that provision in respect of the Sale, each term of the Purchase Agreement (and any ancillary documents executed in connection therewith), and each term of this Order. The protections

7

afforded by Bankruptcy Code section 363(m) are integral to the Sale and the Purchaser would not consummate the Sale without such protections.

V. Neither the Purchaser nor any of its officers, directors, managers, members or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined under section 101(31). No common identity of directors, managers, or members exists between the Debtor and the Purchaser.

W. **No Fraudulent Transfer**. The consideration provided by the Purchaser for the Property pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest and best offer for the Property, (c) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States.

X. Neither the Debtor nor the Purchaser has entered into the Purchase Agreement or proposes to consummate the Sale, for the purpose of (a) escaping liability for any of the Debtor's debts or (b) hindering, delaying or defrauding the Debtor's present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States.

Y.      **Free and Clear**.  The Debtor may sell the Property free and clear of all claims (including, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof), liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights, and mortgages relating to, accruing, or arising any time prior to the closing of the Sale (the "Closing Date") (collectively, "Claims") because, in each case, one or more of the standards set forth in §§ 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Bid Procedures Motion or the Sale Motion are deemed to have consented under § 363(f)(2) of the Bankruptcy Code.  Those holders of Claims who did object that have an interest in the Property could be compelled in a legal or equitable proceeding to accept a money satisfaction of such Claims under § 363(f)(5) or fall within one or more of the other subsections of § 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Claims that constitute interests in the Property, if any, attach solely to the proceeds of the Sale (the "Sale Proceeds") ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force, and effect that such holders had prior to the Sale, subject to any defenses of the Debtor.  Except for Liens for real property

9

taxes and water and sewer, all persons having Claims of any kind or nature whatsoever against the Debtor or the Property shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Claims against the Purchaser or any of its assets, property, affiliates, successors, assigns, or the Property.

Z.	The Debtor, to the extent permitted by applicable law, may transfer the Property free and clear of all Claims including, without limitation, rights or Claims based on any successor or transferee liability because one or more of the standards set forth in section 363(f)(1)-(5) has been satisfied.

AA.	Next Bridge Funding, LLC (the "DIP Lender") has a post-petition lien and super-priority claim ("DIP Lender Claim") secured by the Property under the *Final Order Authorizing Post-Petition Secured Financing, Granting Priority Administrative Expense and Priming Liens on Debtor's Property Pursuant to Sections 364(c)(1), 364(c)(3), 364(d)(1), and Authorizing Adequate Protection* (the "Final Financing Order") [ECF No. 131]. Under the terms of the Final Financing Order, the DIP Lender Claim is required to be paid in full in cash on the Closing Date. Under the Final Financing Order, the DIP Lender Claim includes the all fees and expenses of Debtor's Court-approved professionals, to the extent allowed by the Bankruptcy Court ("Professional Claims"). Professional Claims are to be paid out of the Sale Proceeds, and, to the extent necessary to ensure sufficient funds to pay the Professional Claims, Debtor may escrow funds from the Sale Proceeds into a

segregated debtor-in-possession account. Such funds will remain property of Debtor's estate and free and clear of any liens or interests other than the Professional Claims (the "Carve-Out").

BB. The Debtor has, to the extent necessary, satisfied the requirements of section 363(b)(1).

CC. The Purchaser will not consummate the Sale unless this Court expressly orders that none of the Purchaser, its present or future affiliates, its respective present or future owners, or the Property will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims.

DD. Not transferring the Property free and clear of all Claims would adversely impact the Debtor's efforts to maximize the value of its estate, and the transfer of the Property other than pursuant to a transfer that is free and clear of all Claims would be of substantially less benefit to the Debtor's estate.

EE. The Purchaser is not a mere continuation of the Debtor or its estate, there is no continuity or common identity between the Purchaser, on the one hand, and the Debtor or any of its affiliates, on the other hand, and there is no continuity of enterprise between the Purchaser and the Debtor (or any of the Debtor's affiliates). The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and the Sale does not

amount to a consolidation, merger, or *de facto* merger of the Purchaser with or into the Debtor.

FF. Without limiting the generality of the foregoing, neither the Purchaser nor its present or future owners, successors or assigns, nor the Property, will be subject to any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtor may incur in connection with consummation of the Sale or that the Debtor has otherwise incurred prior to the consummation of the Sale.

GG. **Validity of Transfer**. The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement.

HH. The Property is property of the Debtor's estate and good title to the Property is vested in the Debtor's estate within the meaning under section 541(a). The Debtor is the sole and lawful owner of the Property.

II. The Purchase Agreement is a valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms. The Purchase

Agreement, the Sale, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtor and any Chapter 7 or Chapter 11 trustee appointed in this case and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

JJ.     **Compelling Circumstances for an Immediate Sale**.  To maximize the value of the Property, it is essential that the transactions contemplated by the Purchase Agreement occur within the time constraints set forth therein.  Time is of the essence in consummating the Sale.  Accordingly, there is cause to waive the stays contained in Bankruptcy Rules 6004 and 6006.

KK.   The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement including, without limitation, the Sale prior to, and outside of, a Chapter 11 plan because, among other things, the Debtor's estate will suffer irreparable harm if the relief requested in the Sale Motion is not granted.  The transactions contemplated by the Purchase Agreement neither impermissibly restructure the rights of the Debtor's creditors nor impermissibly dictate the terms of a Chapter 11 plan for the Debtor, and therefore do not constitute a *sub rosa* plan.

LL.   **Adequate Protection of Tenant Interests.** As set forth in the Court's bench opinion of May 21, 2026, the residential tenants represented by the Detroit

Tenants Union ("DTU") hold possessory leasehold interests that constitute interests in the Property for purposes of section 363(f), and that will be terminated by the Sale. Consistent with Precision Industries, Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537 (7th Cir. 2003), and Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC, 872 F.3d 892 (9th Cir. 2017), and the mandatory language of section 363(e), the Sale may be free and clear of those interests only upon the provision of adequate protection. The Court has determined that the tenants are entitled to adequate protection in the form of compensation for the value of the remainder of their leasehold interests, that compensation is the only option available because the Property is uninhabitable, and that the Sale Proceeds shall be held until the amount of such adequate protection, and the administrative expenses, have been determined. The Court does not at this time have sufficient information to determine the value of such adequate protection, which shall be determined upon a motion filed by DTU as provided in paragraph 45 below.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Sale Motion and the relief requested therein is granted and approved as set forth in this Order. The Debtor is authorized to enter into and perform under the Purchase Agreement, to consummate the Sale to the Purchaser.

2. All objections and responses to the Sale Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all

reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and entities given notice of the Sale Motion that failed to timely object thereto are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2).

### A. Approval of the Purchase Agreement

3. The Purchase Agreement, all the ancillary documents thereto and all the terms and conditions thereof, are hereby approved in their entireties. The failure to specifically include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement (including, but not limited to, all related agreements and ancillary agreements contemplated thereby) be authorized and approved in their entirety.

4. All amounts due to the DIP Lender under the Final Financing Order, inclusive of post-petition interest, costs, fees, and other expenses and charges under the Final Financing Order and the DIP Loan Documents (as defined in the Final Financing Order, shall be paid in full in cash to the DIP Lender by the Debtor at, and as a condition of, the Closing and the transfer of the Property to the Purchaser free and clear of Claims held by DIP Lender. Debtor is further authorized to deposit $400,000 from the Sale Proceeds as a Carve-Out into a segregated debtor-in-possession account, subject to the provisions of the Final Financing Order, which

shall remain property of the Debtor's estate and may not be disbursed except as authorized by order of the Court.

5. The claim of the Wayne County Treasurer for all amounts due and owing prior to the date of the Sale has previously been paid. Under the Purchase Agreement, Purchaser assumes responsibility for all real property tax payments due and owing after the date of the Sale, including summer property taxes owed to the City of Detroit for the 2026 tax year.

6. The claim of the City of Detroit Water & Sewerage Department in the amount of approximately $64,567.10 shall be paid in full at Closing by the Debtor from the Sale Proceeds. Said payment to the City of Detroit Water & Sewerage Department shall satisfy section 363(f)(2).

7. Savills, Inc. ("Savills"), Debtor's real estate broker, shall be paid four percent (4%) of the Purchase Price from the Sale Proceeds as provided in the Savills Listing Agreement filed as Exhibit 6.A to the *Application of Debtor to Employ Savills, Inc. as Debtor's Real Estate Broker* [ECF No. 147] and as contemplated by the Court's *Order Authorizing Debtor to Employ Savills, Inc. as Debtor's Real Estate Broker* (stating that "Savills, Inc. shall be compensated for its services only as authorized by the Court, which may include a request for payment out of proceeds of a sale of Debtor's real property as part of a sale approval motion.") [ECF No. 154].

8.   Mudhish shall pay to Ten-X three percent (3%) of the Purchase Price as provided in the Auction Platform Agreement, approved in the Bid Procedures Order (par. 3).

9.   All outstanding and anticipated United States Trustee Fees involving or related to Sale shall be paid from the Sale Proceeds at Closing.  The United States Trustee shall provide the Debtor with the amount claimed due within seven (7) days before the Closing.

10.   The Purchase Price specified in the Purchase Agreement for the Property shall be paid by the Purchaser directly to the Debtor as set forth in the Purchase Agreement.  Except as set forth in paragraphs 4 through 9 of this Order, the Sale Proceeds shall be held and disbursed only pursuant to a subsequent order of this Court providing notice to all parties.

11.   The Debtor and its officers, employees, and agents are authorized and directed to take any and all actions necessary, appropriate or reasonably requested by the Purchaser to perform, consummate, implement and close the Sale without further order of this Court, provided that such actions do not constitute a determination of the interests of creditors, including the City of Detroit Downtown Development Authority ("DDA").  The Debtor is further authorized to pay from the Sale Proceeds, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required to be paid by the Debtor in

17

order to consummate the Sale or otherwise perform its obligations under the Purchase Agreement, provided that such costs and expenses are commercially reasonable and necessary in the context of a real estate closing and that the payment of any such costs and expenses do not constitute a determination of the interests of creditors, including the DDA.

12. Each and every federal, state, local, and foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, and other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

13. All persons and entities including, without limitation, the Debtor, the Debtor's estate, any and all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Claims against the Debtor or the Property, arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, the operation or ownership of the Property by the Debtor before the Closing Date, or the Sale, are hereby prohibited, forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against the Purchaser or its present or future owners, successors, assigns, or property,

or the Property. No such Person shall assert or pursue any such Claim against the Purchaser or its successors or assigns.

14. The sale of the Property to the Purchaser under the Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code, and the sale of the Property to the Purchaser may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States.

**B.      Transfer of the Property Free and Clear**

15. Pursuant to sections 105(a) and 363(f), upon Closing the Property shall be and are sold free and clear of all Claims, with all such Claims to attach to the Sale Proceeds with the same validity, force, priority, and effect which they now have as against the Property, subject to any claims and defenses the Debtor and other parties in interest may possess with respect thereto; *provided*, *however*, that setoff rights against the Debtor will be extinguished to the extent there is no longer mutuality after the consummation of the Sale.

16. Except as expressly set forth in the Purchase Agreement, the Purchaser and its successors and assigns shall have no liability for any Claim.

17. Upon Closing, all of the Debtor's rights, titles and interests in and to, and possession of, the Property shall be immediately vested in the Purchaser

pursuant to sections 105(a), 363(b), and 363(f) free and clear of any and all Claims. Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Purchaser with good and marketable title to, the Property. All persons or entities, presently or on or after the Closing Date, in possession of some or all of the Property are authorized and directed to surrender possession of the Property to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

18. On the Closing Date, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Property acquired under the Purchase Agreement or this Order or a bill of sale or assignment transferring good and marketable title and interest in all of the Property to the Purchaser.

19. This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons

and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale.

20. Except as otherwise expressly provided in this Order, all persons and entities (and their respective successors and assigns), holding Claims against the Debtor or the Property arising under or out of, in connection with, or in any way relating to, the Debtor, the Debtor's predecessors or affiliates, the Property, the ownership, sale or operation of the Property prior to Closing or the transfer of the Property to the Purchaser are hereby forever barred, estopped and permanently enjoined from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset, or recover on account of any Claims against the Purchaser, its successors or assigns, their property, or the Property. Following the Closing, no holder of any Claim shall interfere with the Purchaser's title to or use and enjoyment of the Property based on or related to any such Claim, or based on any action or omission of the Debtor, including any action or omission the Debtor may take in this Chapter 11 case.

21. The Debtor is authorized and directed to execute such documents as may be necessary to release any Claims of any kind against the Property as such Claims may have been recorded or may otherwise exist. This Sale Order (a) shall be effective as a determination that, as of the Closing, all Claims have been unconditionally released, discharged, and terminated as to the Purchaser and the

Property, and that the conveyances and transfers described herein have been effected upon the Closing, and (b) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Property free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded claims, liens, mortgages, and other interests against the Property recorded before the date of this Sale Order in respect of Claims against the Debtor. A certified copy of this Sale Order may be filed or recorded with the appropriate Recording Officers to evidence cancellation of any recorded claims, liens, mortgages, and other interests against the Property recorded prior to the date of the Sale Order in respect of Claims against the Debtor. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement. This Order is deemed to be in recordable form sufficient to be

placed in the filing or recording system of each and every federal, state, or local government agency, department or office, and such agencies, departments and offices are authorized and directed to accept this Order for filing or recording. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Property free and clear of Claims shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

22. To the extent provided in the Purchase Agreement and to the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Property and, to the maximum extent permitted under applicable law, all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser with respect to the Property as of the Closing Date.

Notwithstanding anything to the contrary in this Order or the Purchase Agreement, the Purchaser may not interfere with the Debtor, the City of Detroit, and their agents in their efforts to remove tenant belongings from the Debtor's Property.

23. No governmental unit (as defined in section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Property on account of the filing or pendency of this Chapter 11 case to the extent that any such action by a governmental unit or any representative thereof would violate section 525.

24. For the avoidance of doubt, the Sale of the Property shall not be free and clear of any applicable laws of the City of Detroit ("City"), including its ordinances, regulations, and laws, whether under section 105, 363(f) or otherwise, and nothing in this Order, the Bidding Procedures, the Stalking Horse Agreement, or otherwise excuses the Purchaser, any Successful Bidder or Back-up Bidder, as applicable, or any other party from compliance with all such applicable laws.

### C. No Successor or Transferee Liability

25. Upon and at all times after the Closing Date, none of the Purchaser, or its present or future owners, successors or assigns, as a result of any action taken in connection with the Purchase Agreement, the consummation of the Sale, or the transfer or operation of the Property, shall be deemed to: (a) be a legal successor or successor employer to the Debtor (including with respect to any health or benefit plans), or otherwise be deemed a successor to the Debtor, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment

25-51190-mlo   Doc 360   Filed 06/01/26   Entered 06/01/26 17:11:36   Page 24 of 32

laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor.

26. None of the Purchaser or its present or future owners, successors or assigns, or professionals shall have or incur any liability to, or be subject to any action by the Debtor or any of its estate, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Purchase Agreement or the consummation of the Sale except as expressly provided in the Purchase Agreement and in this Order.

27. Nothing in this Order or in the Purchase Agreement shall require any of the Purchaser, or its present or future owners, successors or assigns, to (a) continue or maintain in effect, or assume any liability in respect of any employee, former employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtor is a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement

25

(including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

**D.      Good Faith; Arm's Length Sale**

28.     The Purchaser is a good faith purchaser within the meaning of section 363(m) and, as such, is entitled to the full protections under section 363(m).

29.     The consideration provided by the Purchaser for the Property under the Purchase Agreement is fair and reasonable, and the Sale may not be avoided under section 363(n).

**E.      Personal Property Located at the Property**

30.     The Sale is a Sale of the Property only and not a sale of personal property located in the Property except as specifically set forth in the Purchase Agreement.

31.     Debtor's interest in the tangible personal property located at the Property is hereby abandoned, excepting all Debtor's books, records, papers, and all computers, files, servers, storage, electronic devices and other tangible materials used by Debtor to store or access Debtor's books, records and papers.

32.     Capital Impact Partners or any other person asserting a secured interest in Debtor's personal property shall have until May 29, 2026 to take possession of such personal property (the "Removal Deadline"). Debtor shall cooperate with any secured creditor with a valid and enforceable interest in the personal property, but

shall have no obligation to expend any funds or take any action other than reasonable efforts to make the Property available through the end of the Removal Deadline. All personal property not removed by the Removal Deadline shall be deemed abandoned by secured creditors and Purchaser may take possession of or dispose of such personal property in its sole discretion.

33. Nothing in this Order, including the previous paragraph regarding security interests in Debtor's personal property, shall modify or amend the *Order Granting, in part, Motion of the City of Detroit to Approve (A) Tenant Property Removal Procedures and (B) Administrative Expense Claim* [ECF No. 245] or the Tenant Property Removal Procedures approved therein.

### F. Related Relief

34. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Purchase Agreement, the Sale Motion, or this Order.

35. Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized and directed to accept any and all documents and instruments in connection with or necessary to consummate the Sale.

36. Except as expressly provided in the Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtor or its

estate from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset, rights or interests of any kind other than the Property as described in the Purchase Agreement.

37.     To the extent this Order is inconsistent with any prior order or pleading filed in this Chapter 11 case related to the Sale Motion, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Purchase Agreement, the terms of this Order shall govern.

38.     This Order and the Purchase Agreement shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtor, all interest holders of the Debtor, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in this Chapter 11 case or upon a conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, including a Chapter 7 trustee, and the Sale shall not be subject in whole or in part to rejection or avoidance under any circumstances by any party.  If any order under section 1112 is entered, such order shall provide (in accordance with sections 105 and 349) that this Order and the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  For the avoidance of doubt, the Debtor's inability to satisfy in full all administrative expense claims of the Debtor's estate

shall not be a basis for termination, rejection, or avoidance (as applicable) of the Purchase Agreement or the Sale.

39. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale; *provided*, *however*, that, if the Court abstains from exercising or declines to exercise such jurisdiction with respect to the Purchase Agreement, the Bid Procedures Order, or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. This Court retains jurisdiction to compel delivery of the Property, to protect the Debtor and its assets, including the Property, against any Claims and successor and transferee liability and to enter orders, as appropriate, pursuant to sections 105(a) or 363 (or other applicable provisions of the Bankruptcy Code) necessary to transfer the Property to the Purchaser.

40. The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto

and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

41. The provisions of this Order are non-severable and mutually dependent.

42. Nothing in the Purchase Agreement, the Bid Procedures Order, or this Order is or is to be construed as a determination of the interests of creditors, including the DDA. The DDA further reserves all rights related to its interests, including its timely filed secured proof of claim.

43. The last date for any Tenant to access the Property is May 24, 2026. Starting on May 25, 2026, the City is authorized to take any necessary steps to remove any and all personal property of any Tenant[4] and transfer it to Temporary Storage or to a location designated by the Tenant on a Moving Designation Form as provided in paragraph 3 of the Tenant Property Removal Procedures, regardless of whether they have participated in the Tenant Property Removal Procedures. Notwithstanding the deadline in the Tenant Property Removal Procedures, Tenant William Jaehnig shall have until May 19, 2026, to sign up for access to the Property. Any Tenant who has not signed the Customary Forms listed in paragraph 2(c) of the Tenant Property Removal Procedures by May 24, 2026, is deemed to have waived

---

[4] Capitalized terms that remain undefined have the definitions ascribed to them in the Tenant Property Removal Procedures filed at Docket Number 244.

any claims for loss or damage to their personal property. For avoidance of doubt, this language does not affect the treatment of the property of Tenants Gibson and Smith, whose property remains subject to the order entered at Docket Number 245.

44. Notwithstanding anything to the contrary in this Order, the Closing shall not occur until substantially all of the personal property of the Tenants in their apartments has been removed from the Property in accordance with this Order or the Tenant Property Removal Procedures, as applicable, unless otherwise agreed to in writing by the City, the Debtor, and the Purchaser.

45. Consistent with the Court's bench opinion of May 21, 2026 and Finding LL above, the tenants represented by DTU are entitled to adequate protection under section 363(e) of their interests terminated by the Sale. DTU shall file a motion for determination of the form and amount of such adequate protection not later than June 18, 2026. All parties-in-interest shall have through July 9, 2026 to file objections thereto. In addition, the deadline to file any responses to DTU's Motion for (I) Determination and Allowance of Administrative Expenses Claims pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2), and (II) Order Compelling the Debtor in Possession to Pursue Surcharge of Secured Creditors' Collateral under 11 U.S.C. § 506(c) on Behalf of the Displaced Tenant Creditors (the "Motion") [ECF No. 319] is extended through July 9, 2026.

46.    The City may file a motion for administrative expense claim under section 503(b)(1)(A), so long as such motion is filed not later than June 18, 2026. All parties-in-interest shall have through July 9, 2026 to file objections thereto.

47.    The City and the Debtor may file a motion for surcharge under section 506(c), so long as such motion is filed not later than June 18, 2026.  All parties-in-interest shall have through July 9, 2026 to file objections thereto.

**Signed on June 1, 2026**



**/s/ Maria L. Oxholm**

**Maria L. Oxholm**
**United States Bankruptcy Judge**